01/29/2007 MON 15:10  FAX 4154369683  CBD SF BAY AREA OFFICE                        ☏002/055



# CENTER FOR BIOLOGICAL DIVERSITY

*VIA FACSIMILE AND OVERNIGHT MAIL*

January 29, 2007

FOIA Officer
Office of Management and Budget
725 17th Street NW, Room 9026
Washington, DC 20503
Fax: 202.395.3504

*115709*

JAN 2 9 2007

*07-056*

## FREEDOM OF INFORMATION ACT APPEAL

Dear Freedom of Information Act Officers:

On behalf of the Center for Biological Diversity ("the Center"), and pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), I am writing to appeal the White House Office of Management and Budget's ("OMB") January 26, 2007 denial of the Center's FOIA fee waiver request dated August 29, 2006. The Center's August 29 letter requested the following information:

> **All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309. This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466). This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

See Exhibit A. In response to the August 29, 2006 FOIA request, OMB denied the Center's fee waiver request See Exhibit B.

FOIA section 552(a)(4)(A)(iii) addresses fee waivers and specifically requires agencies to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

---

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney
1095 Market Street, Suite 511 • San Francisco, CA 94103
Tel.: (415) 436-9682 ext. 302 • Fax: (415) 436-9683
Email: jaugustine@biologicaldiversity.org • www.biologicaldiversity.org

**EXHIBIT 5**

01/29/2007 MON 15:10  FAX 4154369683  CBD SF BAY AREA OFFICE                    ☐003/055

OMB does not claim the Center has a commercial interest in the documents and therefore, the only question is whether the documents "likely contribute significantly to public understanding of the operations or activities of the government."

What could be more important to public understanding of OMB operations than knowing that the decisions of the agency are free from the taint of impropriety? See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1313 (D.C. Cir. 2003) ("What could be more important to the public's understanding of IRS operations than knowing whether its commissioner awarded a government contract to a company he co-founded and in which he held stock?"). Indeed, how can the public effectively oversee its government if it is not fully informed about decisions that impact, in this case, the very air we breathe? The documents in question will, among other things, help reveal whether OMB's actions regarding fuel economy standards were inappropriately influenced. Just as importantly, it will reveal what information the agency had in its possession when formulating the rulemaking and will reveal any information that the agency failed to disclose on its website or in other already public documents.

As the D.C. Circuit has stated, "the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted." Id. at 1313-14. Here, because the requested documents will likely expose new information about the CAFE standards, the documents will likely shed light on whether OMB is meeting its legal duties pursuant to the Energy Policy and Conservation Act ("EPCA") and Administrative Procedure Act ("APA"). In other words, the comments will divulge "what the government is up to" because they will help reveal whether OMB is conducting its operations in accordance with its legal and ethical obligations. United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure ... focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose.")

OMB should be well aware that it can not deny a fee waiver based on FOIA exemptions—that fallacy has consistently been rejected by the court. A "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver," the Court concluded, "not on the possibility that the records may ultimately be determined to be exempt from disclosure. [The] fee waiver request should have been evaluated on the potential contribution of the requested information to the public's understanding of DOT operations, not DOT's determination that most of the information was exempt from disclosure." Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025 at *12 (internal citations omitted). In short, any OMB claims about which responsive records should be released and which may be withheld are irrelevant to the fee waiver determination. Such a method of denying fee waivers directly contradicts the FOIA Amendments' purpose of facilitating the disclosure of documents to watchdog organizations like the Center.

OMB can not put the cart before the horse – the Center should not be required to pay for the search just so the Center can challenge the exemptions being applied. Such an outcome would chill the FOIA process and allow agencies to effectively preclude FOIA efforts by non-profits.

Re: FOIA Appeal                                                                                       Page 2
January 29, 2007

FOIA's exemptions were never intended to preclude fee waivers as the courts well understand. As pointed out in <u>Judicial Watch, Inc. v. United States DOE</u>:

> Under the FOIA, the agency bears the burden of justifying nondisclosure. See 5 U.S.C. § 552(a)(4)(B). It would be contrary to the express provisions of the FOIA to 'invert the burden of proof' and force a plaintiff not only to demonstrate that it satisfies the public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the defendant agency's contemplated withholdings are not properly claimed. Project on Military Procurement v. Department of the Navy, 710 F. Supp. at 367. 'A fee waiver request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure. Carney v. United States Department of Justice, 19 F.3d 807, 815 (2d Cir. 1994). While in some rare cases it may be reasonable for an agency to deny a fee waiver because the FOIA request is for 'patently exempt documents,' id., the Court is unconvinced in this case that NRDC's FOIA requests sought 'patently exempt' documents.

310 F. Supp. 2d 271, 295 (D.D.C. 2004).

Moreover, OMB's assertion was again explicitly rejected in <u>S. Utah Wilderness Alliance v. United States BLM</u>:

> In a case where the Department of the Interior offered a similar rationale for its fee waiver denial, the court found that the agency improperly denied the plaintiff's requested fee waiver on the grounds that a portion of the records sought would be withheld, and 'releasing the non-exempt portions would not make a significant contribution to the understanding of the general public.' Judicial Watch, Inc. v. Dep't of Energy, 310 F. Supp. 2d 271, 295 (D.D.C. 2004) (citation omitted), rev'd in part on other grounds, 366 U.S. App. D.C. 343, 412 F.3d 125, 2005 WL 1412444 (D.C. Cir. 2005). The court noted that only in 'rare cases' would it be appropriate for an agency to deny a fee waiver on the grounds that the documents sought might be exempt from disclosure in their entirety.

402 F. Supp. 2d 82, 89 (D.D.C. 2005).

This is certainly not a "rare case." To suggest that everything the Center has requested is subject to exemption is simply absurd. Moreover, using an unspecified, conclusory claim of privilege as the basis for a fee waiver denial would undermine FOIA significantly. FOIA carries a presumption of disclosure and the fee-waiver amendments of 1986 were designed specifically to allow non-profit, public interest groups such as the Center access to government documents without the payment of fees. As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information . . ." 132 Cong. Rec. S. 14298 (statement of Sen. Leahy). In interpreting this amendment, the Ninth Circuit has stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d

1282, 1284 (9th Cir. 1987) (citing Sen. Leahy). The Ninth Circuit has likewise explicitly pointed out that the amendment's main purpose was "*to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA.*" Id. (emphasis added)

OMB's reliance on exemptions amounts to just such a roadblock and is contrary to FOIA and FOIA's intent. Both Congress and the courts are clear in their interpretation that the main legislative purpose of the FOIA amendments is to facilitate access to agency records by "watchdog" organizations, such as environmental groups, which use FOIA to monitor and challenge government activities. As a District of Columbia Circuit Court has stated, this waiver provision was added to FOIA "*in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests,*" in clear reference to requests from journalists, scholars, and, most importantly for our purposes, non-profit public interest groups. Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984) (emphasis added).

These documents may shed light on the CAFE standards such that action should be taken pursuant to the EPCA, APA, or other applicable law. Perhaps the documents will provide insight into fuel standards or will shed light on improprieties in the rulemaking. Thus, the documents currently have significant relevance to, and will likely contribute to, greater public understanding of OMB's involvement with fuel economy standards. Even if the requested documents fail to reveal any problems that need to be addressed, that fact too will promote public understanding of OMB's operations. See Judicial Watch, 326 F.3d at 1313 ("government counsel complained that Judicial Watch provided no evidence that Rossotti actually had a conflict of interest. That may be true, but the question here is not whether Rossotti had such a conflict, but whether disclosure is likely to contribute to public understanding of IRS operations—a goal that disclosure will promote regardless of what the documents reveal.").

Below I address each component of the fee waiver regulations.

    i) **the subject of the request: whether the subject of the requested records concerns the operations or activities of the Government**

As already described in the Center's request, and apparently undisputed by OMB, the subject matter of the request concerns the operations and activities of the government, namely, the rulemaking setting average fuel economy standards for light trucks for model years 2008-2011. As this rulemaking is an identifiable task of OMB and NHSTA, there is no question that this rulemaking is a U.S. government operation. Thus, the FOIA request plainly concerns the operations or activities of the government.

    (ii) **whether the disclosure will contribute to an understanding of federal government operations or activities**

There is no question that the documents requested will contribute to an understanding of federal government operations. The documents are new and are not in the public domain. They will undoubtedly provide meaningful understanding of OMB's compliance with federal statutes including the Energy Policy and Conservation Act ("EPCA") and the National Environmental

Re: FOIA Appeal    Page 4
January 29, 2007

Policy Act ("NEPA"), because they will reveal facts pertaining to the rulemaking not contained within the online docket of public comments and official, final documents. This is certain to shed light on the OMB's decision-making process and compliance with applicable law. In short, the requested documents will help reveal the basis for the final rulemaking.

In McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d at 1286, the court made clear that "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations...." In this instance, all the requested documents potentially provide new information about fuel economy standards and the associated rulemaking at issue; moreover, the information will provide oversight of OMB's activities, including what administrative actions may be necessary in order to best promote fuel economy per applicable law. See Western Watersheds Project v. Brown, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("WWP asserted in its initial request that the information requested was either not readily available or never provided to the public, facts never contradicted by the BLM. Therefore, the Court finds that WWP adequately demonstrated that the information would contribute significantly to public understanding."); see also Community Legal Services v. HUD, 405 F.Supp.2d 553 (D. Pa. 2005) ("Thus, as in Forest Guardians, the CLS request would likely shed light on information that is new to the interested public.")

Moreover, as pointed out above, OMB's assertions regarding exempt documents and fee waivers have been found contrary to FOIA and inappropriate—a "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver, not on the possibility that the records may ultimately be determined to be exempt from disclosure. [The] fee waiver request should have been evaluated on the potential contribution of the requested information to the public's understanding of DOT operations, not DOT's determination that most of the information was exempt from disclosure." Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025 at *12. Thus, OMB should no longer attempt to hide behind the false assertion that fee waivers can be denied based on possible FOIA exemptions.

As the Supreme Court has emphasized, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)). Thus, FOIA was enacted to "permit access to official information long shielded unnecessarily from public view" by creating a "judicially enforceable public right to secure such information from possibly unwilling official hands." Environmental Protection Agency v. Mink, 410 U.S. 73, 80 (1973). *"[D]isclosure, not secrecy, is the dominant objective of the Act."* Department of Air Force v. Rose, 425 U.S. 352, 361 (1976) (emphasis added)

Once responsive documents are identified, an agency must provide them to the requestor unless one of nine statutory exemptions apply. 5 U.S.C. § 552(b). *These exemptions are narrowly construed, and the burden is on the agency to demonstrate that the exemption applies.* See, e.g. John Doe Agency, 493 U.S. at 152; Army Times Pub. Co. v. Department of the Air Force, 998 F.2d 1067, 1069 (D.C. Cir. 1993) (citing Wolfe v. HHS, 839 F.2d 768, 773 (D.C. Cir. 1988)) (In evaluating withholdings based on the exemption 5 deliberative process privilege, the D.C.

Circuit has explained that the privilege "must be construed as narrowly as is consistent with efficient government operation.")

Because OMB has failed to identify the so-called exempt documents in any way, it is impossible to discern whether any of the documents satisfy the criteria for inter- or intra-agency communications under the claimed exemption. In fact, as OMB admits, it has not even conducted a search and yet is claiming that all or most of the responsive documents fall within exemptions to FOIA. Such reasoning is clearly contrary to FOIA's overarching goal of disclosure, not secrecy. OMB's response falls far short of meeting its burden to demonstrate that an exemption applies to these withholdings and redactions. At a minimum, OMB must provide specific details to justify its withholding of the documents per exemption 4 and 5. As the D.C. Circuit has explained, "[w]hen an agency declines to produce a requested document, the agency bears the burden before the trial court of proving the applicability of claimed statutory exemptions." Summers v. DOJ, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (citations omitted). Thus, the courts will not "accept conclusory and generalized allegations of [FOIA] exemptions, but rather would require agencies to offer a relatively detailed analysis in manageable segments." See Oglesby v. Department of the Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996) (quoting Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)). OMB has provided no such analysis here. Regardless, as already explained, the exemptions are irrelevant to a fee waiver determination.

    (iii)    **whether disclosure will contribute to the understanding of the public at large**

When examining this requirement, courts consider "the requestor's ability and intent to effectively convey the information to the public." Judicial Watch v. DOT, 2005 U.S. Dist. LEXIS 14025 at *13.

The Center is a non-profit organization whose mission is to promote the conservation of imperiled species and their habitats through science, policy, education and law. In furtherance of that mission, the Center's California-based Climate, Air, and Energy Program works to reduce U.S. greenhouse gas emissions and to protect species imperiled by global warming. Because the transportation sector accounts for approximately one-third of U.S. greenhouse gas emissions, the light truck fuel economy rulemaking is of central importance to addressing global warming.

The Center has the expertise, ability, and commitment to effectively convey the requested information to the public at large. The Center has longstanding expertise in climate, air, and energy issues and has advocated to protect species threatened by global warming and reduce greenhouse gas emissions for many years. The Center has expertise in climate science and biology, climate policy, and existing environmental laws that address greenhouse gas emissions. Center staff also have considerable expertise in communicating these issues to our members and the public both through our own electronic and print publications, and through media outreach. In addition to the Center's newsletters and publications, information such as that presently requested is disseminated through the Center's e-mail Biodiversity alerts, which are sent to nearly 17,000 people approximately once a week, and the Center's web page, which is accessed several hundred-thousand times each month. See Forest Guardians v. DOI, 416 F.3d 1173, 1180 (10th Cir. 2005) ("Among other things, Forest Guardians publishes an online newsletter, which is e-mailed to more than 2,500 people and stated that it intends to establish an interactive grazing

Re: FOIA Appeal                                                                              Page 6
January 29, 2007

web site with the information obtained from the BLM. By demonstrating that the records are meaningfully informative to the general public and how it will disseminate such information, Forest Guardians has shown that the requested information is likely to contribute to the public's understanding of the BLM's operations and activities.").

The Center's climate, air, and energy work is frequently featured in media outlets reaching millions of people. For example, the Center's Petitions to list polar bears and 12 species of penguins under the Endangered Species Act alone have been covered on ABC *World News Tonight*, *Nightline*, CBS Channel 8 San Diego, NPR "Living on Earth," National Geographic, Sirius Satellite Radio, and other national and local programs, 10-10 WINS in New York and other all-news radio stations. Scores of print stories have appeared in publications ranging from the New York Times, LA Times, San Francisco Chronicle, and Washington Post to Seed Magazine, Mother Jones Magazine, and Nature. Copies of a few of the print stories covering the following projects and cases are attached:

Polar Bear Endangered Species Act Petition and Center for Biological Diversity v. Kempthorne, Civ. 05-5191 JSW (N. Dist. CA): CNN Webpage dated February 8, 2006, attached as Exhibit C.

Penguin Endangered Species Act Petition: San Francisco Chronicle Webpage dated December 14, 2006, attached as Exhibit D.

Center for Biological Diversity v. Brennan, Civ. 06-7061 SBA (N. Dist. CA): San Jose Mercury News Web Page posted November 14, 2006, attached as Exhibit E.

The information disclosed in this FOIA would no doubt contribute to the public understanding of the OMB's compliance or non-compliance with applicable law in regard to the light truck fuel economy rulemaking. Understanding how our government reaches highly important decisions about fuel economy standards that affect not just the health and well-being of the U.S., but also the entire globe's citizens and species, is of course important to the public at large. Indeed, what is more important than better understanding of the government decisions that impact our health and well-being? The information disclosed from this FOIA will be used to educate the public about the importance of fuel economy standards and the fact that the 2008-2011 standards are woefully inadequate to protect public health and welfare, biodiversity, and the environment. The requested information will be used to show how our government reaches its decisions so that the public at large can evaluate the emission decision. The rulemaking cannot be fully evaluated by the public without the requested information.

The Center has already used the above mentioned methods to disseminate information about climate change and fuel efficiency. See, e.g. http://biologicaldiversity.org/swcbd/programs/policy/energy/index.html; http://www.endangeredearth.org/alerts/. The Center plans to release information about fuel economy standards found in the requested documents in the same ways. For instance, if information discovered in the documents reveals needed action in regard to fuel standards, the Center will immediately report that information in a Biodiversity alert, will highlight it on its webpage, and will publish it in at least one newsletter. Therefore, the Center has explained "in detailed and non-conclusory terms—again, all that FOIA requires—exactly how and to whom it

will disseminate the information it receives." Judicial Watch, 326 F.3d at 1314; see also Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025, *13-14 (D.D.C. 2005) ("requiring Judicial Watch to outline a specific plan in addition to describing its methods of publication would amount to 'pointless specificity.'" (citing Judicial Watch, 326 F.3d at 1314)). The Center routinely uses FOIA to obtain information from federal agencies that the Center's legal and scientific experts analyze in order to inform the public about a variety of issues including endangered species, energy policy, climate change, air pollution, and water pollution. The Center need not "outline a specific plan in addition to describing its methods of publication." Judicial Watch v. DOT, 2005 U.S. Dist. LEXIS 14025 at *14. To do so would amount to "pointless specificity." Id. (internal quotation omitted).

Moreover, the Center is currently in litigation with the Department of Transportation over the light truck fuel economy rulemaking. As you may be aware, Defendants in Center for Biological Diversity v. National Highway Traffic Administration, et al., No. 06-71891, have refused to include the documents requested in the subject FOIA request in the Administrative Record for this Action. The Center for Biological Diversity and other Petitioners filed a motion to compel completion of the Administrative Record, attached as Exhibit F. The grave importance of this case, and the requested documents, is explained in the attached motion, hereby incorporated by reference. The Ninth Circuit Motions Panel issued the Order dated November 7, 2006, attached as Exhibit G, referring the motion to the merits panel for resolution and directing Petitioners to submit documents obtained through FOIA along with the briefing. Therefore, the requested documents are critical not only to the public's understanding of the fuel economy rulemaking in general, but to the public's understanding of this ongoing case, which has also been covered in the media (see San Francisco Chronicle Website, posted April 7, 2006, attached as Exhibit H). This makes the OMB's compliance with the letter and intent of FOIA and prompt disclosure of the requested documents all the more urgent.

(iv) **whether the disclosure's contribution to the public's understanding of federal government operations will be significant**

The Center and the public cannot predict with precision what the requested documents will reveal about the fuel economy rulemaking. There can be no dispute, however, that disclosure of the requested documents may provide new information regarding the standards that will significantly enhance the public's understanding of OMB's operations in general and the fuel economy rulemaking in particular. Even if the documents fail to reveal that certain actions need to be taken does not mean the documents do not serve the public interest. See Judicial Watch, 326 F.3d at 1313.

In addition, the Center has thoroughly described the public interest to be served by the documents. The Center plans to use the new information both in the ongoing litigation, as described above, and to educate the public about the rulemaking, fuel economy standards, global warming, and protection of the environment. As already stated, it may well be that the OMB acted inappropriately, or should take some immediate action in response to information obtained or learned as part of the rulemaking process. The Center would educate the public about such things. See Western Watersheds Project, 318 F.Supp.2d at 1040 ("In the letter denying the

appeal, the FOIA Officer stated that WWP had failed to demonstrate....how the information would contribute to the understanding of the general public of the operations or activities of the government. The Court, however...finds that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and...how management strategies employed by the BLM may adversely affect the environment.") Therefore, the Center has adequately explained how disclosure of the requested documents will significantly contribute to public understanding of OMB's fuel economy standards rulemaking and a fee waiver is required.

The Center's request seeks non-publicly available information that will enhance and contribute significantly to public understanding of the government operations and activities at issue. As already discussed, the documents are new and are not in the public domain, and they will undoubtedly provide meaningful insight into OMB's operations generally and its handling of the light truck fuel economy rulemaking in particular. For instance, disclosure of the records will contribute "significantly" to public understanding of government meetings with, for example, car companies or other corporate entities that have interests at stake. The fuel economy standards rulemaking at issue has triggered substantial and widespread public interest. Over 45,000 public comments were received prior to the close of the comment period. 71 Fed. Reg. 17577. It cannot be disputed that disclosure of the requested records will therefore contribute *significantly* to public understanding of government activities by informing the public of what information was exchanged in government meetings and whether OMB committed to take any specific action in response to requests from outside parties. Such meetings, however, are not the only issue that will be brought to light. Any science or policy related documents that the government failed to disclose publicly already will likewise be divulged by this request and will undoubtedly contribute significantly to public understanding by exposing that information for everyone.

For the above-mentioned reasons, disclosure of all responsive records is in the public interest because it is likely to contribute significantly to public understanding of government operations or activities. While requesters must provide information as to why they should receive a fee waiver, the Center has exhaustively done so. Therefore, OMB's attempt to deny the Center's fee waiver request should be overturned.

We request that all the withheld materials be immediately released and that all fees be waived. We await your prompt reply within twenty days as mandated by FOIA. Thank you.

Sincerely,

Justin Augustine