

# CENTER FOR BIOLOGICAL DIVERSITY

*VIA FACSIMILE*

July 19, 2007

Mr. Stuart Bender
Office of Management and Budget
Fax: 202.395.3108

## FREEDOM OF INFORMATION ACT
## ADDITIONAL INFORMATION IN SUPPORT OF FEE WAIVER REQUEST

Dear Mr. Bender:

This letter responds to the Office of Management and Budget's ("OMB") letter to the Center for Biological Diversity ("Center") dated June 12, 2007 which allowed for "additional information in support of" the Center's fee waiver request. As background, on August 29, 2006, the Center mailed a Freedom of Information Act ("FOIA") request including a request for a fee waiver to OMB. See Exhibit A. OMB responded in a letter dated October 12, 2006, asking the Center to refine the scope of its request. See Exhibit B. On November 7, 2006, the Center responded by reiterating that it would like OMB to process its original request. See Exhibit C. In a letter dated January 26, 2007, OMB denied the Center's fee waiver request. See Exhibit D. The Center appealed the fee waiver denial on January 29, 2007. See Exhibit E (minus exhibits). In a letter dated June 12, 2007, OMB again denied the Center's fee waiver request. See Exhibit F.

The Center sends this additional information as a good faith effort to avoid unnecessary litigation. For the following reasons, none of the points raised by OMB in its June 12, 2007, denial of the Center's fee waiver appeal are valid. Therefore, we ask that OMB immediately grant a waiver and begin searching for responsive documents. Each of the four issues raised by OMB is responded to in turn. We also request that OMB respond to this letter within twenty working days.

### First Issue

OMB asserts that because "the rulemaking agency has already made public a substantial amount of information," the disclosure of the documents requested by the Center would not be likely to contribute significantly to the public's understanding. Exhibit F, p. 2. That assertion is incorrect. Published caselaw refutes the idea that the amount of relevant information already accessible in the public domain should have any bearing on an agency's decision whether or not

---

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney
1095 Market Street, Suite 511 • San Francisco, CA 94103
Tel.: (415) 436-9682 ext. 302 • Fax: (415) 436-9683
Email: jaugustine@biologicaldiversity.org • www.biologicaldiversity.org



the requested information will contribute significantly to the public's understanding of government operations, and thus whether or not to deny a fee waiver request.

For example, in Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1314-15 (D.C. Cir. 2003), the court found inapposite the possibility that Judicial Watch already had access to one of the documents, a waiver, it had requested of the Internal Revenue Service, when it had requested "considerably more" documents that were not already in the public domain, such as correspondence, memoranda, and statements. See also Project on Military Procurement v. Dep't of Navy, 710 F. Supp. 362, 366 (D.D.C. 1989) (noting the significance that a single document can have and holding that agencies may not consider the quantity of documents to be released when making a determination on a fee waiver application); Eudey v. CIA, 478 F. Supp. 1175, 1177 (D.D.C. 1979) (same).

Furthermore, to compare the relative contribution of one piece of unreleased information to the body of relevant information already disseminated into the public domain, agencies would have to search for the requested documents and then make subjective judgments about their value to the public. This process would be both wasteful of agency (and likely judicial) resources, and contrary to congressional intent. See, e.g., 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy) (emphasizing that agencies should administer the fee waiver provision in "an objective manner and should not rely on their own, subjective view as to the value of the information"); see also Department of Justice, Freedom of Information Act Guide, March 2007, pp. 181-183.

Thus, in sum, the proper inquiry for an agency or court is whether the information requested is *itself* likely to contribute significantly to the public understanding of government operations, not, as suggested in OMB's June 12, 2007 letter to the Center, whether the information requested is likely to make a *comparably* valuable contribution to public understanding in light of relevant information already accessible in the public domain. See Rossotti, 326 F.3d at 1314-15. So long as it is likely that the entire body of information requested contains at least some information (which could be just a single document) that would contribute significantly to the public's understanding of federal governmental operations (according to an objective standard), a fee waiver request should not be denied with respect to *any* of the information requested. See Project on Military Procurement, 710 F. Supp. at 366; Eudey, 478 F. Supp. at 1177; 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy).

In the present case, the Center has requested from OMB:

> **All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309. This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466). This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others,**

**draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

Exhibit A, p. 1. As OMB stated on pages 2-3 of its June 12, 2007 letter to the Center denying its fee waiver denial appeal, the Department of Transportation ("DOT") has already made available to the public the text, as submitted to OMB, of the proposed and final rule; public comments submitted during the rulemaking process; "the Regulatory Impact Analysis that the DOT had prepared for the proposed and final rule (which is required by EO 12866 and OMB Circular A-4); the DOT's Environmental Impact Assessment for the proposed and final rule; and the DOT's completed forms for submitting the drafts of the proposed and final rules to OMB for review." While OMB's assertion is true, it is irrelevant. As in Rossotti, the Center has *only* requested documents from OMB, such as correspondence among agency staff, which are *not* publicly available and *will* likely contribute to an understanding of federal governmental activities and operations. See Rossotti, 326 F.3d at 1314-15. The fact that DOT has made public certain other documents, including those listed above, is inapposite and should not be considered by OMB in deciding whether to grant the Center a fee waiver.

That the information requested by the Center, if disclosed, would likely make a significant contribution to the public's understanding of government operations is amply supported in the Center's initial August 29, 2006 FOIA request, as well as its January 29, 2007 appeal. While the Center and the public cannot predict with precision what the requested documents will reveal about the fuel economy rulemaking, there can be no dispute that disclosure of the requested documents may provide new information regarding the corporate average fuel economy ("CAFE") standards and will significantly enhance the public's understanding of OMB's operations and decisionmaking processes generally and with particular respect to the fuel economy rulemaking. In addition, the requested documents will shed light on government compliance with applicable laws, including, *but not limited to*, the Administrative Procedure Act ("APA"), the Energy Policy and Conservation Act ("EPCA"), and the National Environmental Policy Act ("NEPA").

In other words, the documents will divulge "what the government is up to" because they will help reveal whether OMB, as well as any other agency of the federal government, are conducting their operations in accordance with their legal and ethical obligations. United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure ... focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose"). As the D.C. Circuit has stated, "the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted." Judicial Watch., 326 F.3d at 1313-14. Thus, because disclosure of the requested documents would reveal information not currently publicly available about how the activities of OMB, and possibly other federal agencies, have been conducted (both generally and with specific respect to the fuel economy rulemaking), it would contribute significantly to the public's understanding of government operations.

Moreover, widespread media attention alone can suffice to show that disclosure of requested information would contribute significantly to the public's understanding of an issue. Pederson v. Resolution Trust Corp. 847 F. Supp. 851, 855 (D. Colo. 1994). This is certainly the case here as both the CAFE rulemaking and the Center's subsequent lawsuit challenging it have received a tremendous amount of press. Copies of a few of the print stories covering the rulemaking and the Center's lawsuit are attached:

Egelko, Bob. "New fuel standards for trucks challenged: Environmental group sues, says rules will add to warming." San Francisco Chronicle, published on 4/7/2007. Attached as Exhibit G.

Molloy, Tim. "Environmental group seeks review of new government mileage rules." Associated Press, published on 4/7/2007. Attached as Exhibit H.

"Enviros file challenge to CAFE standards." Greenwire, Vol. 10 (9). Published 4/7/2007. Attached as Exhibit I.

**Second Issue**

OMB's second reason for denying the Center's FOIA appeal is based on the assertion that many of the requested documents would either be exempt from mandatory disclosure (and hence, unreleasable), or are already somehow accessible in the public domain. However, the fact that OMB expects that it "would decline to release most of [the documents requested by the Center]" is inapposite. Exhibit F, p. 3. Similarly, OMB's expectation that "the responsive documents (or portions of documents) that OMB would most likely release will likely contain information that is already in the publicly [sic] domain" is not a proper justification for denying the Center's fee waiver request. Exhibit F, p. 3. These two issues are addressed in turn.

*Exemptions*

OMB should be well aware that it can not deny a fee waiver based on FOIA exemptions—that fallacy has consistently been rejected by the courts and was thoroughly addresses by the Center's appeal. Nonetheless, it is again addressed here.

As pointed out in Judicial Watch, Inc. v. United States DOE:

> Under the FOIA, the agency bears the burden of justifying nondisclosure. See 5 U.S.C. § 552(a)(4)(B). It would be contrary to the express provisions of the FOIA to 'invert the burden of proof' and force a plaintiff not only to demonstrate that it satisfies the public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the defendant agency's contemplated withholdings are not properly claimed. Project on Military Procurement v. Dep't of the Navy, 710 F. Supp. at 367. 'A fee waiver request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure. Carney v. United States Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994). While in some rare cases it may be reasonable for an agency to deny a fee

> waiver because the FOIA request is for 'patently exempt documents,' id., the Court is unconvinced in this case that NRDC's FOIA requests sought 'patently exempt' documents.

310 F. Supp. 2d 271, 295 (D.D.C. 2004).

OMB's assertion was again explicitly rejected in S. Utah Wilderness Alliance v. United States BLM:

> In a case where the Department of the Interior offered a similar rationale for its fee waiver denial, the court found that the agency improperly denied the plaintiff's requested fee waiver on the grounds that a portion of the records sought would be withheld, and 'releasing the non-exempt portions would not make a significant contribution to the understanding of the general public.' Judicial Watch, Inc. v. Dep't of Energy, 310 F. Supp. 2d 271, 295 (D.D.C. 2004) (citation omitted), rev'd in part on other grounds, 366 U.S. App. D.C. 343, 412 F.3d 125, 2005 WL 1412444 (D.C. Cir. 2005). The court noted that only in 'rare cases' would it be appropriate for an agency to deny a fee waiver on the grounds that the documents sought might be exempt from disclosure in their entirety.

402 F. Supp. 2d 82, 89 (D.D.C. 2005).

This is certainly not a "rare case." To suggest that everything the Center has requested is subject to exemption is disingenuous, especially given that no search has yet been conducted. Moreover, using an unspecified, conclusory claim of privilege as the basis for a fee waiver denial would undermine FOIA significantly. FOIA carries a presumption of disclosure and the fee-waiver amendments of 1986 were designed specifically to allow non-profit, public interest groups such as the Center access to government documents without the payment of fees. As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information . . ." 132 Cong. Rec. S. 14298 (statement of Sen. Leahy). In interpreting this amendment, the Ninth Circuit has stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284 (9th Cir. 1987) (citing Sen. Leahy). The Ninth Circuit has likewise explicitly pointed out that the amendment's main purpose was "*to remove the roadblocks* and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA." Id. (emphasis added)

OMB's reliance on exemptions amounts to just such a roadblock and is contrary to both the letter and intent of FOIA. Both Congress and the courts are clear in their interpretation that the main legislative purpose of the FOIA amendments is to facilitate access to agency records by "watchdog" organizations, such as environmental groups, which use FOIA to monitor and challenge government activities. As the District of Columbia Circuit Court has stated, this waiver provision was added to FOIA "*in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests*," in clear reference to requests from journalists, scholars, and, most importantly for our purposes, non-profit public interest

groups. Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984) (emphasis added).

In short, any OMB claims about which responsive records should be released and which may be withheld are irrelevant to the fee waiver determination. OMB can not put the cart before the horse – the Center should not be required to pay for the search just so the Center can challenge the exemptions being applied. Such an outcome would chill the FOIA process and allow agencies to effectively preclude FOIA efforts by non-profits. FOIA's exemptions were never intended to preclude fee waivers as the courts have repeatedly articulated.

*Information already in the public domain*

To begin with, the Center's FOIA request specifically asked for disclosure of documents "that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309" (DOT's regulatory docket). Exhibit A, p. 1. Thus, OMB's claim that the documents that "OMB would most likely release will likely contain information that is already in the publicly [sic] domain" because "it is information that is in the Transportation Department's regulatory docket" is an empty assertion. Exhibit F, p. 3.

OMB also asserts that some of the documents it would most likely release will likely contain information "that is available in the press or other public documents." Exhibit F, p. 3. However, OMB provides absolutely no guidance as to where in the public domain this information exists beyond "the press or other public documents." This vagueness is fatal to OMB's contention. An explanation of where in the public domain the information requested resides "is necessary because the mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions." Campbell v. Dep't of Justice, 164 F.3d 20, 36 (D.C. Cir. 1998); see also Carney, 19 F.3d at 815-16; Schrecker v. Dep't of Justice, 970 F. Supp. 49, 50-51 (D.D.C. 1997); Fitzgibbon v. Agency for Int'l Dev., 724 F. Supp. 1048, 1051 (D.D.C. 1989). Likewise fatal to OMB's contention is that it has not "indicated how closely related the requested material [is] to material already existing in the public domain." Campbell, 164 F.3d at 36. These omissions "preclude[] deference to" OMB's "ultimate conclusions" that much of the information contained in the requested documents would be likely to release already exists in the public domain. Id.

In sum, OMB's assertion that some of the documents it would most likely release will likely contain information that "is already in the publicly [sic] domain" is unsubstantiated and can not lawfully inform and influence its determination as to the merits of the Center's fee waiver request. Exhibit F, p. 3.

**Third Issue**

OMB's third listed rationale for denying the Center's appeal is that it has no legal responsibility for ensuring that the "CAFE regulations are in compliance with such statutes as EPCA and NEPA" and thus, impliedly, that release of the requested documents would not contribute to

public understanding of the rulemaking process. Exhibit F, p. 4. Like the two before it, this rationale is likewise insufficient to support OMB's denial of the Center's fee waiver request.

First, OMB's assertions ignore the fact that OMB was intimately involved in the final rulemaking, especially in regard to the economic analysis and therefore, clearly has documents that will shed light on the DOT's and NHTSA's compliance with EPCA, NEPA and other applicable laws in setting the fuel economy standards for light trucks for model years 2008-2011. The fact that the documents held by OMB may shed light primarily on other agencies' compliance with federal law cannot be a justification for refusing to disclose the documents. In addition, OMB may very well have documents shedding light on DOT's and NHTSA's activities that are not held by these agencies themselves.

Regardless, as pointed out in the Center's original appeal, the requested documents could contain information regarding, or shed light upon, OMB compliance with the APA or any other applicable law or standard regarding agency action. In other words, contrary to OMB assertions, the Center is not limiting potential legal violations to NEPA or EPCA and is also inquiring into whether there are any ethical improprieties that occurred by OMB. Thus, while it unknown at this time whether OMB's actions in regard to the fuel economy standards violate any applicable law or standard, such information may well be revealed by the FOIA Request.

Aside from compliance with any legal and ethical duties OMB has, disclosure of the requested documents, as aforementioned, would assuredly reveal to the public information about how OMB and, likely, DOT, have performed their duties and, in general, what they are "up to." United States Dep't of Defense, 510 U.S. at 495. Courts have consistently held this type of information is important to the public regardless of whether it sheds light on any governmental improprieties. See Judicial Watch, 326 F.3d at 1313 ("government counsel complained that Judicial Watch provided no evidence that Rossotti actually had a conflict of interest. That may be true, but the question here is not whether Rossotti had such a conflict, but whether disclosure is likely to contribute to public understanding of IRS operations—a goal that disclosure will promote regardless of what the documents reveal."); see also United States Dep't of Defense 510 U.S. at 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure ... focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose"). In short, OMB cannot bootstrap a requirement that the requester prove that the requested documents reveal actual legal violations before OMB agrees to release them.

**Fourth Issue**

OMB's final contention is that it is "not clear" that any information it would disclose to the Center "would contribute to the understanding *of the public at large.*" Exhibit F, p. 4. In making this argument, OMB seems to have completely ignored the Center's extensive elaboration, on pages 6-8 of the Center's January 29 appeal, of its ability and intent to understand, process, and disseminate to the public the information it would glean from disclosure of the requested documents. Under existing case law, the Center unquestionably meets this dissemination prong of the fee waiver test.

To satisfy the dissemination requirement, an applicant for a fee waiver must merely show that it is able to reach "a reasonabl[y] broad audience of persons interested in the subject" and not the need to "reach a broad cross-section of the public." Carney, 19 F.3d at 814-15; see also Cmty. Legal Servs., Inc. v. HUD, 405 F. Supp. 2d 553, 557 (E.D. Pa. 2005) (noting that although the requester/fee waiver applicant's limited dissemination methods are unlikely to reach a general audience, "there is a segment of the public interested in requester's work"). As one D.C. district court has noted, in "this Information Age, technology has made it possible for almost anyone to fulfill [the dissemination] requirement." D.C. Technical Assistance Org. v. HUD, 85 F. Supp. 2d 46, 49 (D.D.C. 2000); see also VoteHemp, Inc. v. Drug Enforcement Administration, 237 F. Supp. 2d 55, 62 (D.D.C. 2002) (finding fee waiver applicant's three part dissemination plan - using its Web site, issuing press releases, and communicating legislators - sufficient to satisfy the dissemination prong); Forest Guardians, 416 F.3d at 1180 (finding Forest Guardian's publication of "an online newsletter, which is e-mailed to more than 2,500 people" and statement "that it intends to establish an interactive grazing web site with the information obtained from the BLM" sufficient to satisfy dissemination requirement).

The Center meets the dissemination requirement because it has the requisite staff, experience and resources to understand the material requested and has the ability and intent to disseminate the information to a "reasonabl[y] broad audience of persons interested in the subject" of the CAFE standards, as well as air pollution, climate change, and energy issues more generally. Carney, 19 F.3d at 814-15. First, the fact that the Center has for years had a Climate, Air, and Energy Program dedicated exclusively to these issues is illustrative of its expertise in and capacity to understand the information requested from OMB. More specifically, the program has its own staff members who work solely on climate, air, air and energy issues. The program's staff includes Kassie Siegel, the program director and staff attorney, Shaye Wolf, a staff biologist, Brian Nowicki, a policy analyst and conservation biologist, and Matt Vespa, a staff attorney. In addition, the program is frequently aided by other staff members of the Center. All of these people have the ability to process the information obtained from the FOIA and explain it to the public. Thus, contrary to OMB's assertion, the Center will not just be making the information available. It will be read, processed, and explained to the public. Such efforts are not "passive" as OMB seems to believe.

The Center similarly has the clear ability and intent to *actively* disseminate the information to a reasonably broad audience of interested persons. Just as the requester in Forest Guardians, the Center sends out regular electronic newsletters, called Biodiversity alerts, which contain in part information such as that presently requested, approximately once a week to nearly 17,000 people – all of whom are interested in such information, as shown by their being on the mailing list. Forest Guardians, 416 F.3d at 1180. Furthermore, like the requester in VoteHemp, the Center also publishes a print newsletter, and plans to highlight the information gleaned from disclosure of the requested documents in at least one edition. Vote Hemp, 237 F. Supp. 2d at 62. In addition, the Center plans to use knowledge gained from the requested information in comment letters to and other communications with federal government agencies and other officials. The Center also plans to highlight what it learns from the requested information on its website, which is accessed several hundred-thousand times each month. Lastly, the Center's ongoing litigation over the CAFE rulemaking, as well as many of the Center's Climate, Air, and Energy Program's past endeavors, have received an enormous amount of media attention, in print, on the television, and on the radio. See e.g. Exhibits G, H, I. Again, the Center's efforts are not "passive" and

easily meet the objectives of FOIA's fee waiver provisions. See Judicial Watch, Inc. v. DOE, 310 F. Supp. 2d at 292 (finding that requester's "litany of means by which it [could] publicize[] information" without any specific representation that it intended to do so in instant case satisfied dissemination requirement).

Finally, the Center's past history of active dissemination supports its current ability and intent to disseminate information gleaned from OMB. The Center has, on numerous occasions, disseminated documents that were based entirely or largely from information gleaned from FOIA requests. For example, the Center learned from one FOIA request that the U.S. Fish and Wildlife Service had improperly conducted its analysis in regard to an Endangered Species Act petition the Center had submitted. The Center processed that information and disseminated it in a press release and on its website. See http://biologicaldiversity.org/swcbd/press/desert-bald-eagle-05-17-2007.html. Similarly, the Center issued a press release, based largely on information obtained through various FOIA requests, regarding Julie MacDonald's improper actions while working at the Department of Interior. See http://biologicaldiversity.org/swcbd/press/macdonald-05-22-2007.html.

Thus, the Center has clearly met its burden of explaining "in detailed and non-conclusory term—again all that FOIA requires—exactly how and to whom it will disseminate the information it receives." Rossotti, 326 F.3d at 1314; see also VoteHemp, 237 F. Supp. 2d at 62; D.C. Technical Assistance, 85 F. Supp. 2d at 49; Forest Guardians, 416 F.3d at 1180.

## Conclusion

For the reasons stated above, none of the points raised by OMB in its denial of the Center's fee waiver appeal are valid. Therefore we respectfully ask that OMB immediately grant a fee waiver and begin searching for responsive documents. At the very least, please respond within twenty working days. Thank you.

Sincerely,

*Justin Augustine*

Justin Augustine