Deborah A. Sivas (CA Bar No. 135446)
Leah J. Russin (CA Bar No. 225336)
Noah Long (Certified Law Student)
ENVIRONMENTAL LAW CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 725-8571
Facsimile (650) 723-4426

Justin Augustine (CA Bar No. 235561)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market Street, Suite 511
San Francisco, CA 94103
Phone: (415) 436-9682
Facsimile: (415) 436-9683
Email: jaugustine@biologicaldiversity.org

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit organization, <br><br> Plaintiff, <br><br> v. <br><br> THE OFFICE OF MANAGEMENT AND BUDGET, <br><br> Defendant. | Civil Action No. C 07-4997 MHP <br><br> **DECLARATION OF JUSTIN AUGUSTINE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT** <br><br> **Date:** Feb. 25, 2008 <br> **Time:** 2:00 p.m. <br> **Courtroom:** 15, 18th Floor |

I, JUSTIN AUGUSTINE, hereby declare and state:

1.      I offer this declaration in support of Plaintiff's Motion for Summary Judgment.  The matters set forth herein are stated upon my personal knowledge, and if called upon to testify, I could and would testify competently as to them.

2.      I am a staff attorney with the Center for Biological.

3.      The Center for Biological Diversity ("Center") is a non-profit corporation with over 40,000 members and offices in San Francisco, San Diego, Joshua Tree, and Shelter Cove, California; Tucson, Arizona; Portland, Oregon; Silver City, New Mexico; and Washington, D.C.  The Center is dedicated to protecting imperiled species and their habitats by combining scientific research, public organizing, and administrative and legal advocacy.

4.      On August 29, 2006, the Center submitted a Freedom of Information Act ("FOIA") request to the Department of Transportation and ("DOT") and the Office of Management and Budget ("OMB") seeking documents associated with the Corporate Average Fuel Economy ("CAFE") rulemaking for "light trucks," published in the Federal Register on April 6, 2006, that were not included on the electronic docket for the rulemaking available to the public.  The request also sought a fee waiver.  A true and correct copy of the letter to OMB and DOT, dated August 29, 2006, is attached as Exhibit A.

5.      On or about October 12, 2006, OMB responded to the Center's letter by asking the Center to narrow the scope of its request.  A true and correct copy of this response is attached as Exhibit B.

6.      On October 20, 2006, the Center received a similar letter from DOT.  A true and correct copy of the response from DOT is attached as Exhibit C.

7.      On November 7, 2006, I responded to both DOT and OMB on behalf of the Center.  In those responses, I reiterated the Center's request, explaining that it was crafted to request only those

1  documents related to the rulemaking that are not already in the public domain.  A true and correct copy

2  of my letter to OMB and DOT is attached as Exhibit D.

3          8.      On or about December 8, 2006, the Center received another letter from DOT.  In that

4  letter, DOT stated that it did not consider the Center's November 7, 2006, letter to be an administrative

5  appeal under FOIA and that, in any event, DOT was denying the Center's request for a fee waiver.

6  DOT stated that it would not proceed with the FOIA request until the Center had paid DOT's estimate

7  of the fees, which it calculated to be $4,080.  A true and correct copy of this letter from DOT is attached

8  as Exhibit E.

9          9.      On December 15, 2006, on behalf of the Center, I filed a second administrative appeal

10  with DOT regarding the denial of the fee waiver.  In that appeal, I fully explained why DOT's

11  assertions were in error and why the Center is entitled to a fee waiver.  A true and correct copy of this

12  letter is attached as Exhibit F.

13         10.     On January 22, 2007, the Center received a two-sentence letter from the DOT Office of

14  Counsel, stating that the Center's fee waiver appeal had been granted and that DOT would process the

15  Center's FOIA request without imposing fees.  A true and correct copy of this letter from DOT is

16  attached as Exhibit G.

17         11.     OMB finally responded to my November 7, 2006 letter on or about January 26, 2007,

18  denying the Center's fee waiver request.  OMB based its denial on the argument that it might ultimately

19  refuse to release many documents because it "anticipated" that the documents requested would be

20  "deliberative material, the disclosure of which would inhibit the frank and candid exchange of views

21  necessary for effective government decision-making."  OMB refused to process the document request

22  unless the Center advanced a fee of $6,171.  A true and correct copy of this letter from OMB is attached

23  as Exhibit H.

DECLARATION OF JUSTIN AUGUSTINE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
– Case No. C 07-4997 MHP

12.     On behalf of the Center, I immediately appealed the OMB fee waiver denial.  In the appeal letter, dated January 29, 2007, I explained that the waiver was required based on the plain language of the statute and that the interpretation taken by OMB had no legal basis.  A true and correct copy of my letter to OMB is attached as Exhibit I.

13.     On March 14, 2007, on behalf of the Center, I sent another letter to OMB and DOT expressing the Center's concern with the long delay in responding to our request.  A true and correct copy of my letter to my OMB and DOT (without attachments) as Exhibit J.

14.     On or about June 12, 2007, OMB denied the Center's administrative appeal of the fee waiver denial.  In addition to discussing the reasons for denial, OMB's letter also stated that the Center could treat the response as a final decision on appeal or could submit "additional information" before a final decision was made.  A true and correct copy of this letter from OMB is attached as Exhibit K.

15.     In response, on July 19, 2007, I sent additional information on behalf of the Center explaining the illegality of the OMB's decision and seeking reversal of the fee-waiver decision.  A true and correct copy of this letter is attached as Exhibit L.

16.     Since the July 19, 2007 appeal was sent, I have left multiple voicemail messages with the OMB FOIA officers.  OMB has not responded to my calls or to the July 19, 2007 letter.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at San Francisco, California on January 23, 2008.


 /s/  Justin Augustine_____
Justin Augustine

**EXHIBIT LIST**

**Exhibit A.** Original FOIA request to OMB and DOT by Center, August 29, 2006.

**Exhibit B.** Letter from OMB to Center denying request, dated October 12, 2006.

**Exhibit C.** Letter from DOT to Center denying request, dated October 20, 2006.

**Exhibit D.** Letter from Center to OMB appealing denial and reiterating request, dated November 7, 2006.

**Exhibit E.** Letter from DOT to Center denying fee waiver, dated December 8, 2006

**Exhibit F.** Letter from Center to DOT appealing fee waiver denial, dated December 15, 2006.

**Exhibit G.** Letter from DOT to Center, granting fee waiver, dated January 22, 2007.

**Exhibit H.**  Letter from OMB to Center denying fee waiver, dated January 26, 2007.

**Exhibit I.** Letter from Center to OMB appealing fee waiver denial, dated January 29, 2007.

**Exhibit J.**  Letter from Center to OMB and DOT reiterating fee waiver request, dated March 14, 2007

**Exhibit K.** Letter from OMB to Center denying fee waiver appeal and requesting further information, dated June 12, 2007.

**Exhibit L.** Letter from Center to OMB, with "further information" on appeal of fee waiver denial, dated July 19, 2007.

DECLARATION OF JUSTIN AUGUSTINE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT – Case No. C 07-4997 MHP

# Exhibit A



# CENTER FOR BIOLOGICAL DIVERSITY

### BECAUSE LIFE IS GOOD.

August  29, 2006

**VIA FACSIMILE AND CERTIFIED MAIL; RETURN RECEIPT REQUESTED**

National Highway Traffic Safety Administration
Executive Secretariat
Room 5221
400 Seventh Street, S.W.
Washington, DC  20590

Donald Hawkins, FOIA Officer
Office of Management and Budget
Room 9026
725 17th Street, NW
Washington, DC  20503

Kathy Ray
U.S. Department of Transportation
Office of the Secretary of Transportation
C-12/Room 5432
400 Seventh Street, SW
Washington, DC  20590

RE: Request for Materials under the Freedom of Information Act

Dear FOIA Officers:

I am writing to request the following documents pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, on behalf of the Center for Biological Diversity ("Center").  The Center is a non-profit, public interest, conservation organization whose mission is to conserve imperiled native species and their threatened habitat and to fulfill the continuing educational goals of its membership and the general public in the process. The primary goal of the Center's Climate, Air, and Energy Program is to reduce United States greenhouse gases and other harmful air pollutants in order to protect biological diversity, public health, and the environment.  Consistent with this mission, and consistent with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, this request describes the records sought and our request for a fee waiver.

### RECORDS REQUESTED

We respectfully request that you produce the following records:

**All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309.  This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466).  This request includes but is not**

Tucson • Silver City • San Francisco • San Diego • Portland • Phoenix • Joshua Tree • Washington, DC
_____
Kassie Siegel, Climate, Air, and Energy Program Director
P.O. Box 549, Joshua Tree, CA  92252
Ph: 760-366-2232 Fax: 760-366-2669
Email: ksiegel@biologicaldiversity.org  web: www.biologicaldiversity.org

**limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

This request includes records at the headquarters or other offices of the National Highway Traffic Safety Administration ("NHTSA"), Department of Transportation ("DOT"), and Office of Management and Budget ("OMB"), and in the individual files of all agency employees involved in the rulemaking.

If a portion of a record is responsive to this request, but another portion is not responsive, we request that you disclose the entire record, without redacting any non-responsive portions. Should you believe that a portion of any document is exempt from disclosure, please provide the document with the only exempt portion only redacted.

Should you elect to withhold any documents or portions thereof responsive to this request for each document, please provide the identity of the author (including their title and position) and all recipients  (including their title and position), the date, the subject of the record, and the particular privilege claimed.  For any records or portion thereof withheld under 5 U.S.C. §552(b)(5) please explain:

1) Why is each document predecisional?

    A.  To what decision are each of the documents leading?
    B.  Has this decision been finalized?

2) Why is each document deliberative?
    A.  To what extent does each make a recommendation on a legal or policy matter?

3) What policy recommendation qualifies this document for exemption?

## REQUEST FOR FEE WAIVER

We request that you waive all fees in connection with this matter.  As shown below, we meet the two-pronged test under FOIA for a fee waiver, 5 U.S.C. § 552(a)(4)(A)(iii), as implemented by your agencies' regulations at 49 C.F.R. § 7.44(f) (DOT) and 5 C.F.R. § 1303.70 (OMB), because the requested information will significantly contribute to public understanding of the issues involved.  Each of the factors that the agencies must consider in deciding whether to grant a fee waiver is addressed below.

In considering whether we meet the fee waiver criteria, it is imperative that the agencies remember that FOIA, in general, carries a presumption of disclosure and that the fee waiver amendments of 1986 were designed specifically to allow non-profit, public interest groups such as the Center access to government documents without the payment of fees.  As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information . . ."  132 Cong. Rec. S. 14298 (statement of Sen. Leahy).  In interpreting

this amendment, the 9th Circuit has stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." (citing Sen. Leahy).  The amendment's main purpose was "to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA. (citing Sen. Leahy). <u>McClellan Ecological Seepage Situation v. Carlucci</u>, 835 F.2d 1282, 1284 (9th Cir. 1987).

As the influential District of Columbia Circuit Court has stated this waiver provision was added to FOIA "*in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests,*" in clear reference to requests from journalists, scholars, and nonprofit public interest groups.  <u>Better Gov't Ass'n v. Department of State</u>, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting <u>Ettlinger v. FBI</u>, 596 F. Supp. 867, 876 (D. Mass. 1984) (emphasis added).


I.  Obtaining the Information is of No Commercial Interest to the Center.

The Center has no commercial interest that would be furthered by the requested disclosure. The Center is a public interest, non-profit organization with over 25,000 members that informs, educates, and counsels our members and the public regarding environmental issues, policies, and laws. We have been substantially involved in the management activities of numerous government agencies for years, and have consistently displayed our ability to disseminate information granted to us through FOIA fee waivers.

II.   The Subject of the Request Concerns "the Operations and Activities of the Government."


The subject matter of this request is the NHTSA's rulemaking setting average fuel economy standards for light trucks for model years 2008-2011 pursuant to the Energy Policy and Conservation Act, 49 U.S. 32901 *et seq.* ("EPCA").    NHTSA's rulemaking pursuant to EPCA is obviously an identifiable activity of the government.  The requested documents are clearly related to and highly informative about the rulemaking.

III.   The Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

In determining the informative value of the requested documents, the agencies should consider the content of the record, the identity of the requester, and the interrelationship between the two.  The documents requested concerning the light truck fuel economy rulemaking, which are not currently publicly available, are certain to shed light upon the agencies' compliance with EPCA and the Administrative Procedures Act.  Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA.  The public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted.  <u>See</u> <u>Judicial Watch v. Rossotti</u>, 326 F.3d 1309, 1314 (D.C. Cir. 2003) ("[T]he American people have as much interest in knowing that key [agency] decisions are free from the taint of conflict of interest as they have in discovering that they are not.").  The requesters intend to fulfill their well established function of public oversight of agency action. We are not requesting these documents merely for their intrinsic informational value.

FOIA Request
August 29, 2006
Page 3 of 5

U.S. Government agencies including the Air Force, Animal Damage Control, Army, Army Corps of Engineers, Bureau of Land Management, Bureau of Reclamation, Department of Agriculture, Department of Commerce, Department of Defense, Department of the Interior, Department of Justice, Department of Transportation, Federal Bureau of Investigation, Federal Aviation Administration, Fish and Wildlife Service, Forest Service, General Accounting Office, National Aeronautical and Space Administration, National Science Foundation, Office of Management and Budget, Rural Economic Community Development Agency, and the Smithsonian Institution, among others, consistently grant our requests for the waiving of FOIA fees. Substantive FOIA responses consistently conforming with the spirit of the FOIA and consistently conforming with the FOIA fee waiver have been provided to our organizations from these Federal agencies many times.

In consistently granting the fee waivers, all of these agencies have recognized that (1) our requested information contributes significantly to the public understanding of the operations or activities of the government, (2) our requested information enhances the public's understanding to a greater degree than currently exists, (3) we possess the expertise to explain the requested information to the public, (4) we possess the ability to disseminate the requested information to the general public, (5) and that the news media recognizes that we are an established expert in the field of environmental protection and energy use.

IV.  The Disclosure of the Requested Information Will Contribute to the Understanding of the Public at Large and the Contribution to Public Understanding Will be Significant

In determining whether the disclosure of requested information will contribute significantly to public understanding, one guiding test is whether the requester will disseminate the disclosed records to a *reasonably broad audience of persons interested in the subject*. Carney v U.S. Dept. of Justice, 19 F.3d 807 (2nd Cir. 1994)(emphasis added).  It is clear that release of the requested documents will contribute to better understanding of the public at large, and that the contribution to public understanding will be significant.

The rulemaking setting fuel economy standards for light trucks is the subject of significant interest to the public, as well as to the media, and to the California legislature.  This interest is demonstrated, in part, by the large number of comments received on the Proposed Rule, and by the large number of media stories covering the rulemaking.  Because the transportation sector accounts for approximately one third of the nation's greenhouse gas emissions, this rulemaking greatly impacts the overall level of greenhouse gas emissions in this country.  Global warming is of intense interest to the public as demonstrated by the level of public concern and increase in media coverage in recent months.

The requested documents are not currently in the public domain.  Their release is not only "likely to contribute," but is in fact certain to contribute to better public understanding of the process which led to the Final Rule and fuel economy standards for model years 2008-2011.  Our organization's track record of active participation in oversight of governmental agency activities and our consistent contribution to the public's understanding of agency activities as compared to the level of public understanding prior to disclosure are well established.  The Center's membership alone is over 25,000 strong. The Center is also an established expert at communication of environmental, regulatory, and legal matters to the public.

Public oversight and enhanced understanding of the NHTSA's highly controversial EPCA rulemaking is absolutely necessary and an integral part of our democratic system.

The requested comments will be used to determine whether the agencies complied with EPCA, its implementing regulations, and the Administrative Procedures Act (5 U.S.C. §§ 701 et seq.). Concurrent with any action which the requesters may take after obtaining the requested documents, we will publicize the reasons for the action and the underlying actions of the agencies that have prompted the action.  This is certain to result in a significant increase in public understanding of government agency activity, and in particular of the EPCA rulemaking.  We have enforced the provisions of our nation's laws and regulations many times through information gained from FOIA requests like this one. We intend to use the documents requested in this request in a similar manner.   While we cannot know what precisely the documents will reveal, it is certain that they will shed light on the agencies' rulemaking process.  FOIA does not require more.  See Western Watersheds Project, 318 F.Supp.2d at1040 ("In the letter denying the appeal, the FOIA Officer stated that WWP had failed to demonstrate....how the information would contribute to the understanding of the general public of the operations or activities of the government.  The Court, however…finds that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and…how management strategies employed by the BLM may adversely affect the environment."); Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025 (D.D.C. 2005) ("requiring Judicial Watch to outline a specific plan in addition to describing its methods of publication would amount to 'pointless specificity'").

## CONCLUSION

We hope that this letter has demonstrated to your satisfaction that the Center qualifies for a full fee waiver, and that you will immediately begin to search and copy the requested material.  Should you decide not to waive fees, we plan to immediately appeal such a decision.

We request that all records currently existing in electronic format be provided on a compact disk, and all other documents on paper.

Please send all materials to me at the address on this letterhead:  Kassie Siegel, Center for Biological Diversity, P.O. Box 549, Joshua Tree, CA  92252.  Please contact me at (760) 366-2232 x302 when the documents have been compiled, and if you have any questions about this request.  We look forward to your reply within twenty working days as required by FOIA.  5 U.S.C. 552(a)(6)(A)(i).

Sincerely,

Kassie Siegel

# Exhibit B

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

October 12, 2006

Ms. Kassie Siegel
Center for Biological Diversity
Climate, Air and Energy Program Director
P.O. Box 549
Joshua Tree, CA 92252

Dear Ms. Siegel:

This letter is in response to your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated August 29, 2006, which was received in this office on September 14, 2006. Your request asked for all documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the Internet in Docket Nos. 2005-22223 and 2006-24309. This request includes communications among staff and with others that were created during the development of the Final Rule and the earlier Proposed Rule (70 Fed. Reg. 51414-51466). This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.

After careful review of your request, we have determined that your request is overly broad and, in order to respond to your request, you will need to narrow the scope of your request in order to enable OMB staff to appropriately respond. Accordingly, OMB is requesting that you refine the scope of your request to focus on the information that is of most interest to you.

We await your reply in writing on how you would like OMB to proceed. If we do not hear back from you in 30 days, we will assume that you are no longer interested in this request, and we will close the request.

Sincerely,

Lauren E. Wright
Deputy Assistant Director
for Administration

# Exhibit C



**U.S. Department of
Transportation**

Office of the Secretary
of Transportation

GENERAL COUNSEL

400 Seventh St., S.W.
Washington, D.C. 20590

October 20, 2006

Ms. Kassie Siegel
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA  92252

Refer to:  FOIA File 2006-293

Dear Ms. Siegel:

This is in response to your Freedom of Information Act (FOIA) request dated August 29,
2006, addressed to the Department of Transportation's (DOT) National Highway Traffic
Safety Administration (NHTSA) and Office of the Secretary (OST).

You requested "all documents relating to the development of the Final Rule setting
average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg.
17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos.
2005-22223 and 2006-24309." You indicated that your request included documents
relating to the Proposed Rule as well as the Final Rule and that your request included
records at Headquarters and other offices and in the individual files of all agency
employees involved in the rulemaking. You further stated that "this request includes but
is not limited to e-mail exchanges or other correspondence among agency staff and
between agency staff and others, draft documents, internal reviews and critiques, inter-
agency reviews, agency meeting notes, etc."

The departmental FOIA office is coordinating the response to your FOIA request.

When the Department conducted an assessment of documents within the scope of your
request, it became apparent that your request is extremely broad. As such, it would target
a voluminous amount of information and would require an extensive and potentially
burdensome search and review of large numbers of files and documents. We request that
you narrow the scope of your request so that OST and NHTSA employees may conduct a
reasonably appropriate search for documents in a reasonable amount of time. A refined
scope would help departmental employees provide you with the documents that would be
most useful to you and enable them to do so in a more timely manner.

2

We request that you provide us with the refined scope of your request by
November 30, 2006.  You may send your response via mail or fax (202-366-8536).

Sincerely,

Kathy Ray
Departmental FOIA Officer

# Exhibit D

 CENTER FOR BIOLOGICAL DIVERSITY

November 7, 2006

**SENT VIA FACSIMILE AND OVERNIGHT UPS**

Donald Hawkins
FOIA Officer, Office of Management and Budget
725 17th Street NW, Room 9026
Washington, DC 20503
Fax: (202) 395-3504

Kathy Ray
Departmental FOIA Officer
C-12/Room 5432
400 Seventh St., SW
Washington, D.C. 20590
Fax: (202) 366-8536
Re: FOIA File 2006-253

**FREEDOM OF INFORMATION ACT APPEAL**

Dear FOIA Appeal Officers:

On behalf of the Center for Biological Diversity ("the Center"), and pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), I am writing to respond to the Office of Management and Budget's denial of the Center's August 29, 2006, FOIA request. The August 29 FOIA asked for the following information:

> **All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309. This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466). This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

<u>See</u> Exhibit A.

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney • 1095 Market St., Suite 511 • San Francisco, CA 94103
Phone: 415-436-9682 x302 • Fax: 415-436-9683 •
jaugustine@biologicaldiversity.org

On October 12, 2006, the Office of Management and Budget ("OMB") replied to the request stating that the request "is overly broad."  See Exhibit B.

On October 20, 2006, the U.S. Department of Transportation ("USDOT") responded in similar fashion stating that the request is "extremely broad," and "would target a voluminous amount of information and would require an extensive and potentially burdensome search and review of large numbers of files and documents."  See Exhibit C.

The Center feels that its request is already detailed enough and believes that it is not too broad or too burdensome for the following reasons.

The Supreme Court has clearly stated that FOIA seeks "to establish a general philosophy of full agency disclosures unless information is exempted under clearly delineated statutory language." NLRB v. Sears, Roebuck, & Co., 421 U.S. 132, 136 (1975) (quoting S. Rep. No. 813, 89th Cong., 1st Ses., 3 (1965)).  The agency must show "by specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA."  Mead Data Central Inc. v. Dept. of the Air Force, 566 F.2d 242, 258 (D.C. Cir. 1978); see also Lowry v. SSA, 2001 U.S. Dist. LEXIS 23474 (D. Or. 2001) ("Though burdensome, Lowry's request must be viewed in the light of the strong presumption in favor of disclosure.").

In regard to the detail that FOIA requests must contain, FOIA explicitly states that a request must "reasonably describe" the records desired.  5 USCS § 552(a)(3)(A).  As pointed out in Yeager v. Drug Enforcement Admin., "the linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested.'" 220 U.S. App. D.C. 1, 33 (D.C. Cir. 1982) (citing S.Rep. No. 854, 93d Cong., 2d Sess. 10 (1974); Source Book at 162; H.Rep. No. 876, 93d Cong., 2d Sess. 5-6 (1974), U.S.Code Cong. & Admin.News, p. 6267; Source Book at 125-26); see also Peyton v. Reno, 1999 U.S. Dist. LEXIS 12125, 3-4 (D.D.C. 1999) ("A request reasonably describes records if the agency is able to determine precisely what records are being requested.").

The Center's August 29, 2006, request does just what FOIA asks—it "reasonably" describes the documents desired and even points the agency to the specific final agency decision at issue, the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011. There is no question that OMG and USDOT can "determine precisely what records are being requested."  If the record addresses average fuel economy standards for light trucks for model years 2008-2011, then it falls within the request.  In fact, this is just the type of request that agencies should be prepared for.  While an agency could obviously not prepare well for or anticipate a request asking, for instance, for all documents with the word Scientology in it, it is quite reasonable to assume that records addressing a final agency rule would be organized such that they could be readily accessed.

There is likewise no reason that the requested documents should be prohibitively voluminous. The Center's request is in no way a "broad, sweeping, indiscriminate request for production lacking any specificity."  Irons v. Schuyler, 465 F.2d 608, 612 (DC Cir. 1972).  To the contrary, the request deals with one specific agency decision and is not at all comparable to situations

where requests were deemed "unduly" burdensome by the courts.  See American Federation of Government Employees, Local 2782 v. U.S. Dep't of Commerce, 907 F.2d 203, 208 (D.C. Cir. 1990) (unreasonable to require a search of  "every chronological office file and correspondent file, internal and external, for every branch office, staff office [etc.]."); Church of Scientology v. Internal Revenue Serv., 792 F.2d 146, 151 (DC Cir. 1986) (unreasonable to require a "search through every file in [the IRS'] possession to see if a reference to Scientology appeared"); Irons, 465 F.2d at 611-12 (unreasonable to require a search of 3,500,000 files of patents as well as 1,000,000 other files).

Moreover, neither the OMB nor USDOT has provided any reasoning for its conclusory assertions.  To simply claim that the Center's request is somehow too broad or too burdensome violates FOIA's goals of open government.  See Armstrong v. Bush, 139 F.R.D. 547, 553 (D.D.C. 1991)("The D.C. Circuit has held that where the agency's ability to retrieve requested documents is at issue, an 'undiscriminating adoption' of the agency's assertion is inappropriate and could 'raise the specter of easy circumvention' of the FOIA." (citing Founding Church of Scientology, Inc. v Nat'l Security Agency, 1610 F.2d 824, 837 (D.C. Cir. 1979))

Because it is clear what records the Center has requested, and because records associated with one final agency decision should not be "unduly" burdensome to provide, the Center asks that OMB and USDOT immediately begin to conduct a search for and assemble the requested documents.  The Center considers this letter to be an appeal of both OMB and USDOT's responses and as such, requests a response within 20 working days as mandated by FOIA.  5 U.S.C. § 552(a)(6)(A)(ii).

If you have any further questions, please call me at (415) 436-9682 ext. 302.  We await your prompt reply.

Sincerely,

*Justin Augustine*

Justin Augustine

# Exhibit E

**U.S. Department
of Transportation**

Office of the Secretary
of Transportation

**GENERAL COUNSEL**

400 Seventh St., S.W.
Washington, D.C. 20590

December 8, 2006

Justin Augustine, Esq.
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103

RE: FOIA File No. 2007-32

Dear Mr. Augustine:

This letter responds to Center for Biological Diversity's (CBD's) November 7 letter, in
which CBD purports to appeal the Department of Transportation's (DOT's) request that
CBD narrow the scope of its Freedom of Information Act (FOIA) request.

CBD's original FOIA request of August 29, 2006, sought all records relating to the
development of the National Highway Traffic Safety Administration's (NHTSA's) final
rule that set corporate average fuel economy standards for light trucks. It also requested a
fee waiver. CBD sent the same request to the Office of Management and Budget (OMB).
CBD does not seek records posted on DOT's internet docket website.

DOT replied on October 20 that the request targeted an unusually large number of
records and we "request[ed] that you narrow the scope of your request so that [DOT] and
NHTSA employees may conduct a reasonably appropriate search for documents in a
reasonable amount of time. A refined scope would help [DOT] employees provide you
with the documents that would be most useful to you and enable them to do so in a more
timely manner." CBD responded with a November 7 letter to DOT and OMB, titled it a
FOIA appeal and stated that CBD considers the letter an appeal of DOT's response under
FOIA's administrative appeal section, 5 U.S.C. § 552(a)(6)(A)(ii).

I do not consider CBD's letter an appeal to DOT under either the FOIA or DOT's
regulations, 49 CFR § 7.21, because DOT has made no determination to grant or deny
CBD's request. DOT routinely communicates with FOIA requesters, prior to making an
initial determination, in order to expedite processing of FOIA requests. This was the
stated intention of DOT's October 20 letter.

Since CBD has decided not to narrow the scope of its request, DOT is next required to
determine whether to grant the fee waiver request. DOT's regulations provide for
payment of estimated fees in advance of searching for records when the expected charges
are likely to exceed $250 in situations where the requester does not have a history of
prompt payment of fees to DOT. 49 CFR § 7.42(d) and (e). I estimate that, with the

original scope of the request unchanged, the search fees alone will exceed $250. Furthermore, CBD has not established a payment history with DOT. Therefore, unless it qualifies for a fee waiver or a reduction in fees to below the $250 threshold, CBD would be required to make advanced payment of fees prior to a search.

To qualify for a fee waiver or fee reduction under the public interest standard, a FOIA requester must show: (1) that the disclosure of those records which can be released "is likely to contribute significantly to public understanding of the operations or activities of the government"; and (2) that the disclosure of such records is not primarily in the commercial interest of the requester. 49 CFR § 7.44(e). In reviewing CBD's arguments for a fee waiver in its August 29 original request, I find that it has failed to demonstrate it qualifies for a fee waiver under the public interest standard.

At the outset, I find that CBD does not have a primarily commercial interest in the requested records that can be disclosed.

In determining whether disclosure is likely to contribute significantly to public understanding of government operations, DOT regulations direct me to consider four factors: (1) whether the requested records' subject matter concerns the operations of the Federal government; (2) whether the disclosure of the requested records that would routinely be released will contribute to an understanding of Federal government operations; (3) whether the disclosure of the requested records that would routinely be released will contribute to the understanding of the public at large; and (4) whether the disclosure's contribution to the public's understanding of Federal government operations will be significant. 49 CFR § 7.44(f).

As to the first factor, I find that the subject matter of probably almost all of the requested records concern the operations of the Federal Government. [1]

As to the second factor (that disclosure of releasable records will contribute to an understanding of Federal government operations), CBD's FOIA request states:

> (a) that the requested documents "are certain to shed light upon the agencies' compliance with EPCA and the Administrative Procedures Act"; and

> (b) that "[t]he requesters intend to fulfill their well established function of public oversight of agency action." (August 29 letter at p. 3.)

---

[1] / Since a search has only been estimated and not conducted, I have not reviewed the records but I speculate that the great majority of records will relate to government operations.

FROM OFFICE of GENERAL COUNSEL/US DOT/OST (FRI) 12  8'06 20:29/ST.20:28/NO.4861616877 P  4
Case 3:07-cv-04997-MHP    Document 23    Filed 01/25/2008    Page 24 of 72

3

The first statement is conclusory [2]/ and does not explain how the disclosure of releasable records [3]/ will contribute to an understanding of Federal government operations. Furthermore, CBD's reference to its desire to oversee agency action does not support its argument because it does not describe any CBD effort to educate the public on government operations. I therefore find that CBD has not satisfied the second factor.

As to the third factor (that disclosure of releasable records contributes to the public at large's understanding of government operations), I find that CBD has not demonstrated it satisfies this criteria. Although CBD claims other Federal agencies recognize that CBD "enhances the public's understanding to a greater degree than currently exists" and that CBD possesses expertise to explain and disseminate the requested information to the general public, I note that these are conclusory statements. Furthermore, I note that CBD has not stated how it intends to use the disclosable information to enhance the public's understanding.

I note as well that CBD is a petitioner in litigation with DOT. See Center for Biological Diversity v. NHTSA (9th Cir. 06-71891, 06-72317, 06-72641, 06-72694, 06-73807, 06-73826). That litigation challenges the validity of NHTSA's final rule setting corporate average fuel economy standards for light trucks, and CBD has filed a motion in that case seeking to supplement the record in that litigation with documents sought in CBD's FOIA request. Consequently, I cannot determine the extent to which CBD here uses FOIA as a tool for aiding litigation, at the taxpayer's expense, rather than education of the general public, which is the foundation of FOIA's fee waiver provisions. I therefore find that CBD has not satisfied the third factor.

---

[2]/ Judicial Watch, Inc. v. Dep't of Justice, Civ. No. 99-2315 (slip opinion at 5), 2000 WL 33724693 (D.D.C. Aug. 17, 2000) (where court ruled that conclusory statements do not satisfy agency regulation factors for granting FOIA fee waiver).

[3]/ My fee waiver analysis distinguishes between the records requested and the records that most likely will be disclosed. DOT routinely withholds under FOIA Exemption 5 records protected by the deliberative process, attorney-client and attorney work product privileges and under FOIA Exemption 4 records protected by the confidential commercial information privilege. 5 U.S.C. § 552(b)(4) and (5). To consider the records that would routinely not be released would create a fee waiver analysis based on an unrealistic assumption. The D.C. District Court supported this view in Van Fripp v. Parks, 2000 U.S. Dist. LEXIS 20158, Civ. No. 97-159 (D.D.C. March 16, 2000) (where the court excluded prisoners' personal records, as protected under FOIA Exemption 6, in determining the contribution to public understanding):

> There is no evidence to suggest that the plaintiff will find information that incriminates the [Bureau of Prisons] in the disclosable portion of the [Inmate Trust and Welfare Fund] documents. *** The court, thus, concludes that only the plaintiff's ITWF information is disclosable, and not that of other inmates. In view of the determination that only the plaintiff's ITWF information is disclosable, the plaintiff fails to demonstrate that the request for disclosure of the ITWF documents is meaningfully informative to whether the [Bureau of Prisons] is misappropriating his ITWF monies or ITWF funds generally. Thus, the plaintiff has failed to demonstrate the second factor pertaining to eligibility for a fee waiver.

Slip opinion at 17-18. The releasable portions of internal emails and memoranda will most likely show only the headings and not the employees' thinking on the issues relevant to CBD's request. Such headings reveal no meaningful information about the operations of government.

4

As to the fourth factor (that disclosure contributes significantly to the general public's understanding of government operations), I find that CBD has not demonstrated that it satisfies this criterion. CBD does not explain how it will significantly raise the public's understanding of government operations with the releasable documents. Rather, CBD presents a conclusory statement that this will occur and refers to media coverage of the rulemaking, the large number of comments submitted to DOT in the rulemaking and CBD's history of overseeing government agencies. None of these items presents a discussion of the relationship between CBD's receiving the releasable records and CBD's raising the public's understanding of government operations significantly beyond (a) what has already been presented in the media and (b) what has already been made public on the DOT docket website in the comments and in DOT's published analyses and decisions.

In light of the above analysis, I conclude that CBD has not met the requirements for a fee waiver pursuant to 49 CFR § 7.42(f).

I estimate the probable charges for search for the requested records to be $1,580. This estimate is based on 30 hours of search, with the possibility of additional search time.

CBD should be aware that draft rule documents, memoranda, emails, spreadsheets, research studies/documents, data model runs and flowcharts, which reflect the thinking process and exchange of ideas among staff and managers, are protected under FOIA Exemption 5 and DOT routinely withholds them. Memoranda, emails and notes of conversations involving government lawyers and reflecting strategies in anticipation of litigation are routinely withheld under the attorney work product privilege; and similar classes of documents reflecting staff and managers passing information to attorneys for the purpose of obtaining legal advice are routinely withheld under the attorney-client privilege. Confidential commercial information provided by businesses is routinely withheld under FOIA Exemption 4. In CBD's correspondence, I find no basis for varying from our routine withholding practices. The number of pages, which fall within the scope of CBD's request and which will have to be evaluated for releasable information, is now estimated as between 110,000 and 120,000 pages. Our very rough estimate of what pages may be partially or completely releasable is 25,000 pages at $0.10 per page duplication cost (estimated total duplication cost of $2,500). As mentioned above, DOT routinely withholds pages or parts of pages protected by the deliberative process, attorney-client, attorney work product and confidential commercial information privileges.

In light of these estimates, we are requiring an advance payment of the estimated fee of $4,080 within 30 days from the date of this letter. Please make CBD's check or money order payable to "U.S. Treasury" and send it to FOIA Collection Clerk, C-12, U.S. Department of Transportation, 400 7th St. SW, Washington, DC 20590. Please write CBD's FOIA file number, 2007-32, in the memorandum portion of the check.

5

If you would like to reformulate CBD's request in an effort to reduce the fees and expedite our processing the FOIA request, please write me or fax to (202) 366-8536. CBD's request will not be processed until the fee issue has been resolved. 49 CFR § 7.42. If we do not receive your response within 30 days from the date of this letter, we will consider this request withdrawn and administratively close your file.

I am the DOT official responsible for this fee waiver denial. You may request reconsideration of this determination by writing to Rosalind A. Knapp, Deputy General Counsel (C-2), U.S. Department of Transportation, 400 7th St. SW, Washington, DC 20590. Your request to appeal must be made in writing within 30 days from the date of receipt of this letter and must include all information and arguments relied upon. Your letter must also state that it is an appeal from this fee waiver denial and must include CBD's assigned file number (i.e., 2007-32). The envelope containing the appeal should be prominently marked "FOIA."

Sincerely,

Kathy Ray

Kathy Ray
Departmental Freedom of Information Act Officer

**Exhibit F**

 # CENTER FOR BIOLOGICAL DIVERSITY

*VIA FACSIMILE AND OVERNIGHT MAIL*

December 15, 2006

Rosalind A. Knapp
Deputy General Counsel (C-2)
U.S. Department of Transportation
400 7th St., SW
Washington, DC 20590

Kathy Ray
Departmental FOIA Officer
C-12/Room 5432
400 Seventh St., SW
Washington, D.C. 20590
Fax: (202) 366-8536

### FREEDOM OF INFORMATION ACT APPEAL
### (FOIA # 2007-32)

Dear Freedom of Information Act Officers:

On behalf of the Center for Biological Diversity ("the Center"), and pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), I am writing to appeal the U.S. Department of Transportation's ("DOT") December 8, 2006 denial of the Center's FOIA fee waiver request dated August 29, 2006.   The Center's August 29 letter requested the following information:

> **All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309.  This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466).  This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

---

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney
1095 Market Street, Suite 511 • San Francisco, CA 94103
Tel.: (415) 436-9682 ext. 302 • Fax: (415) 436-9683
Email: jaugustine@biologicaldiversity.org • www.biologicaldiversity.org

See Exhibit A.  In response to the August 29, 2006 FOIA request, DOT denied the Center's fee waiver request.  See Exhibit B.

FOIA section 552(a)(4)(A)(iii) addresses fee waivers and specifically requires agencies to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." DOT does not claim the Center has a commercial interest in the documents and therefore, the only question is whether the documents "likely contribute significantly to public understanding of the operations or activities of the government."

What could be more important to public understanding of DOT operations than knowing that the decisions of the agency are free from the taint of impropriety?  See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1313 (D.C. Cir. 2003) ("What could be more important to the public's understanding of IRS operations than knowing whether its commissioner awarded a government contract to a company he co-founded and in which he held stock?").  Indeed, how can the public effectively oversee its government if it is not fully informed about decisions that impact, in this case, the very air we breathe?  The documents in question will, among other things, help reveal whether DOT's decision regarding fuel economy standards was inappropriately influenced.  Just as importantly, it will reveal what information the agency had in its possession when formulating the rulemaking and will reveal any information that the agency failed to disclose on its website or in other already public documents.

As the D.C. Circuit has stated, "the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted."  Id. at 1313-14.  Here, because the requested documents will likely expose new information about the CAFE standards, the documents will likely shed light on whether DOT is meeting its legal duties pursuant to the Energy Policy and Conservation Act ("EPCA") and Administrative Procedure Act ("APA").  In other words, the comments will divulge "what the government is up to" because they will help reveal whether DOT is conducting its fuel economy standard-setting in accordance with its legal and ethical obligations.  United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure … focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose.")

The idea that DOT can deny a fee waiver based on possible FOIA exemptions has consistently been rejected by the courts.  DOT can not put the cart before the horse – the Center should not be required to pay for the search just so the Center can challenge the exemptions being applied. Such an outcome would chill the FOIA process and allow agencies to effectively preclude FOIA efforts by non-profits.  FOIA's exemptions were never intended to preclude fee waivers as the courts well understand.  As pointed out in Judicial Watch, Inc. v. United States DOE:

> Under the FOIA, the agency bears the burden of justifying nondisclosure. See 5 U.S.C. § 552(a)(4)(B). It would be contrary to the express provisions of the FOIA to 'invert the burden of proof' and force a plaintiff not only to demonstrate that it

satisfies the public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the defendant agency's contemplated withholdings are not properly claimed. <u>Project on Military Procurement v. Department of the Navy</u>, 710 F. Supp. at 367. 'A fee waiver request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure. <u>Carney v. United States Department of Justice</u>, 19 F.3d 807, 815 (2d Cir. 1994). While in some rare cases it may be reasonable for an agency to deny a fee waiver because the FOIA request is for 'patently exempt documents,' <u>id.</u>, the Court is unconvinced in this case that NRDC's FOIA requests sought 'patently exempt' documents.

310 F. Supp. 2d 271, 295 (D.D.C. 2004).

Moreover, the DOT's rationale was again explicitly rejected in <u>S. Utah Wilderness Alliance v. United States BLM</u>:

In a case where the Department of the Interior offered a similar rationale for its fee waiver denial, the court found that the agency improperly denied the plaintiff's requested fee waiver on the grounds that a portion of the records sought would be withheld, and 'releasing the non-exempt portions would not make a significant contribution to the understanding of the general public.' <u>Judicial Watch, Inc. v. Dep't of Energy</u>, 310 F. Supp. 2d 271, 295 (D.D.C. 2004) (citation omitted), rev'd in part on other grounds, 366 U.S. App. D.C. 343, 412 F.3d 125, 2005 WL 1412444 (D.C. Cir. 2005). The court noted that only in 'rare cases' would it be appropriate for an agency to deny a fee waiver on the grounds that the documents sought might be exempt from disclosure in their entirety.

402 F. Supp. 2d 82, 89 (D.D.C. 2005).

This is certainly not a "rare case." To suggest that everything the Center has requested is subject to exemption is simply absurd. Moreover, using an unspecified, conclusory claim of privilege as the basis for a fee waiver denial would undermine FOIA significantly. FOIA carries a presumption of disclosure and the fee-waiver amendments of 1986 were designed specifically to allow non-profit, public interest groups such as the Center access to government documents without the payment of fees. As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information . . ." 132 Cong. Rec. S. 14298 (statement of Sen. Leahy). In interpreting this amendment, the Ninth Circuit has stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." <u>McClellan Ecological Seepage Situation v. Carlucci</u>, 835 F.2d 1282, 1284 (9th Cir. 1987) (citing Sen. Leahy). The Ninth Circuit has likewise explicitly pointed out that the amendment's main purpose was "*to remove the roadblocks* and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA." <u>Id</u>. (emphasis added)

DOT's reliance on exemptions amounts to just such a roadblock and is contrary to FOIA and FOIA's intent. Both Congress and the courts are clear in their interpretation that the main legislative purpose of the FOIA amendments is to facilitate access to agency records by "watchdog" organizations, such as environmental groups, which use FOIA to monitor and challenge government activities. As a District of Columbia Circuit Court has stated, this waiver provision was added to FOIA "*in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests*," in clear reference to requests from journalists, scholars, and, most importantly for our purposes, non-profit public interest groups. Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984) (emphasis added).

These documents may shed light on the CAFE standards such that action should be taken pursuant to the EPCA, APA, or other applicable law. Perhaps the documents will provide insight into fuel standards or will shed light on improprieties in the rulemaking. Thus, the documents currently have significant relevance to, and will likely contribute to, greater public understanding of DOT's fuel economy standards. Even if the requested documents fail to reveal any problems that need to be addressed, that fact too will promote public understanding of DOT's operations. See Judicial Watch, 326 F.3d at 1313 ("government counsel complained that Judicial Watch provided no evidence that Rossotti actually had a conflict of interest. That may be true, but the question here is not whether Rossotti had such a conflict, but whether disclosure is likely to contribute to public understanding of IRS operations—a goal that disclosure will promote regardless of what the documents reveal.").

Below I address each component of the fee waiver regulations.

      **i)**    **the subject of the request: whether the subject of the requested records concerns the operations or activities of the Government**

As already described in the Center's request, and apparently undisputed by DOT, the subject matter of the request concerns the operations and activities of the government, namely, the rulemaking setting average fuel economy standards for light trucks for model years 2008-2011. As this rulemaking is an identifiable task of DOT and NHSTA, there is no question that this rulemaking is a U.S. government operation. Thus, the FOIA request plainly concerns the operations or activities of the government.

      **(ii)**    **whether the disclosure will contribute to an understanding of federal government operations or activities**

There is no question that the documents requested will contribute to an understanding of federal government operations. The documents are new and are not in the public domain. They will undoubtedly provide meaningful understanding of DOT's compliance with federal statutes including the Energy Policy and Conservation Act ("EPCA") and the National Environmental Policy Act ("NEPA"), because they will reveal facts pertaining to the rulemaking not contained within the online docket of public comments and official, final documents. This is certain to shed light on the DOT's decision-making process and compliance with applicable law. In short, the requested documents will help reveal the basis for the final rulemaking.

Re: FOIA Appeal (File Number 2007-32)               Page   4
December 15, 2006

In McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d at 1286, the court made clear that "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations…."  In this instance, all the requested documents potentially provide new information about fuel economy standards and the associated rulemaking at issue; moreover, the information will provide oversight of DOT's activities, including what administrative actions may be necessary in order to best promote fuel economy per applicable law.  See Western Watersheds Project v. Brown, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("WWP asserted in its initial request that the information requested was either not readily available or never provided to the public, facts never contradicted by the BLM.  Therefore, the Court finds that WWP adequately demonstrated that the information would contribute significantly to public understanding."); see also Community Legal Services v. HUD, 405 F.Supp.2d 553 (D. Pa. 2005) ("Thus, as in Forest Guardians, the CLS request would likely shed light on information that is new to the interested public.")

Contrary to DOT claims, a "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver, not on the possibility that the records may ultimately be determined to be exempt from disclosure.  [The] fee waiver request should have been evaluated on the potential contribution of the requested information to the public's understanding of DOT operations, not DOT's determination that most of the information was exempt from disclosure."  Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025 at *12 (internal citations omitted).  DOT's reliance on Van Fripp v. Parks is clearly misplaced and any DOT claims about which responsive records should be released and which may be withheld are irrelevant to the fee waiver determination.  As already described, such a method of denying fee waivers directly contradicts the FOIA Amendments' purpose of facilitating the disclosure of documents to watchdog organizations like the Center.

As the Supreme Court has emphasized, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)).  Thus, FOIA was enacted to "permit access to official information long shielded unnecessarily from public view" by creating a "judicially enforceable public right to secure such information from possibly unwilling official hands."  Environmental Protection Agency v. Mink, 410 U.S. 73, 80 (1973).  *"[D]isclosure, not secrecy, is the dominant objective of the Act*."  Department of Air Force v. Rose, 425 U.S. 352, 361 (1976) (emphasis added)

Once responsive documents are identified, an agency must provide them to the requestor unless one of nine statutory exemptions apply.  5 U.S.C. § 552(b).  *These exemptions are narrowly construed, and the burden is on the agency to demonstrate that the exemption applies.*  See, e.g. John Doe Agency, 493 U.S. at 152; Army Times Pub. Co. v. Department of the Air Force, 998 F.2d 1067, 1069 (D.C. Cir. 1993) (citing Wolfe v. HHS, 839 F.2d 768, 773 (D.C. Cir. 1988)) (In evaluating withholdings based on the exemption 5 deliberative process privilege, the D.C. Circuit has explained that the privilege "must be construed as narrowly as is consistent with efficient government operation.")

Because DOT has failed to identify the so-called exempt documents in any way, it is impossible to discern whether any of the documents satisfy the criteria for inter- or intra-agency communications under the claimed exemption. In fact, as DOT admits, it has not even conducted a search and yet is claiming that all or most of the responsive documents fall within exemptions to FOIA. Such reasoning is clearly contrary to FOIA's overarching goal of disclosure, not secrecy. DOT's response falls far short of meeting its burden to demonstrate that an exemption applies to these withholdings and redactions. At a minimum, DOT must provide specific details to justify its withholding of the documents per exemption 4 and 5. As the D.C. Circuit has explained, "[w]hen an agency declines to produce a requested document, the agency bears the burden before the trial court of proving the applicability of claimed statutory exemptions." Summers v. DOJ, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (citations omitted). Thus, the courts will not "accept conclusory and generalized allegations of [FOIA] exemptions, but rather would require agencies to offer a relatively detailed analysis in manageable segments." See Oglesby v. Department of the Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996) (quoting Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)). DOT has provided no such analysis here. Regardless, as already explained, the exemptions are irrelevant to a fee waiver determination.

### (iii)    whether disclosure will contribute to the understanding of the public at large

When examining this requirement, courts consider "the requestor's ability and intent to effectively convey the information to the public." Judicial Watch v. DOT, 2005 U.S. Dist. LEXIS 14025 at *13.

The Center is a non-profit organization whose mission is to promote the conservation of imperiled species and their habitats through science, policy, education and law. In furtherance of that mission, the Center's California-based Climate, Air, and Energy Program works to reduce U.S. greenhouse gas emissions and to protect species imperiled by global warming. Because the transportation sector accounts for approximately one-third of U.S. greenhouse gas emissions, the light truck fuel economy rulemaking is of central importance to addressing global warming.

The Center has the expertise, ability, and commitment to effectively convey the requested information to the public at large. The Center has longstanding expertise in climate, air, and energy issues and has advocated to protect species threatened by global warming and reduce greenhouse gas emissions for many years. The Center has expertise in climate science and biology, climate policy, and existing environmental laws that address greenhouse gas emissions. Center staff also have considerable expertise in communicating these issues to our members and the public both through our own electronic and print publications, and through media outreach. In addition to the Center's newsletters and publications, information such as that presently requested is disseminated through the Center's e-mail Biodiversity alerts, which are sent to nearly 17,000 people approximately once a week, and the Center's web page, which is accessed several hundred-thousand times each month. See Forest Guardians v. DOI, 416 F.3d 1173, 1180 (10th Cir. 2005) ("Among other things, Forest Guardians publishes an online newsletter, which is e-mailed to more than 2,500 people and stated that it intends to establish an interactive grazing web site with the information obtained from the BLM. By demonstrating that the records are meaningfully informative to the general public and how it will disseminate such information,

Forest Guardians has shown that the requested information is likely to contribute to the public's understanding of the BLM's operations and activities.").

The Center's climate, air, and energy work is frequently featured in media outlets reaching millions of people.  For example, the Center's Petitions to list polar bears and 12 species of penguins under the Endangered Species Act alone have been covered on ABC *World News Tonight, Nightline*, CBS Channel 8 San Diego, NPR "Living on Earth," National Geographic, Sirius Satellite Radio, and other national and local programs, 10-10 WINS in New York and other all-news radio stations.  Scores of print stories have appeared in publications ranging from the New York Times, LA Times, San Francisco Chronicle, and Washington Post to Seed Magazine, Mother Jones Magazine, and Nature.  Copies of a few of the print stories covering the following projects and cases are attached:

Polar Bear Endangered Species Act Petition and Center for Biological Diversity v. Kempthorne, Civ. 05-5191 JSW (N. Dist. CA):  CNN Webpage dated February 8, 2006, attached as Exhibit C.

Penguin Endangered Species Act Petition:  San Francisco Chronicle Webpage dated December 14, 2006, attached as Exhibit D.

Center for Biological Diversity v. Brennan, Civ. 06-7061 SBA (N. Dist. CA): San Jose Mercury News Web Page posted November 14, 2006, attached as Exhibit E.

The information disclosed in this FOIA would no doubt contribute to the public understanding of the DOT's compliance or non-compliance with applicable law in its light truck fuel economy rulemaking.  Understanding how our government reaches highly important decisions about fuel economy standards that affect not just the health and well-being of the U.S., but also the entire globe's citizens and species, is of course important to the public at large.  Indeed, what is more important than better understanding of the government decisions that impact our health and well-being?  The information disclosed from this FOIA will be used to educate the public about the importance of fuel economy standards and the fact that the 2008-2011 standards set by the DOT are woefully inadequate to protect public health and welfare, biodiversity, and the environment.  The requested information will be used to show how our government reaches its decisions so that the public at large can evaluate the DOT's decision.  The DOT's rulemaking cannot be fully evaluated by the public without the requested information.

The Center has already used the above mentioned methods to disseminate information about climate change and fuel efficiency.  See, e.g. http://biologicaldiversity.org/swcbd/programs/policy/energy/index.html; http://www.endangeredearth.org/alerts/.  The Center plans to release information about fuel economy standards found in the requested documents in the same ways.  For instance, if information discovered in the documents reveals needed action in regard to fuel standards, the Center will immediately report that information in a Biodiversity alert, will highlight it on its webpage, and will publish it in at least one newsletter.  Therefore, the Center has explained "in detailed and non-conclusory terms—again, all that FOIA requires—exactly how and to whom it will disseminate the information it receives."  Judicial Watch, 326 F.3d at 1314; see also Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025, *13-14 (D.D.C. 2005) ("requiring Judicial

Watch to outline a specific plan in addition to describing its methods of publication would
amount to 'pointless specificity.'" (citing <u>Judicial Watch</u>, 326 F.3d at 1314)).  The Center
routinely uses FOIA to obtain information from federal agencies that the Center's legal and
scientific experts analyze in order to inform the public about a variety of issues including
endangered species, energy policy, climate change, air pollution, and water pollution.
The Center need not "outline a specific plan in addition to describing its methods of publication."
<u>Judicial Watch v. DOT</u>, 2005 U.S. Dist. LEXIS 14025 at *14.  To do so would amount to
"pointless specificity."  <u>Id</u>. (internal quotation omitted).

Moreover, as the DOT has acknowledged, the Center is currently in litigation with the
Department of Transportation over the light truck fuel economy rulemaking.  As you may be
aware, Defendants in <u>Center for Biological Diversity v. National Highway Traffic
Administration, et al.</u>, No. 06-71891, have refused to include the documents requested in the
subject FOIA request in the Administrative Record for this Action.  The Center for Biological
Diversity and other Petitioners filed a motion to compel completion of the Administrative
Record, attached as Exhibit F.  The grave importance of this case, and the requested documents,
is explained in the attached motion, hereby incorporated by reference.  The Ninth Circuit
Motions Panel issued the Order dated November 7, 2006, attached as Exhibit G, referring the
motion to the merits panel for resolution and directing Petitioners to submit documents obtained
through FOIA along with the briefing.  Therefore, the requested documents are critical not only
to the public's understanding of the fuel economy rulemaking in general, but to the public's
understanding of this ongoing case, which has also been covered in the media (see San Francisco
Chronicle Website, posted April 7, 2006, attached as Exhibit H).  This makes the DOT's
compliance with the letter and intent of FOIA and prompt disclosure of the requested documents
all the more urgent.

    **(iv)**    <u>**whether the disclosure's contribution to the public's understanding of
federal government operations will be significant**</u>

The Center and the public cannot predict with precision what the requested documents will
reveal about the DOT's fuel economy rulemaking.  There can be no dispute, however, that
disclosure of the requested documents may provide new information regarding the standards that
will significantly enhance the public's understanding of DOT's operations in general and the fuel
economy rulemaking in particular.  Even if the documents fail to reveal that certain actions need
to be taken does not mean the documents do not serve the public interest.  <u>See</u> <u>Judicial Watch</u>,
326 F.3d at 1313.

In addition, the Center has thoroughly described the public interest to be served by the
documents.  The Center plans to use the new information both in the ongoing litigation, as
described above, and to educate the public about the DOT's rulemaking, fuel economy standards,
global warming, and protection of the environment.   As already stated, it may well be that the
DOT acted inappropriately, or should take some immediate action in response to information
obtained or learned as part of the rulemaking process.  The Center would educate the public
about such things. <u>See</u> <u>Western Watersheds Project</u>, 318 F.Supp.2d at1040 ("In the letter
denying the appeal, the FOIA Officer stated that WWP had failed to demonstrate....how the

information would contribute to the understanding of the general public of the operations or activities of the government.  The Court, however…finds that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and…how management strategies employed by the BLM may adversely affect the environment.")  Therefore, the Center has adequately explained how disclosure of the requested documents will significantly contribute to public understanding of DOT's fuel economy standards rulemaking and a fee waiver is required.

The Center's request seeks non-publicly available information that will enhance and contribute significantly to public understanding of the government operations and activities at issue.  As already discussed, the documents are new and are not in the public domain, and they will undoubtedly provide meaningful insight into DOT's operations generally and its handling of the light truck fuel economy rulemaking in particular.  For instance, disclosure of the records will contribute "significantly" to public understanding of government meetings with, for example, car companies or other corporate entities that have interests at stake.  The fuel economy standards rulemaking at issue has triggered substantial and widespread public interest.  Over 45,000 public comments were received prior to the close of the comment period.  71 Fed. Reg. 17577.  It cannot be disputed that disclosure of the requested records will therefore contribute *significantly* to public understanding of government activities by informing the public of what information was exchanged in government meetings and whether DOT committed to take any specific action in response to requests from outside parties.  Such meetings, however, are not the only issue that will be brought to light.  Any science or policy related documents that the government failed to disclose publicly already will likewise be divulged by this request and will undoubtedly contribute significantly to public understanding by exposing that information for everyone.

For the above-mentioned reasons, disclosure of all responsive records is in the public interest because it is likely to contribute significantly to public understanding of government operations or activities.  While requesters must provide information as to why they should receive a fee waiver, the Center has exhaustively done so.  Therefore, DOT's attempt to deny the Center's fee waiver request should be overturned.

We request that all the withheld materials be immediately released and that all fees be waived.  We await your prompt reply within twenty days as mandated by FOIA.  Thank you.

Sincerely,

Justin Augustine

# Exhibit G



**U.S. Department
of Transportation**

Office of the Secretary
of Transportation

GENERAL COUNSEL

400 Seventh St., S.W.
Washington, D.C. 20590

January 22, 2007

Justin Augustine, Esq.
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103

RE: FOIA File No. 2007-32

Dear Mr. Augustine:

The Department will process Center for Biological Diversity's Freedom of Information
Act (FOIA) request of August 29, 2006, without imposing FOIA fees.

FOIA Officer Kathy Ray will be the Department's point of contact for processing the
request.

Sincerely,

Rosalind A. Knapp
Acting General Counsel

# Exhibit H

**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

January 26, 2007

Mr. Justin Augustine
Staff Attorney
Center for Biological Diversity
1095 Market Street
Suite 511
San Francisco, CA  94103

[SENT VIA FACSIMILE (415) 436-9683 AND FIRST CLASS U.S. MAIL]

Dear Mr. Augustine:

This responds to your letter (which you have labeled as an appeal letter) dated
November 7, 2006, which was received on November 9, 2006, concerning the Office of
Management and Budget's (OMB's) response of October 12, 2006, to your organization's
Freedom of Information Act (FOIA) dated August 29, 2006 which was receive by OMB's FOIA
Office on September 14, 2006.

In your FOIA request you asked for:

"All documents relating to the development of the Final Rule setting average fuel
economy standards for light trucks for the model years 2008-2011 (71 Fed. Reg. 17566-
17679, "rulemaking") that are not already posted on the internet in Docket No.s 2005-
22223 and 2006-24509.  This request includes communications among staff and with
others that were created during the development of the Final Rule and the Proposed Rule
(70 Fed. Reg. 51414-51466).  This request includes, but is not limited to e-mail
exchanges or other correspondence among agency staff and between agency staff and
others, drafting documents internal reviews and critiques, inter-agency reviews, agency
meeting notes, etc."

In our October 12, 2006 response letter, OMB stated:

"After a careful review of your request, we determined that your request was overly
broad and, in order to respond to your request, you will need to narrow the scope of your
search in order to enable OMB staff to appropriately respond. Accordingly, OMB is
requesting that you refine the scope of your request to focus on the information that is of
most interest to you."

While your letter is styled as an appeal, I do not consider your letter to constitute a proper
appeal since OMB has not yet made a determination whether to grant or deny your FOIA
request.  Our October 12, 2006, letter invited you to refine the scope of your search.  However,
your response letter did not refine your request, but instead stated your belief that the FOIA

request is detailed enough and further stated your belief that your request would not be too broad or burdensome. In matters where overly broad FOIA requests are made, before making an initial determination, OMB routinely contacts requesters to refine the range of their requests. Since you have not chosen to narrow the scope of your request, we will process your request by considering your request for a fee waiver.

Under the FOIA statute and OMB's implementing regulations at 5 CFR 1303.70, fees otherwise chargeable in connection with a request for disclosure may be waived or reduced by the agency when OMB determines that: 1.) disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government and 2.) is not primarily in the commercial interest of the requester.

In the matter at hand, your request specifically asked for documents that "are not already posted on the internet in Docket No.s 2005-22223 and 2006-24509." As a result, we anticipate that the documents we would locate would consist of pre-decisional opinions, discussions and/or draft versions of the proposed and final rule which were being considered, commented upon and revised by Executive Branch staff. As such these documents would constitute intra-agency or inter-agency, pre-decisional, and deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views necessary for effective government decision making. The release of such materials would chill the deliberative process, which would be contrary to the public interest. As a result, we anticipate that the vast majority of the documents that are the subject of your FOIA request would very likely be withheld from mandatory disclosure under FOIA exemption 5 (5 U.S.C. § 552(b)(5)). Therefore, we would likely decline to release them.

Moreover, we expect that the releasable portions of the potentially responsive documents will likely reveal only existing publicly known information. Furthermore, any documents containing attorney-client communications or confidential commercial information would also be withheld from disclosure under FOIA exemptions 4 and 5. Moreover, as explained above, OMB would likely not release pre-decisional documents which would reveal government employees' deliberations on the corporate fuel average economy regulation. Consequently, such release would not contribute significantly to public understanding of the operations or activities of the Government as required under OMB's implementing FOIA regulations at 5 CFR 1303.70. Therefore, your request for a fee waiver is denied.

As provided under OMB's implementing FOIA regulation at 5 CFR 1303, we have determined that your organization is a non-commercial requester. This means that your organization would be allowed two hours of search time at no cost and 100 copies at no cost. After that, your organization would be subject to costs including search costs based upon the salary (plus benefits) of the individuals conducting the searches as well as photocopying fees of 15 cents per page.

At this time, we estimate the cost of an electronic search alone (not including manual search time and not including photocopying costs) would be approximately $6,171 (six thousand one hundred and seventy-one dollars). Please note that an electronic search is only one portion of a FOIA search and that the electronic search portion cost provided above is an estimate.

- 2 -

Please further note that OMB has not yet conducted a search (electronic or otherwise) of the records in response to your request. Consequently you are advised that the search costs estimated herein are preliminary approximate costs and will likely ultimately be significantly higher as our search progresses.

In addition, since your FOIA request would exceed $250, pursuant to OMB's FOIA regulations you are required to provide advance payment which we estimate, at this point, to be approximately $6,171. Please make your check or money order payable to the U.S. Treasury and mail it the attention of Ms. Dionne Hardy, OMB's FOIA Officer.

If you would like to reformulate your FOIA request in an effort to reduce the search and copying costs and to expedite our processing of your request, please contact Ms. Hardy at (202) 395-7214 or via fax at (202) 395-3108. Please note that your FOIA request will not be processed by OMB until the FOIA fee issue is resolved. If we do not receive a response from your organization within 30 days of the date of this letter, we will consider this FOIA request withdrawn and will close your request file.

I am the official responsible for this denial of your fee waiver request and if you wish you may request reconsideration of this determination and submit an appeal in writing in accordance with OMB regulations at 5 CFR 1303.

Sincerely,

Lauren G. Wright

Lauren Wright
Deputy Assistant Director
 for Administration

# Exhibit I

 # CENTER FOR BIOLOGICAL DIVERSITY

*VIA FACSIMILE AND OVERNIGHT MAIL*

January 29, 2007

FOIA Officer
Office of Management and Budget
725 17th Street NW, Room 9026
Washington, DC 20503
Fax:  202.395.3504

## FREEDOM OF INFORMATION ACT APPEAL

Dear Freedom of Information Act Officers:

On behalf of the Center for Biological Diversity ("the Center"), and pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), I am writing to appeal the White House Office of Management and Budget's ("OMB") January 26, 2007 denial of the Center's FOIA fee waiver request dated August 29, 2006.   The Center's August 29 letter requested the following information:

> **All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309.  This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466).  This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

<u>See</u> Exhibit A.  In response to the August 29, 2006 FOIA request, OMB denied the Center's fee waiver request  <u>See</u> Exhibit B.

FOIA section 552(a)(4)(A)(iii) addresses fee waivers and specifically requires agencies to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

---

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney
1095 Market Street, Suite 511 • San Francisco, CA 94103
Tel.: (415) 436-9682 ext. 302 • Fax: (415) 436-9683
Email: jaugustine@biologicaldiversity.org • www.biologicaldiversity.org

OMB does not claim the Center has a commercial interest in the documents and therefore, the only question is whether the documents "likely contribute significantly to public understanding of the operations or activities of the government."

What could be more important to public understanding of OMB operations than knowing that the decisions of the agency are free from the taint of impropriety?  See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1313 (D.C. Cir. 2003) ("What could be more important to the public's understanding of IRS operations than knowing whether its commissioner awarded a government contract to a company he co-founded and in which he held stock?").  Indeed, how can the public effectively oversee its government if it is not fully informed about decisions that impact, in this case, the very air we breathe?  The documents in question will, among other things, help reveal whether OMB's actions regarding fuel economy standards were inappropriately influenced.  Just as importantly, it will reveal what information the agency had in its possession when formulating the rulemaking and will reveal any information that the agency failed to disclose on its website or in other already public documents.

As the D.C. Circuit has stated, "the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted."  Id. at 1313-14.  Here, because the requested documents will likely expose new information about the CAFE standards, the documents will likely shed light on whether OMB is meeting its legal duties pursuant to the Energy Policy and Conservation Act ("EPCA") and Administrative Procedure Act ("APA").  In other words, the comments will divulge "what the government is up to" because they will help reveal whether OMB is conducting its operations in accordance with its legal and ethical obligations.  United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure … focuses on the citizens' right to be informed about what their government is up to.  Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose.")

OMB should be well aware that it can not deny a fee waiver based on FOIA exemptions—that fallacy has consistently been rejected by the court.  A "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver," the Court concluded, "not on the possibility that the records may ultimately be determined to be exempt from disclosure.  [The] fee waiver request should have been evaluated on the potential contribution of the requested information to the public's understanding of DOT operations, not DOT's determination that most of the information was exempt from disclosure."  Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025 at *12 (internal citations omitted).  In short, any OMB claims about which responsive records should be released and which may be withheld are irrelevant to the fee waiver determination.  Such a method of denying fee waivers directly contradicts the FOIA Amendments' purpose of facilitating the disclosure of documents to watchdog organizations like the Center.

OMB can not put the cart before the horse – the Center should not be required to pay for the search just so the Center can challenge the exemptions being applied.  Such an outcome would chill the FOIA process and allow agencies to effectively preclude FOIA efforts by non-profits.

FOIA's exemptions were never intended to preclude fee waivers as the courts well understand. As pointed out in <u>Judicial Watch, Inc. v. United States DOE</u>:

> Under the FOIA, the agency bears the burden of justifying nondisclosure. <u>See</u> 5 U.S.C. § 552(a)(4)(B). It would be contrary to the express provisions of the FOIA to 'invert the burden of proof' and force a plaintiff not only to demonstrate that it satisfies the public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the defendant agency's contemplated withholdings are not properly claimed. <u>Project on Military Procurement v. Department of the Navy</u>, 710 F. Supp. at 367. 'A fee waiver request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure. <u>Carney v. United States Department of Justice</u>, 19 F.3d 807, 815 (2d Cir. 1994). While in some rare cases it may be reasonable for an agency to deny a fee waiver because the FOIA request is for 'patently exempt documents,' <u>id</u>., the Court is unconvinced in this case that NRDC's FOIA requests sought 'patently exempt' documents.

310 F. Supp. 2d 271, 295 (D.D.C. 2004).

Moreover, OMB's assertion was again explicitly rejected in <u>S. Utah Wilderness Alliance v. United States BLM</u>:

> In a case where the Department of the Interior offered a similar rationale for its fee waiver denial, the court found that the agency improperly denied the plaintiff's requested fee waiver on the grounds that a portion of the records sought would be withheld, and 'releasing the non-exempt portions would not make a significant contribution to the understanding of the general public.' <u>Judicial Watch, Inc. v. Dep't of Energy</u>, 310 F. Supp. 2d 271, 295 (D.D.C. 2004) (citation omitted), rev'd in part on other grounds, 366 U.S. App. D.C. 343, 412 F.3d 125, 2005 WL 1412444 (D.C. Cir. 2005). The court noted that only in 'rare cases' would it be appropriate for an agency to deny a fee waiver on the grounds that the documents sought might be exempt from disclosure in their entirety.

402 F. Supp. 2d 82, 89 (D.D.C. 2005).

This is certainly not a "rare case." To suggest that everything the Center has requested is subject to exemption is simply absurd. Moreover, using an unspecified, conclusory claim of privilege as the basis for a fee waiver denial would undermine FOIA significantly. FOIA carries a presumption of disclosure and the fee-waiver amendments of 1986 were designed specifically to allow non-profit, public interest groups such as the Center access to government documents without the payment of fees. As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information . . ." 132 Cong. Rec. S. 14298 (statement of Sen. Leahy). In interpreting this amendment, the Ninth Circuit has stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." <u>McClellan Ecological Seepage Situation v. Carlucci</u>, 835 F.2d

1282, 1284 (9th Cir. 1987) (citing Sen. Leahy). The Ninth Circuit has likewise explicitly pointed out that the amendment's main purpose was "*to remove the roadblocks* and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA." Id. (emphasis added)

OMB's reliance on exemptions amounts to just such a roadblock and is contrary to FOIA and FOIA's intent. Both Congress and the courts are clear in their interpretation that the main legislative purpose of the FOIA amendments is to facilitate access to agency records by "watchdog" organizations, such as environmental groups, which use FOIA to monitor and challenge government activities. As a District of Columbia Circuit Court has stated, this waiver provision was added to FOIA "*in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests*," in clear reference to requests from journalists, scholars, and, most importantly for our purposes, non-profit public interest groups. Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984) (emphasis added).

These documents may shed light on the CAFE standards such that action should be taken pursuant to the EPCA, APA, or other applicable law. Perhaps the documents will provide insight into fuel standards or will shed light on improprieties in the rulemaking. Thus, the documents currently have significant relevance to, and will likely contribute to, greater public understanding of OMB's involvement with fuel economy standards. Even if the requested documents fail to reveal any problems that need to be addressed, that fact too will promote public understanding of OMB's operations. See Judicial Watch, 326 F.3d at 1313 ("government counsel complained that Judicial Watch provided no evidence that Rossotti actually had a conflict of interest. That may be true, but the question here is not whether Rossotti had such a conflict, but whether disclosure is likely to contribute to public understanding of IRS operations—a goal that disclosure will promote regardless of what the documents reveal.").

Below I address each component of the fee waiver regulations.

      **i)**      **the subject of the request: whether the subject of the requested records concerns the operations or activities of the Government**

As already described in the Center's request, and apparently undisputed by OMB, the subject matter of the request concerns the operations and activities of the government, namely, the rulemaking setting average fuel economy standards for light trucks for model years 2008-2011. As this rulemaking is an identifiable task of OMB and NHSTA, there is no question that this rulemaking is a U.S. government operation. Thus, the FOIA request plainly concerns the operations or activities of the government.

      **(ii)**      **whether the disclosure will contribute to an understanding of federal government operations or activities**

There is no question that the documents requested will contribute to an understanding of federal government operations. The documents are new and are not in the public domain. They will undoubtedly provide meaningful understanding of OMB's compliance with federal statutes including the Energy Policy and Conservation Act ("EPCA") and the National Environmental

Policy Act ("NEPA"), because they will reveal facts pertaining to the rulemaking not contained within the online docket of public comments and official, final documents. This is certain to shed light on the OMB's decision-making process and compliance with applicable law. In short, the requested documents will help reveal the basis for the final rulemaking.

In McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d at 1286, the court made clear that "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations…." In this instance, all the requested documents potentially provide new information about fuel economy standards and the associated rulemaking at issue; moreover, the information will provide oversight of OMB's activities, including what administrative actions may be necessary in order to best promote fuel economy per applicable law. See Western Watersheds Project v. Brown, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("WWP asserted in its initial request that the information requested was either not readily available or never provided to the public, facts never contradicted by the BLM. Therefore, the Court finds that WWP adequately demonstrated that the information would contribute significantly to public understanding."); see also Community Legal Services v. HUD, 405 F.Supp.2d 553 (D. Pa. 2005) ("Thus, as in Forest Guardians, the CLS request would likely shed light on information that is new to the interested public.")

Moreover, as pointed out above, OMB's assertions regarding exempt documents and fee waivers have been found contrary to FOIA and inappropriate—a "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver, not on the possibility that the records may ultimately be determined to be exempt from disclosure. [The] fee waiver request should have been evaluated on the potential contribution of the requested information to the public's understanding of DOT operations, not DOT's determination that most of the information was exempt from disclosure." Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025 at *12. Thus, OMB should no longer attempt to hide behind the false assertion that fee waivers can be denied based on possible FOIA exemptions.

As the Supreme Court has emphasized, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)). Thus, FOIA was enacted to "permit access to official information long shielded unnecessarily from public view" by creating a "judicially enforceable public right to secure such information from possibly unwilling official hands." Environmental Protection Agency v. Mink, 410 U.S. 73, 80 (1973). "[D]isclosure, not secrecy, is the dominant objective of the Act." Department of Air Force v. Rose, 425 U.S. 352, 361 (1976) (emphasis added)

Once responsive documents are identified, an agency must provide them to the requestor unless one of nine statutory exemptions apply. 5 U.S.C. § 552(b). These exemptions are narrowly construed, and the burden is on the agency to demonstrate that the exemption applies. See, e.g. John Doe Agency, 493 U.S. at 152; Army Times Pub. Co. v. Department of the Air Force, 998 F.2d 1067, 1069 (D.C. Cir. 1993) (citing Wolfe v. HHS, 839 F.2d 768, 773 (D.C. Cir. 1988)) (In evaluating withholdings based on the exemption 5 deliberative process privilege, the D.C.

Circuit has explained that the privilege "must be construed as narrowly as is consistent with efficient government operation.")

Because OMB has failed to identify the so-called exempt documents in any way, it is impossible to discern whether any of the documents satisfy the criteria for inter- or intra-agency communications under the claimed exemption.  In fact, as OMB admits, it has not even conducted a search and yet is claiming that all or most of the responsive documents fall within exemptions to FOIA.  Such reasoning is clearly contrary to FOIA's overarching goal of disclosure, not secrecy.  OMB's response falls far short of meeting its burden to demonstrate that an exemption applies to these withholdings and redactions.  At a minimum, OMB must provide specific details to justify its withholding of the documents per exemption 4 and 5.  As the D.C. Circuit has explained, "[w]hen an agency declines to produce a requested document, the agency bears the burden before the trial court of proving the applicability of claimed statutory exemptions."  Summers v. DOJ, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (citations omitted).  Thus, the courts will not "accept conclusory and generalized allegations of [FOIA] exemptions, but rather would require agencies to offer a relatively detailed analysis in manageable segments." See Oglesby v. Department of the Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996) (quoting Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)).  OMB has provided no such analysis here. Regardless, as already explained, the exemptions are irrelevant to a fee waiver determination.

### (iii)    whether disclosure will contribute to the understanding of the public at large

When examining this requirement, courts consider "the requestor's ability and intent to effectively convey the information to the public."  Judicial Watch v. DOT, 2005 U.S. Dist. LEXIS 14025 at *13.

The Center is a non-profit organization whose mission is to promote the conservation of imperiled species and their habitats through science, policy, education and law.  In furtherance of that mission, the Center's California-based Climate, Air, and Energy Program works to reduce U.S. greenhouse gas emissions and to protect species imperiled by global warming.  Because the transportation sector accounts for approximately one-third of U.S. greenhouse gas emissions, the light truck fuel economy rulemaking is of central importance to addressing global warming.

The Center has the expertise, ability, and commitment to effectively convey the requested information to the public at large.  The Center has longstanding expertise in climate, air, and energy issues and has advocated to protect species threatened by global warming and reduce greenhouse gas emissions for many years.   The Center has expertise in climate science and biology, climate policy, and existing environmental laws that address greenhouse gas emissions. Center staff also have considerable expertise in communicating these issues to our members and the public both through our own electronic and print publications, and through media outreach. In addition to the Center's newsletters and publications, information such as that presently requested is disseminated through the Center's e-mail Biodiversity alerts, which are sent to nearly 17,000 people approximately once a week, and the Center's web page, which is accessed several hundred-thousand times each month.  See Forest Guardians v. DOI, 416 F.3d 1173, 1180 (10th Cir. 2005) ("Among other things, Forest Guardians publishes an online newsletter, which is e-mailed to more than 2,500 people and stated that it intends to establish an interactive grazing

web site with the information obtained from the BLM. By demonstrating that the records are meaningfully informative to the general public and how it will disseminate such information, Forest Guardians has shown that the requested information is likely to contribute to the public's understanding of the BLM's operations and activities.").

The Center's climate, air, and energy work is frequently featured in media outlets reaching millions of people.  For example, the Center's Petitions to list polar bears and 12 species of penguins under the Endangered Species Act alone have been covered on ABC *World News Tonight, Nightline*, CBS Channel 8 San Diego, NPR "Living on Earth," National Geographic, Sirius Satellite Radio, and other national and local programs, 10-10 WINS in New York and other all-news radio stations.  Scores of print stories have appeared in publications ranging from the New York Times, LA Times, San Francisco Chronicle, and Washington Post to Seed Magazine, Mother Jones Magazine, and Nature.  Copies of a few of the print stories covering the following projects and cases are attached:

Polar Bear Endangered Species Act Petition and Center for Biological Diversity v. Kempthorne, Civ. 05-5191 JSW (N. Dist. CA):  CNN Webpage dated February 8, 2006, attached as Exhibit C.

Penguin Endangered Species Act Petition:  San Francisco Chronicle Webpage dated December 14, 2006, attached as Exhibit D.

Center for Biological Diversity v. Brennan, Civ. 06-7061 SBA (N. Dist. CA): San Jose Mercury News Web Page posted November 14, 2006, attached as Exhibit E.

The information disclosed in this FOIA would no doubt contribute to the public understanding of the OMB's compliance or non-compliance with applicable law in regard to the light truck fuel economy rulemaking.  Understanding how our government reaches highly important decisions about fuel economy standards that affect not just the health and well-being of the U.S., but also the entire globe's citizens and species, is of course important to the public at large.  Indeed, what is more important than better understanding of the government decisions that impact our health and well-being?  The information disclosed from this FOIA will be used to educate the public about the importance of fuel economy standards and the fact that the 2008-2011 standards are woefully inadequate to protect public health and welfare, biodiversity, and the environment.  The requested information will be used to show how our government reaches its decisions so that the public at large can evaluate the emission decision.  The rulemaking cannot be fully evaluated by the public without the requested information.

The Center has already used the above mentioned methods to disseminate information about climate change and fuel efficiency.  See, e.g. http://biologicaldiversity.org/swcbd/programs/policy/energy/index.html; http://www.endangeredearth.org/alerts/.  The Center plans to release information about fuel economy standards found in the requested documents in the same ways.  For instance, if information discovered in the documents reveals needed action in regard to fuel standards, the Center will immediately report that information in a Biodiversity alert, will highlight it on its webpage, and will publish it in at least one newsletter.  Therefore, the Center has explained "in detailed and non-conclusory terms—again, all that FOIA requires—exactly how and to whom it

will disseminate the information it receives." Judicial Watch, 326 F.3d at 1314; see also Judicial Watch v. U.S. DOT, 2005 U.S. Dist. LEXIS 14025, *13-14 (D.D.C. 2005) ("requiring Judicial Watch to outline a specific plan in addition to describing its methods of publication would amount to 'pointless specificity.'" (citing Judicial Watch, 326 F.3d at 1314)). The Center routinely uses FOIA to obtain information from federal agencies that the Center's legal and scientific experts analyze in order to inform the public about a variety of issues including endangered species, energy policy, climate change, air pollution, and water pollution. The Center need not "outline a specific plan in addition to describing its methods of publication." Judicial Watch v. DOT, 2005 U.S. Dist. LEXIS 14025 at *14. To do so would amount to "pointless specificity." Id. (internal quotation omitted).

Moreover, the Center is currently in litigation with the Department of Transportation over the light truck fuel economy rulemaking. As you may be aware, Defendants in Center for Biological Diversity v. National Highway Traffic Administration, et al., No. 06-71891, have refused to include the documents requested in the subject FOIA request in the Administrative Record for this Action. The Center for Biological Diversity and other Petitioners filed a motion to compel completion of the Administrative Record, attached as Exhibit F. The grave importance of this case, and the requested documents, is explained in the attached motion, hereby incorporated by reference. The Ninth Circuit Motions Panel issued the Order dated November 7, 2006, attached as Exhibit G, referring the motion to the merits panel for resolution and directing Petitioners to submit documents obtained through FOIA along with the briefing. Therefore, the requested documents are critical not only to the public's understanding of the fuel economy rulemaking in general, but to the public's understanding of this ongoing case, which has also been covered in the media (see San Francisco Chronicle Website, posted April 7, 2006, attached as Exhibit H). This makes the OMB's compliance with the letter and intent of FOIA and prompt disclosure of the requested documents all the more urgent.

### (iv)    whether the disclosure's contribution to the public's understanding of federal government operations will be significant

The Center and the public cannot predict with precision what the requested documents will reveal about the fuel economy rulemaking. There can be no dispute, however, that disclosure of the requested documents may provide new information regarding the standards that will significantly enhance the public's understanding of OMB's operations in general and the fuel economy rulemaking in particular. Even if the documents fail to reveal that certain actions need to be taken does not mean the documents do not serve the public interest. See Judicial Watch, 326 F.3d at 1313.

In addition, the Center has thoroughly described the public interest to be served by the documents. The Center plans to use the new information both in the ongoing litigation, as described above, and to educate the public about the rulemaking, fuel economy standards, global warming, and protection of the environment. As already stated, it may well be that the OMB acted inappropriately, or should take some immediate action in response to information obtained or learned as part of the rulemaking process. The Center would educate the public about such things. See Western Watersheds Project, 318 F.Supp.2d at1040 ("In the letter denying the

appeal, the FOIA Officer stated that WWP had failed to demonstrate....how the information would contribute to the understanding of the general public of the operations or activities of the government.  The Court, however…finds that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and…how management strategies employed by the BLM may adversely affect the environment.")  Therefore, the Center has adequately explained how disclosure of the requested documents will significantly contribute to public understanding of OMB's fuel economy standards rulemaking and a fee waiver is required.

The Center's request seeks non-publicly available information that will enhance and contribute significantly to public understanding of the government operations and activities at issue.  As already discussed, the documents are new and are not in the public domain, and they will undoubtedly provide meaningful insight into OMB's operations generally and its handling of the light truck fuel economy rulemaking in particular.  For instance, disclosure of the records will contribute "significantly" to public understanding of government meetings with, for example, car companies or other corporate entities that have interests at stake.  The fuel economy standards rulemaking at issue has triggered substantial and widespread public interest.  Over 45,000 public comments were received prior to the close of the comment period.  71 Fed. Reg. 17577.  It cannot be disputed that disclosure of the requested records will therefore contribute *significantly* to public understanding of government activities by informing the public of what information was exchanged in government meetings and whether OMB committed to take any specific action in response to requests from outside parties.  Such meetings, however, are not the only issue that will be brought to light.  Any science or policy related documents that the government failed to disclose publicly already will likewise be divulged by this request and will undoubtedly contribute significantly to public understanding by exposing that information for everyone.

For the above-mentioned reasons, disclosure of all responsive records is in the public interest because it is likely to contribute significantly to public understanding of government operations or activities.  While requesters must provide information as to why they should receive a fee waiver, the Center has exhaustively done so.  Therefore, OMB's attempt to deny the Center's fee waiver request should be overturned.

We request that all the withheld materials be immediately released and that all fees be waived. We await your prompt reply within twenty days as mandated by FOIA.  Thank you.

Sincerely,

Justin Augustine

Justin Augustine

# Exhibit J

 # CENTER FOR BIOLOGICAL DIVERSITY

***VIA UPS OVERNIGHT MAIL***

March 14, 2007

Ms. Rosalind A. Knapp
Acting General Counsel
U.S. Department of Transportation
400 Seventh St., S.W.
Washington, D.C. 20590

Ms. Kathy Ray
Departmental Freedom of Information Act Officer
U.S. Department of Transportation
400 Seventh St., S.W.
C-12/Room 5432
Washington, DC 20590

Ms. Lauren E. Wright (or FOIA Officer)
Deputy Assistant Director for Administration
Executive Office of the President
Office of Management and Budget
725 17th Street NW, Room 9026
Washington, DC 20503

**Re:  August 29, 2006, Center for Biological Diversity Freedom of Information Act Request for Documents Relating to the Final Rule Setting Average Fuel Economy Standards for Light Trucks for Model Years 2008-2011 (71 Fed. Reg. 17566-17679)**

Dear Ms. Knapp, Ms. Ray, and Ms. Wright,

I am writing on behalf of the Center for Biological Diversity ("the Center") to express our concern over the delay demonstrated by your agencies in responding to our August 29, 2006, Freedom of Information Act ("FOIA") Request for documents relating to the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "Rulemaking").

As you know, the Center first requested the documents over six months ago on August 29, 2006 (attached as Exhibit A).  The obstruction and delay we have encountered from your agencies have made a mockery of FOIA's mandate to provide timely access to government documents.

---

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney • 1095 Market St., Suite 511 • San Francisco, CA 94103
Phone: 415-436-9682 x302 • Fax: 415-436-9683 • jaugustine@biologicaldiversity.org

DOT and NHTSA responded jointly to our request through the Office of General Counsel. We received the first communication from these agencies on October 20, 2006, more than six weeks after our request was first received (attached as Exhibit B). The October 20, 2006 response asserted that our request was overly broad, but provided no explanation for this baseless claim. On November 7, 2006, we appealed this erroneous and conclusory determination, fully explaining our need for the documents (attached as Exhibit C). On December 8, 2006, we received a second communication from the Office of Counsel, asserting that our Appeal was not an Appeal, and purporting to deny our request for a fee waiver on the grounds that the public interest prong of the fee waiver request was not satisfied (attached as Exhibit D). On December 15, 2006, we filed a second Appeal regarding the denial of our fee waiver (attached as Exhibit E). On January 22, 2007, we received a two sentence letter from the Office of Counsel, stating that DOT and NHTSA would process our request without imposing fees, and that Ms. Kathy Ray would be the point of contact for processing the request (attached as Exhibit F).

Since January 22, 2007, we have been in contact with Ms. Ray on several occasions. Most recently, on March 7th, after the Center called Ms. Ray, she informed us that she had not yet received the responsive documents from NHTSA, but that she would call us back the next day. On March 8th, when Ms. Ray called back to provide an update, we were again informed that NHTSA was "still in the process of collecting documents," and that we would be provided another update on March 13th. On March 13th, however, no new information was available. While we appreciate Ms. Ray's efforts to inform us of the Request's status, the fact of the matter is that the people providing the documents to Ms. Ray are not doing so in a timely manner and as a result, DOT/NHTSA have yet to inform us of a date when the response will be complete. Almost seven months have now elapsed since our original Request was sent. The multiple barriers erected by DOT/NHTSA to access these documents as well as the lengthy delay are unreasonable. If the requested documents are not promptly released we will be forced to seek judicial review of this unreasonable delay. Please release the requested documents immediately so that we may avoid unnecessary litigation.

OMB has been even less forthcoming than DOT. On October 12, 2006, we received a half-page letter asserting that our request was overly broad (attached as Exhibit G). We appealed this erroneous determination on Nov. 7, 2006 (see Exhibit C). Despite the fact that FOIA mandates a 20-day response period, not until 2 ½ months later (January 26, 2007) did we receive a response from OMB to our November 7, 2006, Appeal (attached as Exhibit H). Much like DOT, OMB chose to be obstructive by claiming that not only was the Center's November 7, 2006, letter not an "appeal" but also that the Center did not qualify for a fee waiver. OMB's fee waiver denial was based on the same improper assertions that DOT ultimately overturned. On January 29, 2007, the Center appealed the fee waiver denial (attached as Exhibit I). Although a response to the Center's fee waiver Appeal was due by March 1, 2007, OMB has yet to respond. In order to avoid unnecessary litigation, the Center contacted OMB by telephone on March 5, 6, 7, 9, and 12, but has yet to be provided anything more than a statement that OMB's fee waiver appeal response "will be out soon." Such delay and obstruction, of course, violates FOIA's mandates. If the fee waiver denial is not immediately overturned and the requested documents are not promptly released, we will be forced to seek judicial review.

As you well know, the requested documents are of extreme importance. They relate to your agencies' compliance with federal statutes including the Energy Policy and Conservation Act ("EPCA") and the National Environmental Policy Act ("NEPA") during the Rulemaking, and in particular whether your agencies adequately protected the public health and welfare in that Rulemaking with regard to greenhouse gas pollution and global warming.

As you also know, the Center is currently in litigation with the DOT and NHTSA over the Rulemaking. Defendants in <u>Center for Biological Diversity v. National Highway Traffic Administration, et al.</u>, No. 06-71891, have refused to include the documents requested in the subject FOIA request in the Administrative Record for this case. The Center for Biological Diversity and other Petitioners filed a motion to compel completion of the Administrative Record (attached as Exhibit J). The grave importance of this case, and the requested documents, is explained in the attached motion. The Ninth Circuit Motions Panel issued an Order dated November 7, 2006, referring the motion to the merits panel for resolution and directing Petitioners to submit documents obtained through FOIA along with the briefing (attached as Exhibit K). As the procedural history summarized herein demonstrates, your agencies have repeatedly blocked access to the requested documents despite the Center's repeated and diligent attempts to obtain them. Your intransigence in light of the existing Court Order from the Ninth Circuit is particularly troubling.

Once again, we request that you provide access to the requested documents immediately. I look forward to hearing from you. I can be reached at (415) 436-9682 x 302 or at the address on this letterhead.

Sincerely,

Justin Augustine

# Exhibit K

**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

June 12, 2007

Mr. Justin Augustine
Staff Attorney
Center for Biological Diversity
1095 Market Street
Suite 511
San Francisco, CA 94103

[SENT VIA FACSIMILE (415) 436-9683 AND FIRST CLASS U.S. MAIL]

Dear Mr. Augustine:

This responds to your letter to the Office of Management and Budget's (OMB) dated January 29, 2007, in which you appealed OMB's denial of the request by the Center for Biological Diversity (CBD or Center) for a fee waiver under the Freedom of Information Act (FOIA).

As a preliminary matter, it is our understanding that you submitted an essentially identical FOIA request to the Department of Transportation, which is the agency that issued the proposed and final rules setting the average fuel economy standards for light trucks. As you may be aware, the Department of Transportation, and not OMB, is the rulemaking agency that issued the proposed rule, considered public comments to the proposed rule, signed the final rule and conducted the implemented of the regulation you are seeking information about under your FOIA request. As discussed more fully below, that Department has already made available to the public (via its website) a substantial amount of information regarding this rulemaking.

Before turning to your appeal, I want to summarize briefly the history of the correspondence regarding your FOIA request to OMB.

Your FOIA request was dated August 29, 2006, and was received by OMB's FOIA office on September 14, 2006. In your request, you asked for "[a]ll documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for the model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309," including "communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466)." Your request also stated that it "includes, but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, drafting documents internal reviews and critiques, inter-agency reviews, agency meeting notes, etc." In your request, you asked that OMB waive the applicable FOIA fees, based on the FOIA's general fee waiver authority.

OMB responded to your request in our letter dated October 12, 2006. In our letter, we noted the breadth of your request and offered you the opportunity to "refine the scope of your request to focus on the information that is of most interest to you." You replied in your letter of November 9, 2006. In that letter, you declined to refine the scope of your request, and instead stated your belief that your FOIA request is detailed enough and not be too broad or burdensome.

Since you reiterated that you wanted OMB to process your request as it was originally submitted, OMB notified you, in our letter dated January 26, 1997, that OMB was beginning the processing of your FOIA request by responding to your request for a general fee waiver. OMB then went on to explain that OMB may waive or reduce FOIA fees when OMB determines that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); see 5 C.F.R. § 1303.70 (OMB's FOIA regulations). OMB then went on to explain that your fee waiver request did not satisfy this standard, and accordingly OMB denied your fee waiver request. Attached for your convenience is a copy of OMB's letter of January 26, 2007.

In addition, it is our understanding that the Transportation Department similarly offered you the opportunity to refine the scope of your FOIA request and that you declined to do so.

In response to OMB's denial of your fee waiver request, you submitted your letter dated January 29, 2007, in which you have appealed this denial.

In response to your appeal, we have again reviewed your request for a fee waiver. For the following reasons, we have again concluded that your request does not satisfy the governing standard, under the FOIA statute and OMB's FOIA regulations, for the waiver or reduction of fees. Accordingly, based on the information that you have supplied to date, your appeal and your request for a fee waiver are denied.

As noted above, and in OMB's letter of January 26, 2007, an agency may waive or reduce FOIA fees if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." In previously denying your request for a fee waiver, OMB concluded that your request did not satisfy this standard. In considering your appeal, we have again reached the same conclusion, for the following reasons.

First, it is the Transportation Department, not OMB, that is the rulemaking agency that issued the proposed and final rules, and the Department has already made available to the public (on the internet) a substantial amount of information regarding this rulemaking. The fact that the rulemaking agency has already made publicly available a substantial amount of information regarding its rule argues strongly against the conclusion that any additional information that OMB is likely to disclose (in response to your FOIA request) will be *"likely* to contribute *significantly"* to the public's understanding of this rulemaking.

The information that the Transportation Department has already made available to the public on the internet is found in Department's regulatory dockets for this rulemaking – No. 2005-22223 for the proposed rule and 2006-24309 (for the final rule). The Department's regulatory dockets includes the proposed rule (comprising 53 Federal Register pages) and the final rule (comprising 49 Federal Register pages), which provide the most direct explanation of the Department's decision-making in this rulemaking. In addition, the Department's regulatory docket also includes copies of the "over 45,000 individual submissions to the rulemaking docket" that the

Department received "prior to the close of the comment period, including ones from vehicle manufacturers and associations, environmental and consumer advocacy groups, members of Congress, and private individuals" (71 Fed. Reg. 17577).

In the preamble to the final rule, the Department responded to these comments and explained the changes that the Department had made, and that are reflected in the final rule, as a result of the Department's consideration of the comments. Moreover, the Department's regulatory docket also includes the following materials related to OMB's review of this rulemaking under Executive Order 12866 (these documents are also included in OMB's public docket for its review): the text of the drafts of the proposed and final rules as the Department originally submitted them to OMB for review; the Regulatory Impact Analysis that the Department had prepared for the proposed and final rule (which is required by EO 12866 and OMB Circular A-4); the Department's Environmental Impact Assessment for the proposed and final rule; and the Department's completed forms for submitting the drafts of the proposed and final rules to OMB for review.

<u>Second</u>, in response to your FOIA request, OMB is unlikely to release a significant amount of information that is not already in the public domain. Thus, again, such release would not be "*likely* to contribute *significantly*" to the public's understanding of this rulemaking.

In our letter to you of January 26, 2007, denying your fee waiver request, OMB stated that it is our expectation that most of the responsive documents that OMB would locate (in response to your FOIA request) would consist of pre-decisional opinions, discussions and/or draft versions of the proposed and final rule which were being considered, commented upon, and revised by Executive Branch staff. As such, these documents would constitute intra-agency or inter-agency, pre-decisional, deliberative communications that would be exempt from mandatory disclosure pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

Moreover, based on OMB's experience in responding to FOIA requests seeking similar types of deliberative materials, our expectation is that OMB would decline to release most of these documents, because their disclosure would chill the deliberative process by inhibiting the frank and candid exchange of views that is necessary for effective government decision making. In this regard, given our experience in responding to FOIA requests seeking similar types of deliberative information, any factual portions of these deliberative documents are likely to be inextricably intertwined with the deliberative material, such that the factual portions could not be reasonably segregated. Furthermore, to the extent that the responsive documents that OMB located contain confidential commercial information or attorney-client information, OMB would decline to release those documents under FOIA Exemptions 4 and 5, respectively.

Finally, in the January 26, 2007 letter, OMB also outlined our expectation that the responsive documents (or portions of documents) that OMB would most likely release will likely contain information that is already in the publicly domain, either because it is information that is in the Transportation Department's regulatory docket or because it is information that is available in the press or other public documents.

<u>Third</u>, any information that OMB is likely to release, in response to the FOIA request, is not *"likely* to contribute *significantly"* to the public's understanding on the issue for which you have expressed specific interest: namely, the compliance of the Department's proposed and final rules with the Energy Policy and Conservation Act and the National Environmental Policy Act.

In support of your FOIA appeal, you state on pages 4-5 of your January 29, 2007 letter that the documents you seek from OMB "will undoubtedly provide meaningful understanding of OMB's compliance with federal statutes including the Energy Policy and Conservation Act ('EPCA') and the National Environmental Policy Act ('NEPA'), . . . . This is certain to shed light on the OMB's decision-making process and compliance with applicable law."

Your letter is based on an incorrect premise. It is the Transportation Department, not OMB, that is the rulemaking agency, and therefore it is the Department, not OMB, that has the legal responsibility for promulgating CAFE regulations that are in compliance with such statutes as EPCA and NEPA. As a result, the documents that are most likely to contribute significantly to the public's understanding of the rulemaking's compliance with EPCA and NEPA would be maintained by the Department, and our expectation is that most of the documents would be in the Department's regulatory docket for the proposed and final rules, which is already available to the public on the internet. Moreover, to the extent that the Department possesses other documents that address its compliance with EPCA and NEPA, which are not in the regulatory dockets, such documents would presumably be responsive to the separate FOIA request that you submitted to the Department.

<u>Fourth</u>, it is not clear to OMB that any information that we would disclose to you, in response to your request, would contribute to the understanding *of the public at large*, as is required by the FOIA's general fee waiver standard.

Under the general fee waiver standard, the proper focus is on whether the information that will be disclosed will contribute significantly to *the public's* understanding, not on whether the information will provide any personal benefit to the FOIA requester. In your January 29th letter, you acknowledge that CBD has a particular litigation interest in these documents, because CBD is a plaintiff in civil litigation against the Transportation Department (the Center, as a litigant, can readily avail itself of appropriate discovery under the applicable rules governing such litigation).

Moreover, in your appeal letter, you do not explain how CBD will actively disseminate any information that you obtain from OMB, in a manner that will contribute significantly *to the public's* understanding (and that would consist of more than the Center simply making such released materials available to the public, which does not satisfy the general fee waiver standard). Requests that make no showing of how the information would be disseminated, other than through passively making it available to anyone who might seek access to it, do not meet the burden of demonstrating that the information will increase *the public's* understanding of this rulemaking.

Consequently, after analyzing the Center's request for a fee waiver under the criteria established by the FOIA statute and OMB's implementing regulation, it is my conclusion that OMB properly denied the Center's fee waiver request.

As we noted in our prior letter dated January 26, 2007, we estimated the cost of an electronic search alone (not including manual search time and not including photocopying costs) would be approximately $6,171 (six thousand one hundred and seventy-one dollars) and that an electronic search would comprise only one portion of a FOIA search. The above is a preliminary estimate, and OMB has not yet conducted a search (electronic or otherwise) of the records in response to your request. Consequently, the actual search costs might ultimately turn out to be higher (perhaps significantly) as our search progresses.

In addition, since the required fees for processing your FOIA request would exceed $250, pursuant to OMB's FOIA regulations you are required to provide an advance payment at this point (with a subsequent payment being owed when the search has been completed). Because we are confident that the search costs would exceed $3,000 (one-half of the estimated fee for the electronic search alone), the advance payment shall be of $3,000. Please make your check or money order in this amount payable to the U.S. Treasury and mail it the attention of Ms. Dionne Hardy, OMB's FOIA Officer.

If you wish to reformulate your FOIA request in an effort to reduce the search and copying costs and to expedite our processing of your request, please contact Assistant General Counsel Stuart Bender at (202) 395-7533 or via fax at (202) 395-3108. In addition, if you would like to submit, for our consideration, additional information in support for your request for a fee waiver (for us to consider before reaching a final decision on your fee waiver request), please submit the information to Mr. Bender via fax at (202) 395-3108.

Please note that your FOIA request will not be processed by OMB until the advance payment is made or the fee issue is otherwise resolved.

If you do not wish to submit additional information in support of your fee waiver request, and therefore consider this response to be a denial of your appeal, you may seek judicial review of my action on your appeal in accordance with the provisions of 5 U.S.C. § 552(a)(4).

Sincerely,

Steven D. Aitken
Deputy General Counsel

Attachment (OMB's January 26, 2007 letter)

# Exhibit L



# CENTER FOR BIOLOGICAL DIVERSITY

### *VIA FACSIMILE*

July 19, 2007

Mr. Stuart Bender
Office of Management and Budget
Fax:  202.395.3108

**FREEDOM OF INFORMATION ACT**
**ADDITIONAL INFORMATION IN SUPPORT OF FEE WAIVER REQUEST**

Dear Mr. Bender:

This letter responds to the Office of Management and Budget's ("OMB") letter to the Center for Biological Diversity ("Center") dated June 12, 2007 which allowed for "additional information in support of" the Center's fee waiver request.  As background, on August 29, 2006, the Center mailed a Freedom of Information Act ("FOIA") request including a request for a fee waiver to OMB.  <u>See</u> Exhibit A.  OMB responded in a letter dated October 12, 2006, asking the Center to refine the scope of its request.  <u>See</u> Exhibit B.  On November 7, 2006, the Center responded by reiterating that it would like OMB to process its original request.  <u>See</u> Exhibit C.  In a letter dated January 26, 2007, OMB denied the Center's fee waiver request.  <u>See</u> Exhibit D.  The Center appealed the fee waiver denial on January 29, 2007.  <u>See</u> Exhibit E (minus exhibits).  In a letter dated June 12, 2007, OMB again denied the Center's fee waiver request. <u>See</u> Exhibit F.

The Center sends this additional information as a good faith effort to avoid unnecessary litigation.  For the following reasons, none of the points raised by OMB in its June 12, 2007, denial of the Center's fee waiver appeal are valid.  Therefore, we ask that OMB immediately grant a waiver and begin searching for responsive documents.  Each of the four issues raised by OMB is responded to in turn.  We also request that OMB respond to this letter within twenty working days.

<u>**First Issue**</u>

OMB asserts that because "the rulemaking agency has already made public a substantial amount of information," the disclosure of the documents requested by the Center would not be likely to contribute significantly to the public's understanding.  Exhibit F, p. 2.  That assertion is incorrect.  Published caselaw refutes the idea that the amount of relevant information already accessible in the public domain should have any bearing on an agency's decision whether or not

---

Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Pinos Altos • Portland • Washington, DC

Justin Augustine, Staff Attorney
1095 Market Street, Suite 511 • San Francisco, CA 94103
Tel.: (415) 436-9682 ext. 302 • Fax: (415) 436-9683
Email: jaugustine@biologicaldiversity.org • www.biologicaldiversity.org

the requested information will contribute significantly to the public's understanding of government operations, and thus whether or not to deny a fee waiver request.

For example, in Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1314-15 (D.C. Cir. 2003), the court found inapposite the possibility that Judicial Watch already had access to one of the documents, a waiver, it had requested of the Internal Revenue Service, when it had requested "considerably more" documents that were not already in the public domain, such as correspondence, memoranda, and statements.  See also Project on Military Procurement v. Dep't of Navy, 710 F. Supp. 362, 366 (D.D.C. 1989) (noting the significance that a single document can have and holding that agencies may not consider the quantity of documents to be released when making a determination on a fee waiver application); Eudey v. CIA, 478 F. Supp. 1175, 1177 (D.D.C. 1979) (same).

Furthermore, to compare the relative contribution of one piece of unreleased information to the body of relevant information already disseminated into the public domain, agencies would have to search for the requested documents and then make subjective judgments about their value to the public.  This process would be both wasteful of agency (and likely judicial) resources, and contrary to congressional intent.  See, e.g., 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy) (emphasizing that agencies should administer the fee waiver provision in "an objective manner and should not rely on their own, subjective view as to the value of the information"); see also Department of Justice, Freedom of Information Act Guide, March 2007, pp. 181-183.

Thus, in sum, the proper inquiry for an agency or court is whether the information requested is *itself* likely to contribute significantly to the public understanding of government operations, not, as suggested in OMB's June 12, 2007 letter to the Center, whether the information requested is likely to make a *comparably* valuable contribution to public understanding in light of relevant information already accessible in the public domain.  See Rossotti, 326 F.3d at 1314-15.  So long as it is likely that the entire body of information requested contains at least some information (which could be just a single document) that would contribute significantly to the public's understanding of federal governmental operations (according to an objective standard), a fee waiver request should not be denied with respect to *any* of the information requested.  See Project on Military Procurement, 710 F. Supp. at 366; Eudey, 478 F. Supp. at 1177; 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy).

In the present case, the Center has requested from OMB:

> **All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309.  This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466).  This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others,**

**draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.**

Exhibit A, p. 1. As OMB stated on pages 2-3 of its June 12, 2007 letter to the Center denying its fee waiver denial appeal, the Department of Transportation ("DOT") has already made available to the public the text, as submitted to OMB, of the proposed and final rule; public comments submitted during the rulemaking process; "the Regulatory Impact Analysis that the DOT had prepared for the proposed and final rule (which is required by EO 12866 and OMB Circular A-4); the DOT's Environmental Impact Assessment for the proposed and final rule; and the DOT's completed forms for submitting the drafts of the proposed and final rules to OMB for review." While OMB's assertion is true, it is irrelevant. As in Rossotti, the Center has *only* requested documents from OMB, such as correspondence among agency staff, which are *not* publicly available and *will* likely contribute to an understanding of federal governmental activities and operations. See Rossotti, 326 F.3d at 1314-15. The fact that DOT has made public certain other documents, including those listed above, is inapposite and should not be considered by OMB in deciding whether to grant the Center a fee waiver.

That the information requested by the Center, if disclosed, would likely make a significant contribution to the public's understanding of government operations is amply supported in the Center's initial August 29, 2006 FOIA request, as well as its January 29, 2007 appeal. While the Center and the public cannot predict with precision what the requested documents will reveal about the fuel economy rulemaking, there can be no dispute that disclosure of the requested documents may provide new information regarding the corporate average fuel economy ("CAFE") standards and will significantly enhance the public's understanding of OMB's operations and decisionmaking processes generally and with particular respect to the fuel economy rulemaking. In addition, the requested documents will shed light on government compliance with applicable laws, including, *but not limited to*, the Administrative Procedure Act ("APA"), the Energy Policy and Conservation Act ("EPCA"), and the National Environmental Policy Act ("NEPA").

In other words, the documents will divulge "what the government is up to" because they will help reveal whether OMB, as well as any other agency of the federal government, are conducting their operations in accordance with their legal and ethical obligations. United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure … focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose"). As the D.C. Circuit has stated, "the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted." Judicial Watch., 326 F.3d at 1313-14. Thus, because disclosure of the requested documents would reveal information not currently publicly available about how the activities of OMB, and possibly other federal agencies, have been conducted (both generally and with specific respect to the fuel economy rulemaking), it would contribute significantly to the public's understanding of government operations.

Moreover, widespread media attention alone can suffice to show that disclosure of requested information would contribute significantly to the public's understanding of an issue. Pederson v. Resolution Trust Corp. 847 F. Supp. 851, 855 (D. Colo. 1994). This is certainly the case here as both the CAFE rulemaking and the Center's subsequent lawsuit challenging it have received a tremendous amount of press. Copies of a few of the print stories covering the rulemaking and the Center's lawsuit are attached:

Egelko, Bob. "New fuel standards for trucks challenged: Environmental group sues, says rules will add to warming." San Francisco Chronicle, published on 4/7/2007. Attached as Exhibit G.

Molloy, Tim. "Environmental group seeks review of new government mileage rules." Associated Press, published on 4/7/2007. Attached as Exhibit H.

"Enviros file challenge to CAFE standards." Greenwire, Vol. 10 (9). Published 4/7/2007. Attached as Exhibit I.

## Second Issue

OMB's second reason for denying the Center's FOIA appeal is based on the assertion that many of the requested documents would either be exempt from mandatory disclosure (and hence, unreleasable), or are already somehow accessible in the public domain. However, the fact that OMB expects that it "would decline to release most of [the documents requested by the Center]" is inapposite. Exhibit F, p. 3. Similarly, OMB's expectation that "the responsive documents (or portions of documents) that OMB would most likely release will likely contain information that is already in the publicly [sic] domain" is not a proper justification for denying the Center's fee waiver request. Exhibit F, p. 3. These two issues are addressed in turn.

### *Exemptions*

OMB should be well aware that it can not deny a fee waiver based on FOIA exemptions—that fallacy has consistently been rejected by the courts and was thoroughly addresses by the Center's appeal. Nonetheless, it is again addressed here.

As pointed out in Judicial Watch, Inc. v. United States DOE:

> Under the FOIA, the agency bears the burden of justifying nondisclosure. See 5 U.S.C. § 552(a)(4)(B). It would be contrary to the express provisions of the FOIA to 'invert the burden of proof' and force a plaintiff not only to demonstrate that it satisfies the public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the defendant agency's contemplated withholdings are not properly claimed. Project on Military Procurement v. Dep't of the Navy, 710 F. Supp. at 367. 'A fee waiver request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure. Carney v. United States Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994). While in some rare cases it may be reasonable for an agency to deny a fee

> waiver because the FOIA request is for 'patently exempt documents,' id., the
> Court is unconvinced in this case that NRDC's FOIA requests sought 'patently
> exempt' documents.

310 F. Supp. 2d 271, 295 (D.D.C. 2004).

OMB's assertion was again explicitly rejected in <u>S. Utah Wilderness Alliance v. United States</u>
<u>BLM</u>:

> In a case where the Department of the Interior offered a similar rationale for its
> fee waiver denial, the court found that the agency improperly denied the plaintiff's
> requested fee waiver on the grounds that a portion of the records sought would be
> withheld, and 'releasing the non-exempt portions would not make a significant
> contribution to the understanding of the general public.' <u>Judicial Watch, Inc. v.</u>
> <u>Dep't of Energy</u>, 310 F. Supp. 2d 271, 295 (D.D.C. 2004) (citation omitted), rev'd
> in part on other grounds, 366 U.S. App. D.C. 343, 412 F.3d 125, 2005 WL
> 1412444 (D.C. Cir. 2005). The court noted that only in 'rare cases' would it be
> appropriate for an agency to deny a fee waiver on the grounds that the documents
> sought might be exempt from disclosure in their entirety.

402 F. Supp. 2d 82, 89 (D.D.C. 2005).

This is certainly not a "rare case." To suggest that everything the Center has requested is subject
to exemption is disingenuous, especially given that no search has yet been conducted. Moreover,
using an unspecified, conclusory claim of privilege as the basis for a fee waiver denial would
undermine FOIA significantly. FOIA carries a presumption of disclosure and the fee-waiver
amendments of 1986 were designed specifically to allow non-profit, public interest groups such
as the Center access to government documents without the payment of fees. As stated by one
Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters
seeking access to Government information . . ." 132 Cong. Rec. S. 14298 (statement of Sen.
Leahy). In interpreting this amendment, the Ninth Circuit has stated that the amended statute "is
to be liberally construed in favor of waivers for noncommercial requesters." <u>McClellan</u>
<u>Ecological Seepage Situation v. Carlucci</u>, 835 F.2d 1282, 1284 (9th Cir. 1987) (citing Sen.
Leahy). The Ninth Circuit has likewise explicitly pointed out that the amendment's main
purpose was "*to remove the roadblocks* and technicalities which have been used by various
Federal agencies to deny waivers or reductions of fees under the FOIA." <u>Id</u>. (emphasis added)

OMB's reliance on exemptions amounts to just such a roadblock and is contrary to both the letter
and intent of FOIA. Both Congress and the courts are clear in their interpretation that the main
legislative purpose of the FOIA amendments is to facilitate access to agency records by
"watchdog" organizations, such as environmental groups, which use FOIA to monitor and
challenge government activities. As the District of Columbia Circuit Court has stated, this
waiver provision was added to FOIA "*in an attempt to prevent government agencies from using*
*high fees to discourage certain types of requesters and requests*," in clear reference to requests
from journalists, scholars, and, most importantly for our purposes, non-profit public interest

groups.  Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984) (emphasis added).

In short, any OMB claims about which responsive records should be released and which may be withheld are irrelevant to the fee waiver determination.  OMB can not put the cart before the horse – the Center should not be required to pay for the search just so the Center can challenge the exemptions being applied.  Such an outcome would chill the FOIA process and allow agencies to effectively preclude FOIA efforts by non-profits.  FOIA's exemptions were never intended to preclude fee waivers as the courts have repeatedly articulated.

### Information already in the public domain

To begin with, the Center's FOIA request specifically asked for disclosure of documents "that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309" (DOT's regulatory docket).  Exhibit A, p. 1.  Thus, OMB's claim that the documents that "OMB would most likely release will likely contain information that is already in the publicly [sic] domain" because "it is information that is in the Transportation Department's regulatory docket" is an empty assertion.  Exhibit F, p. 3.

OMB also asserts that some of the documents it would most likely release will likely contain information "that is available in the press or other public documents."  Exhibit F, p. 3. However, OMB provides absolutely no guidance as to where in the public domain this information exists beyond "the press or other public documents."  This vagueness is fatal to OMB's contention.  An explanation of where in the public domain the information requested resides "is necessary because the mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions."  Campbell v. Dep't of Justice, 164 F.3d 20, 36 (D.C. Cir. 1998); see also Carney, 19 F.3d at 815-16; Schrecker v. Dep't of Justice, 970 F. Supp. 49, 50-51 (D.D.C. 1997); Fitzgibbon v. Agency for Int'l Dev., 724 F. Supp. 1048, 1051 (D.D.C. 1989).  Likewise fatal to OMB's contention is that it has not "indicated how closely related the requested material [is] to material already existing in the public domain."  Campbell, 164 F.3d at 36.  These omissions "preclude[] deference to" OMB's "ultimate conclusions" that much of the information contained in the requested documents would be likely to release already exists in the public domain.  Id.

In sum, OMB's assertion that some of the documents it would most likely release will likely contain information that "is already in the publicly [sic] domain" is unsubstantiated and can not lawfully inform and influence its determination as to the merits of the Center's fee waiver request.  Exhibit F, p. 3.

## Third Issue

OMB's third listed rationale for denying the Center's appeal is that it has no legal responsibility for ensuring that the "CAFE regulations are in compliance with such statutes as EPCA and NEPA" and thus, impliedly, that release of the requested documents would not contribute to

public understanding of the rulemaking process. Exhibit F, p. 4. Like the two before it, this rationale is likewise insufficient to support OMB's denial of the Center's fee waiver request.

First, OMB's assertions ignore the fact that OMB was intimately involved in the final rulemaking, especially in regard to the economic analysis and therefore, clearly has documents that will shed light on the DOT's and NHTSA's compliance with EPCA, NEPA and other applicable laws in setting the fuel economy standards for light trucks for model years 2008-2011. The fact that the documents held by OMB may shed light primarily on other agencies' compliance with federal law cannot be a justification for refusing to disclose the documents. In addition, OMB may very well have documents shedding light on DOT's and NHTSA's activities that are not held by these agencies themselves.

Regardless, as pointed out in the Center's original appeal, the requested documents could contain information regarding, or shed light upon, OMB compliance with the APA or another applicable law or standard regarding agency action. In other words, contrary to OMB assertions, the Center is not limiting potential legal violations to NEPA or EPCA and is also inquiring into whether there are any ethical improprieties that occurred by OMB. Thus, while it unknown at this time whether OMB's actions in regard to the fuel economy standards violate any applicable law or standard, such information may well be revealed by the FOIA Request.

Aside from compliance with any legal and ethical duties OMB has, disclosure of the requested documents, as aforementioned, would assuredly reveal to the public information about how OMB and, likely, DOT, have performed their duties and, in general, what they are "up to." United States Dep't of Defense, 510 U.S. at 495. Courts have consistently held this type of information is important to the public regardless of whether it sheds light on any governmental improprieties. See Judicial Watch, 326 F.3d at 1313 ("government counsel complained that Judicial Watch provided no evidence that Rossotti actually had a conflict of interest. That may be true, but the question here is not whether Rossotti had such a conflict, but whether disclosure is likely to contribute to public understanding of IRS operations—a goal that disclosure will promote regardless of what the documents reveal."); see also United States Dep't of Defense 510 U.S. at 495-496 (1994) ("[FOIA's] basic policy of full agency disclosure … focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose"). In short, OMB cannot bootstrap a requirement that the requester prove that the requested documents reveal actual legal violations before OMB agrees to release them.

**Fourth Issue**

OMB's final contention is that it is "not clear" that any information it would disclose to the Center "would contribute to the understanding *of the public at large*." Exhibit F, p. 4. In making this argument, OMB seems to have completely ignored the Center's extensive elaboration, on pages 6-8 of the Center's January 29 appeal, of its ability and intent to understand, process, and disseminate to the public the information it would glean from disclosure of the requested documents. Under existing case law, the Center unquestionably meets this dissemination prong of the fee waiver test.

To satisfy the dissemination requirement, an applicant for a fee waiver must merely show that it is able to reach "a reasonabl[y] broad audience of persons interested in the subject" and not the need to "reach a broad cross-section of the public." Carney, 19 F.3d at 814-15; see also Cmty. Legal Servs., Inc. v. HUD, 405 F. Supp. 2d 553, 557 (E.D. Pa. 2005) (noting that although the requester/fee waiver applicant's limited dissemination methods are unlikely to reach a general audience, "there is a segment of the public interested in requester's work"). As one D.C. district court has noted, in "this Information Age, technology has made it possible for almost anyone to fulfill [the dissemination] requirement." D.C. Technical Assistance Org. v. HUD, 85 F. Supp. 2d 46, 49 (D.D.C. 2000); see also VoteHemp, Inc. v. Drug Enforcement Administration, 237 F. Supp. 2d 55, 62 (D.D.C. 2002) (finding fee waiver applicant's three part dissemination plan - using its Web site, issuing press releases, and communicating legislators - sufficient to satisfy the dissemination prong); Forest Guardians, 416 F.3d at 1180 (finding Forest Guardian's publication of "an online newsletter, which is e-mailed to more than 2,500 people" and statement "that it intends to establish an interactive grazing web site with the information obtained from the BLM" sufficient to satisfy dissemination requirement).

The Center meets the dissemination requirement because it has the requisite staff, experience and resources to understand the material requested and has the ability and intent to disseminate the information to a "reasonabl[y] broad audience of persons interested in the subject" of the CAFE standards, as well as air pollution, climate change, and energy issues more generally. Carney, 19 F.3d at 814-15. First, the fact that the Center has for years had a Climate, Air, and Energy Program dedicated exclusively to these issues is illustrative of its expertise in and capacity to understand the information requested from OMB. More specifically, the program has its own staff members who work solely on climate, air, air and energy issues. The program's staff includes Kassie Siegel, the program director and staff attorney, Shaye Wolf, a staff biologist, Brian Nowicki, a policy analyst and conservation biologist, and Matt Vespa, a staff attorney. In addition, the program is frequently aided by other staff members of the Center. All of these people have the ability to process the information obtained from the FOIA and explain it to the public. Thus, contrary to OMB's assertion, the Center will not just be making the information available. It will be read, processed, and explained to the public. Such efforts are not "passive" as OMB seems to believe.

The Center similarly has the clear ability and intent to *actively* disseminate the information to a reasonably broad audience of interested persons. Just as the requester in Forest Guardians, the Center sends out regular electronic newsletters, called Biodiversity alerts, which contain in part information such as that presently requested, approximately once a week to nearly 17,000 people – all of whom are interested in such information, as shown by their being on the mailing list. Forest Guardians, 416 F.3d at 1180. Furthermore, like the requester in VoteHemp, the Center also publishes a print newsletter, and plans to highlight the information gleaned from disclosure of the requested documents in at least one edition. Vote Hemp, 237 F. Supp. 2d at 62. In addition, the Center plans to use knowledge gained from the requested information in comment letters to and other communications with federal government agencies and other officials. The Center also plans to highlight what it learns from the requested information on its website, which is accessed several hundred-thousand times each month. Lastly, the Center's ongoing litigation over the CAFE rulemaking, as well as many of the Center's Climate, Air, and Energy Program's past endeavors, have received an enormous amount of media attention, in print, on the television, and on the radio. See e.g. Exhibits G, H, I. Again, the Center's efforts are not "passive" and

easily meet the objectives of FOIA's fee waiver provisions.  See Judicial Watch, Inc. v. DOE, 310 F. Supp. 2d at 292 (finding that requester's "litany of means by which it [could] publicize[] information" without any specific representation that it intended to do so in instant case satisfied dissemination requirement).

Finally, the Center's past history of active dissemination supports its current ability and intent to disseminate information gleaned from OMB.  The Center has, on numerous occasions, disseminated documents that were based entirely or largely from information gleaned from FOIA requests.  For example, the Center learned from one FOIA request that the U.S. Fish and Wildlife Service had improperly conducted its analysis in regard to an Endangered Species Act petition the Center had submitted.  The Center processed that information and disseminated it in a press release and on its website.  See http://biologicaldiversity.org/swcbd/press/desert-bald-eagle-05-17-2007.html.  Similarly, the Center issued a press release, based largely on information obtained through various FOIA requests, regarding Julie MacDonald's improper actions while working at the Department of Interior.  See http://biologicaldiversity.org/swcbd/press/macdonald-05-22-2007.html.

Thus, the Center has clearly met its burden of explaining "in detailed and non-conclusory term—again all that FOIA requires—exactly how and to whom it will disseminate the information it receives." Rossotti, 326 F.3d at 1314; see also VoteHemp, 237 F. Supp. 2d at 62; D.C. Technical Assistance, 85 F. Supp. 2d at 49; Forest Guardians, 416 F.3d at 1180.

**Conclusion**

For the reasons stated above, none of the points raised by OMB in its denial of the Center's fee waiver appeal are valid.  Therefore we respectfully ask that OMB immediately grant a fee waiver and begin searching for responsive documents.  At the very least, please respond within twenty working days.  Thank you.

Sincerely,

Justin Augustine

Justin Augustine