1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  MICHAEL T. PYLE (CSBN 172954 )
   Assistant United States Attorney
4
   450 Golden Gate Avenue, Box 36055
5  San Francisco, California 94102-3495
   Telephone: (415) 436-7322
6  FAX: (415) 436-6748
   e-mail: michael.t.pyle@usdoj.gov
7
   Attorneys for Defendant Office of Management and Budget
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12
   CENTER FOR BIOLOGICAL          )   No. C 07-4997 MHP
13 DIVERSITY, a non-profit organization, )
                                  )
14      Plaintiff,                )
                                  )
15 v.                            )   **DEFENDANT OFFICE OF**
                                  )   **MANAGEMENT AND BUDGET'S**
16 THE OFFICE OF MANAGEMENT AND   )   **OPPOSITION TO PLAINTIFF'S**
   BUDGET,                       )   **MOTION FOR SUMMARY**
                                  )   **ADJUDICATION OF FEE WAIVER**
17                                )   **ISSUE**
        Defendant.                )
18 _____ )   Date:  February 25, 2008
                                      Time:  2:00 p.m.
19                                    Judge: Honorable Marilyn Hall Patel
                                            Courtroom 15
20

21

22

23

24

25

26

27

28

   DEFENDANT'S OPP. TO PLTF'S MOTION FOR SUMM. ADJUD. OF FEE WAIVER ISSUE
   C 07-4997 MHP

1

TABLE OF CONTENTS

2    I.    INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

3    II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4        A.    OMB. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5            B.    The NHTSA Rulemaking and OMB's Role in the Rulemaking. . . . . . . . . 3

6            C.    CBD's FOIA Request and the Administrative Record
                    Leading to OMB's Denial of CBD's Fee Waiver Request. . . . . . . . . . . . 5
7
     III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
8
9        A.    CBD's Motion Relies on Improper Material and Overstates
                The Policy and Standard of Review for Fee Waivers. . . . . . . . . . . . . . . . . . . . . 6

10            B.    CBD Fails to Meet Its Burden of Establishing
11                  an Entitlement to a Fee Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12            C.    Testing Compliance With Federal Statutes Does Not "Contribute
                    Significantly to Public Understanding." . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13            D.    OMB is Unlikely to Release Information Not Already in
14                  the Public Domain So Further Disclosure Would Not
                    "Contribute Significantly to Public Understanding." . . . . . . . . . . . . . . . . 11

15            E.    NHTSA, the Rulemaking Agency, Has Disclosed Information About its
                    Rulemaking So Further Disclosure From OMB Would Not
16                  "Contribute Significantly to Public Understanding." . . . . . . . . . . . . . . . . 14

17            F.    CBD's Requested Relief is Inappropriate Because OMB Has Not Begun
                    to Process CBD's Exceedingly Broad FOIA Request. . . . . . . . . . . . . . . 16
18
     IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

### FEDERAL CASES

AFGE v. U.S. Department of Commerce,
632 F. Supp. 1272 (D.D.C. 1986),
*aff'd*, 907 F.2d 203 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Carney v. U.S. Department of Justice,
19 F.3d 807 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

Carter v. U.S. Department of Commerce,
307 F.3d 1084 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Center for Biological Diversity v. National Highway Traffic Safety Administration,
508 F.3d 508 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

Coastal States Gas Corp. v. Department of Energy,
617 F.2d 854 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Edmonds Institute v. U.S. Department of Interior,
460 F. Supp. 2d 63 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Irons v. FBI,
571 F. Supp. 1241 (D. Mass. 1983),
*rev'd on other grounds*, 811 F.2d 681 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Judicial Watch, Inc. v. Department of Justice,
122 F. Supp. 2d 5 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Judicial Watch, Inc. v. Department of Justice,
185 F. Supp. 2d 54 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Judicial Watch, Inc. v. Rossotti,
326 F.3d 1309 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Judicial Watch, Inc. v. United States Department of Energy,
310 F. Supp. 2d 271 (D.D.C. 2004),
*reversed in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005) . . . . . . . . . . . . . . . 12

Judicial Watch, Inc. v. Department of Justice,
2000 WL 33724693 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Judicial Watch, Inc. v. Department of Justice,
Civ. No. 99-2315, 2000 WL 33724693 (D.D.C. Aug. 17, 2000) . . . . . . . . . . . . . . . . 11

Larson v. C.I.A.,
843 F.2d 1481 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Maricopa Audubon Society v. U.S. Forest Serv., ,
108 F.3d 1089 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

McClain v. United States Department of Justice,
13 F.3d 220 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McClellan Ecological Seepage Situation v. Carlucci,
  835 F.2d 1282 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 8, 9

Media Access Project v. FCC,
  883 F.2d 1063 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

National Labor Rel. Board v. Sears, Robuck & Co.,
  421 U.S. 132 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

National Treasury Employees Union v. Griffin,
  811 F.2d 644 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

National Wildlife Federation v. U.S. Forest Serv.,
  861 F.2d 1114 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Pederson v. Resolution Trust Corp.,
  847 F. Supp. 851 (D. Colo. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pollack v. Department of Justice,
  49 F.3d 115 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Security Archive v. Department of Defense,
  880 F.2d 1381 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States Department of Defense v. Federal Labor Relations Authority,
  510 U.S. 487 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Van Fripp v. Parks,
  Civ. No. 97-159, 2000 U.S. Dist. LEXIS 20158 (D.D.C. March 16, 2000) . . . . . . . . . 12

Vaughn v. Rosen,
  523 F.2d 11136 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VoteHemp, Inc. v. Drug Enforcement Admin.,
  237 F. Supp. 2d 55 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 15

## DOCKETED CASES

People of the State of California ex rel. Edmund G. Brown, Attorney General of the State
  of California v. NHTSA et al.,
  Case No. C 06-2654 SC (N.D. Cal) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

People of the State of California v. EPA et al.,
  Case No. C 07-2055 JSW (N.D. Cal) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## FEDERAL STATUTES

5 U.S.C. §552(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. §552(a)(4)(A)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

5 U.S.C. §552(a)(4)(A)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. §552(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

5 U.S.C. §§701 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1

## FEDERAL REGULATIONS

2  5 C.F.R. §1303.60(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3  5 C.F.R. §1303.70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7, 8

4  68 Fed. Reg. 74,908 (Dec. 29, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5  70 Fed. Reg. 51,414-51,466 (Aug. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

6  71 Fed. Reg. 17,566-17679 (Apr. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

7  71 Fed. Reg. 17,577 (Apr. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14-15

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Center for Biological Diversity's ("CBD" or "Plaintiff") motion for summary adjudication, like its underlying fee waiver request, is premised on the theory that full fee waivers are appropriate whenever a non-profit group wants to know what some government agency is "up to" – here, to determine whether or not Defendant Office of Management and Budget ("OMB") has complied with a variety of laws. There is no dispute that CBD has never offered a shred of evidence to even suggest that OMB violated any law in connection with the Notice of Proposed Rulemaking and Final Rule issued by National Highway Traffic Safety Administration ("NHTSA"). Nor does CBD offer any evidence or argument that any of these statutes even applied to OMB in connection with the rulemaking. Rather, CBD claims it is entitled to a full fee waiver to determine whether or not there are any violations of law so that it can bring a legal action if anything illegal is uncovered.

Ironically, CBD's motion relies heavily on *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987) ("*McClellan*"), but nowhere acknowledges the holding in that case: the plaintiffs there were denied a full fee waiver where the FOIA request sought information about an agency's legal compliance with law regarding an environmental matter. *McClellan* also answers all of CBD's policy arguments: no amount of FOIA policy entitles a plaintiff to a full fee waiver absent compliance with the statutory test.

Like the plaintiffs in *McClellan*, CBD simply cannot meet the statutory and regulatory test: "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. §552(a)(4)(A)(iii); *see also* 5 C.F.R. §1303.70 (OMB's FOIA regulation on waiver or reduction of fees).

Resolution of the cross motions does not turn on the question of the importance of global warming. Indeed, the amount of information in the public record about NHTSA's rulemaking undercuts CBD's argument because the marginal value of anything that might be produced by OMB would not add to what is already in the public record. The Ninth Circuit was able to evaluate NHTSA's rulemaking and determine the fate of that rulemaking without any documents

1   from OMB other than what is already available. NHTSA's rulemaking obviously could not have
2   been based on anything that OMB did not share with NHTSA; likewise, anything that OMB did
3   share with NHTSA would have been available by means of CBD's FOIA request to NHTSA and
4   the Department of Transportation.

5       Unlike NHTSA, which is an operational agency, OMB is a uniquely deliberative agency
6   which provides advice to the President about proposed significant regulations, and thus the
7   documents sought by CBD are, almost by definition, documents that will be withheld pursuant to
8   the deliberative process privilege. In short, little or nothing would be subject to "disclosure,"
9   much less any disclosure "likely to contribute significantly to public understanding of the
10  operations or activities of the government."

11      OMB respectfully requests that the Court deny Plaintiff's motion and instead grant
12  OMB's motion for summary adjudication.

13  **II.    STATEMENT OF FACTS**

14      For the Court's convenience, OMB repeats the Statement of Facts from its motion for
15  summary adjudication since the same body of facts supports OMB's opposition to CBD's
16  motion.

17      **A.    OMB.**

18      OMB submits that the most important part of the record for the Court to appreciate is that
19  OMB plays a unique role among federal agencies: OMB is a deliberative agency which, among
20  other things, provides advice to the President about proposed significant regulations. OMB did
21  not issue the regulation at issue in this case and would not have had any authority to do so.

22      Rather, OMB assists the President in the discharge of his budgetary, management, and
23  other executive responsibilities. *See* Declaration of John F. Morrall, III filed on January 25,
24  2008 in support of OMB's Motion for Summary Adjudication ("Morrall Decl."), ¶3.
25  Specifically, OMB assists the President in the preparation of the federal budget and in managing
26  its execution by the agencies. *Id.* OMB also has a central role in providing leadership in the
27  development, oversight and coordination of the Federal government's policies in procurement,
28  financial management and the information, statistical, and regulatory arenas as well as in the

1   implementation of those policies. *Id.* OMB promotes better program management, strengthens

2   administrative management, develops agency-performance measures and improves coordination

3   of the Executive Branch's various operations. *Id.*

4          OMB has only about 490 employees, all of whom are located in Washington, D.C. *Id.*,

5   ¶4. The Office of Information and Regulatory Affairs ("OIRA") was established as part of OMB

6   by Congress in the 1980 Paperwork Reduction Act. *Id.*, ¶5. In addition to OIRA's role

7   reviewing collections of information and information policy issues under the Paperwork

8   Reduction Act, OIRA designates and reviews significant regulations under Presidential

9   Executive Order 12866 (1993). *Id.* Under Executive Order 12866, OIRA consults with Federal

10  agencies and reviews draft significant regulations and regulatory analyses concerning the

11  regulations' potential effects on society, both their benefits and costs. *Id.* As the Executive

12  Order directs, OIRA reviews significant regulations (approximately 600 per year), in draft form

13  before publication to ensure agency compliance with the Executive Order. *Id.* OIRA has been

14  conducting this centralized regulatory review function since 1981 (*id.*), and has thus served

15  Presidents from both major political parties.

16         OIRA staff work with Federal agencies to review and evaluate planned agency

17  regulations on a wide variety of matters. *Id.*, ¶6. OIRA staff review an agency's draft regulation

18  and discuss the regulation with the agency staff as well as with other agencies that might be

19  affected by the draft regulation before it is issued publicly in the Federal Register as either an

20  Advanced Notice of Proposed Rulemaking ("ANPRM"), Notice of Proposed Rulemaking

21  ("NPRM") or Final Rule. *Id.* OIRA played this role in connection with the rulemaking at issue

22  in this case, as discussed below.

23         **B.    The NHTSA Rulemaking and OMB's Role in the Rulemaking.**

24         On December 12, 2003, NHTSA published an Advanced Notice of Proposed Rulemaking

25  ("ANPRM") in the Federal Register, proposing Corporate Average Fuel Economy ("CAFE")

26  requirements for light trucks (such as pick-up trucks, minivans and sport utility vehicles) for

27  model years 2008 through 2011. *See* 68 Fed. Reg. 74,908 (Dec. 29, 2003). Eighteen months

28  later, on August 30, 2005, NHTSA published a Notice of Proposed Rulemaking ("NRPM"),

1  proposing CAFE standards for light trucks for model years 2008 through 2011. *See* 70 Fed. Reg.

2  51,414 (Aug. 30, 2005). NHTSA received more than 45,000 comments on the NPRM and a

3  Draft Environmental Assessment from states, consumer and environmental organizations,

4  automobile manufacturers and associations, members of Congress and private individuals. *See*

5  71 Fed. Reg. At 17,577. NHTSA's final rule was issued on April 6, 2006. *See* 71 Fed. Reg.

6  17,566. The public regulatory docket related to NHTSA's rulemaking process is available at

7  www.reginfo.gov.

8      OMB's role with respect to NHTSA's rulemaking process was limited. Pursuant to

9  OIRA's authority under Executive Order 12866, OIRA conducted a review prior to publication

10  of NHTSA's draft Final Rule regarding NHTSA's standards for CAFE. *See* Morrall Decl., ¶8.

11  Prior to issuance of the final rule on April 6, 2006, OIRA consulted with an interagency panel

12  consisting of Executive Branch agencies that had an interest in CAFE (such as NHTSA,

13  Department of Energy, EPA, etc.). *See id.*, ¶7. OIRA used this group as a mechanism for

14  interagency comment on the draft proposed rule. *Id.* Any comments OIRA received during this

15  process were provided to NHTSA for its consideration. *Id.*, ¶7. Thus, the documents ultimately

16  at issue in this case concern the internal inter-governmental deliberations leading up to various

17  decisions related to issuance of the Final Rule, including communications among OMB staff.

18  *Id.*, ¶8; Morrall Decl., Exh. 6 at p. 3.

19      The most recent development in NHTSA's final rule stems from the Ninth Circuit's

20  decision in *Center for Biological Diversity v. National Highway Traffic Safety Administration*,

21  508 F.3d 508 (9th Cir. 2007). The court there held that NHTSA's final rule was arbitrary and

22  capricious and contrary to the Energy Policy and Conservation Act of 1975 ("EPCA") in certain

23  respects; the Court remanded the matter to NHTSA to promulgate new standards and also to

24  prepare a full Environmental Impact Statement. Important for purposes of this motion is the fact

25  that OMB was not a party to any of the Petitions resulting in the Ninth Circuit opinion and the

26  fact that the opinion confirms that it is NHTSA – not OMB – who is and was responsible for the

27  final rule.

28

## C. CBD's FOIA Request and the Administrative Record Leading to OMB's Denial of CBD's Fee Waiver Request.

The FOIA request at issue in this case CBD's August 29, 2006 FOIA request to OMB, DOT and the National Highway Traffic Safety Administration. Morrall Decl., Exh. 1. CBD requested "All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008-2011 (71 Fed. Reg. 17566-17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005-22223 and 2006-24309. This request includes communications among staff and others that were created during the development of the Final Rule and the Proposed Rule (70 Fed. Reg. 51414-51466). This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc." Morrall Decl., Exh. 1 at pgs. 1-2. In the same letter CBD requested a fee waiver, asking OMB and the other recipients to "waive all fees in connection with this matter." *Id.* at pgs 2-5.

On October 12, 2006, OMB replied to CBD's FOIA request in a letter stating that the FOIA request was "overly broad" and inviting CBD to narrow its request. Morrall Decl., Exh. 2.

On November 7, 2006, CBD submitted a letter that it styled as a "Freedom of Information Act Appeal" to OMB. The letter did not narrow or otherwise refine the scope of CBD's FOIA request. Morrall Decl., Exh. 3.

On January 26, 2007, OMB responded to CBD's "Freedom of Information Act Appeal" of November 7, 2006. OMB stated that it did not consider CBD's letter to be an appeal because OMB had yet to make a determination as to whether to grant or deny the FOIA request. OMB's letter then processed CBD's request for a fee waiver. OMB determined that "the vast majority of the documents that are the subject of your FOIA request would very likely be withheld from mandatory disclosure under FOIA exemption 5 (5 U.S.C. §552(b)(5)" and that CBD had thus failed to satisfy the standard in 5 C.F.R. §1303.70 because the FOIA request would not lead to a release that would "contribute significantly to public understanding of the operations or activities of Government." OMB further advised CBD that it had determined that CBD was a non-commercial requester and advised CBD that the FOIA request would not be processed by OMB

1  until the fee issue had been resolved.  Morrall Decl, Exh. 4.

2       On January 29, 2007, CBD submitted another "Freedom of Information Act Appeal" to

3  OMB.  In this letter CBD argued that it should be granted a full fee waiver by OMB.  Morrall

4  Decl., Exh. 5.

5       On June 12, 2007, OMB denied CBD's appeal of the denial of its request for a fee

6  waiver.  OMB advised CBD in this letter that "we have again reviewed your request for a fee

7  waiver."  OMB explained the four reasons for its decision to deny CBD's appeal: (1) NHTSA,

8  not OMB, issued the proposed and final rules at issue and NHTSA has already made public a

9  substantial amount of information about the rulemaking; (2) OMB would be unlikely to release a

10  significant amount of information not already in the public domain; (3) OMB would be unlikely

11  to release information "likely to contribute significantly" to the public's understanding of

12  whether or not OMB had complied with certain statutes; and (4) CBD had not established that

13  disclosure of documents to it would contribute to the understanding of the public at large.

14  Morrall Decl., Exh. 6.

15       On July 19, 2007, CBD made a final submission to OMB, in a letter it styled as

16  "Additional Information In Support of Fee Waiver Request."  Morrall Decl., Exh. 7.  OMB did

17  not revisit its denial of CBD's request for a fee waiver as a result of anything in this letter.

18       This litigation then ensued by which CBD seeks to obtain an order that it is entitled to a

19  full fee waiver.

20  **III.    ARGUMENT**

21       **A.    CBD's Motion Relies on Improper Material and Overstates**
            **The Policy and Standard of Review for Fee Waivers.**
22

23       CBD's request for a fee waiver is reviewed *de novo* by this Court but "the court's review

24  of the matter shall be limited to the record before the agency."  *McClellan*, 835 F.2d at 1284

25  (citing 5 U.S.C. §552(a)(4)(A)(vii)).  CBD admits this, stating that this Court's review of CBD's

26  fee waiver request is "limited to the facts and arguments in the record before the agency."  CBD

27  Memo. at 8:19-20.

28  //

1    Curiously, however, CBD relies heavily in its motion on "facts and arguments" that were

2  not presented to OMB prior to OMB's denial of CBD's fee waiver request, namely, the

3  Declaration of Kassia Siegel and the exhibits to that declaration, and Exhibits C, E, F, & G to the

4  Declaration of Justin Augustine.  Those materials should be disregarded by this Court, as was

5  held by a case relied upon by CBD. *See Pederson v. Resolution Trust Corp.*, 847 F. Supp. 851,

6  854 n.3 (D. Colo. 1994) ("as requested by the RTC, the court will disregard the plaintiff's

7  exhibits other than the administrative record.").  Moreover, the actions of DOT or other federal

8  agencies are not relevant here because fee waiver requests are resolved on a case-by-case basis.

9  *See, e.g., Media Access Project v. FCC*, 883 F.2d 1063, 1065 (D.C. Cir. 1989) (noting that

10  requester may seek waiver of fees on "case-by-case" basis); *Edmonds Inst. v. U.S. Dep't of*

11  *Interior*, 460 F. Supp. 2d 63, 75 (D.D.C. 2006) ("applications for fee waivers are considered on a

12  case-by-case basis").  In addition, DOT and NHTSA, as operational agencies responsible for the

13  rulemaking, could reasonably be expected to have documents about the rulemaking that OMB, a

14  deliberative agency not responsible for the rulemaking, would not.

15    CBD also overstates the role of policy in favor of its motion.  Ironically, CBD relies most

16  heavily on *McClellan* for its policy arguments, yet in that very case the Ninth Circuit held that

17  "[e]ven in light of legislative intent that courts construe the amended statute liberally, requesters

18  do not deserve a complete waiver of fees." *McClellan*, 835 F.2d at 1287.

19    CBD thus overstates things when it claims that FOIA's fee waiver provisions were

20  "created to guarantee . . . access" to records without charge and that non-commercial requesters

21  need only demonstrate a "minimal showing of their legitimate intention to use the requested

22  information that contributes to public understanding of the operations of government agencies"

23  to obtain a full fee waiver.  CBD Mem. at 20:23-28.  FOIA creates no such rights: CBD must

24  meet the statutory and regulatory test: "disclosure of the information is in the public interest

25  because it is likely to contribute significantly to public understanding of the operations or

26  activities of the government and is not primarily in the commercial interest of the requester."  5

27  U.S.C. §552(a)(4)(A)(iii); *see also* 5 C.F.R. §1303.70.  Tellingly, in its recitation of the standard

28  on page 20 of its Memorandum, CBD omits the word "significantly" and thus ignores a key

DEFENDANT'S OPP. TO PLTF'S MOTION FOR SUMM. ADJUD. OF FEE WAIVER ISSUE
C 07-4997 MHP                               7

1   limitation on the ability of CBD to obtain a fee waiver.

2          CBD gets no automatic entitlement to a fee waiver due to its non-profit status.

3   *McClellan*, 835 F.2d at 1284 ("public interest groups must satisfy the statutory test"). Indeed,

4   there is a good reason to require CBD to pay for the costs that would be imposed on OMB in

5   processing CBD's request. As Judge Easterbrook has written in a decision affirming an

6   agency's denial of a fee waiver: "Even a request from a newspaper or nonprofit would not lead

7   to an automatic waiver of fees. Prices serve to ration access; university libraries must pay for

8   their books and journals. The press has an insatiable appetite for information, and the need to

9   pay something for it leads everyone to ask whether the data are worth the marginal costs."

10  *McClain v. United States Dep't of Justice*, 13 F.3d 220, 221 (7th Cir. 1993); *VoteHemp, Inc. v.*

11  *Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 59, 64-66 (D.D.C. 2002) ("Plaintiff's status as a

12  nonprofit organization dos not relieve it of its obligation to satisfy the statutory requirements for

13  a fee waiver) (citation omitted); *Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1384 (D.C.

14  Cir. 1989) (noting elimination from FOIA bill of preference for fee waivers for non-profit

15  organizations).

16         In fact, "all FOIA requesters have an equal, and equally qualified, right to information"

17  so the fact that CBD is "seeking to vindicate" certain interests "is irrelevant to the FOIA

18  analysis." *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 499

19  (1994).

20         **B.     CBD Fails to Meet Its Burden of Establishing**
               **an Entitlement to a Fee Waiver.**
21

22         FOIA Section 552(a)(4)(iii) establishes a two-part test for establishing whether or not an

23  agency is required to waive or reduce fees for a FOIA request: disclosure must be "likely to

24  contribute significantly to public understanding of the operations or activities of the

25  government," and disclosure must be "not primarily in the commercial interest of the requester."

26  *See also McClellan*, 835 F.2d at 1284 (setting out standard). The FOIA provides that each

27  agency must promulgate regulations establishing procedures and guidelines for determining

28  when such fees should be waived or reduced. *See* 5 U.S.C. § 552(a)(4)(A)(i). OMB's fee

1    waiver regulation, 5 C.F.R. §1303.70, is essentially identical to the two-part statutory test,

2    stating that fees "shall be waived or reduced where it is determined that disclosure is in the

3    public interest because it is likely to contribute significantly to public understanding of the

4    operations or activities of the Government and is not primarily in the commercial interest of the

5    requester."

6          The burden is on CBD to establish that it satisfies this statutory and regulatory test. *See*

7    *McClellan*, 835 F.2d at 1285 (quoting *National Treasury Employees Union v. Griffin*, 811 F.2d

8    644, 647 (D.C. Cir. 1987)). *See also Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988). In

9    the present case, CBD cannot meet that burden for the reasons set forth below. *See* Sections

10   II.C-E, below.

11          **C.     Testing Compliance With Federal Statutes Does Not "Contribute
                    Significantly to Public Understanding."**

12

13          CBD's motion states that its FOIA request "seeks to acquire, analyze and publicize how

14   and why the regulations were set at the level chosen by DOT and not at a higher level that would

15   make use of the available fuel economy technologies." CBD Memo. at 6:1-3 (citing Augustine

16   Decl., Exh. A at 3). But that is not what CBD said in its FOIA request. Rather, CBD said (at the

17   page cited by CBD): "The documents requested . . . are certain to shed light upon the agencies'

18   compliance with EPCA and the Administrative Procedures Act." *See* Augustine Decl., Exh. A at

19   3. Later in the FOIA request CBD said: "The requested documents will be used to determine

20   whether the agencies complied with EPCA, its implementing regulations, and the Administrative

21   Procedures Act (5 U.S.C. §§701 et seq.). . . . We have enforced the provisions of our nation's

22   laws and regulations many times through information gained from FOIA requests like this one.

23   We intend to use the documents requested in a similar manner." *Id.* at 5.

24          In *McClellan*, the Ninth Circuit addressed a fee waiver request sought by a nonprofit

25   association that sought information about water pollution at the McClellan Air Force Base in the

26   Sacramento area. *McClellan*, 835 F.2d at 1283. In the group's letter requesting a fee waiver the

27   group stated that the information "may be used in litigation to ensure that agencies comply with

28   federal law" among other reasons. *Id.* at 1285. The Ninth Circuit held that such conclusory

1    statements did not support a fee waiver (*id.*, citing *National Treasury Employees Union v.*

2    *Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987); moreover, the Court explained that – taken to its

3    logical extreme – a public interest group could "demand fee waiver on a request for *all* U.S.

4    government documents, on the basis that the information might be used in litigation to ensure

5    that agencies comply with federal law." *Id.* (emphasis in original).

6         CBD's basis for its fee waiver request suffers from the same critical defect.  It is not a

7    sufficient basis to obtain a fee waiver by contending that the requested information will bear on

8    whether or not some federal agency is complying with federal law, particularly where, as here,

9    there is no evidence of any kind that OMB did anything improper with respect to the rulemaking

10   at issue.  Indeed, it is hard to conceive of how OMB could have done anything improper given

11   that the rulemaking in question was never OMB's rule to issue.  *See, e.g., VoteHemp, Inc. v.*

12   *Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 61 (D.D.C. 2002) (rejecting as "rank

13   speculation" allegations that plaintiff entitled to fee waiver based on allegation that agency had

14   "ulterior motive" when it published interpretive rule); *AFGE v. U.S. Dep't of Commerce*, 632 F.

15   Supp. 1272, 1278 (D.D.C. 1986) (finding union's allegations of agency malfeasance too

16   ephemeral to warrant waiver of fees without evidence that informative information would be

17   disclosed), *aff'd*, 907 F.2d 203 (D.C. Cir. 1990).

18        CBD fails to address *McClellan*, and instead relies upon *United States Department of*

19   *Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495-96 (1994) and *Judicial Watch, Inc.*

20   *v. Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003).  Neither case supports CBD's argument that a

21   non-profit organization is entitled to a full fee waiver whenever it seeks documents about what

22   some government agency is "up to."  Indeed, *United States Department of Defense* is not a fee

23   waiver case at all – and thus offers no holding on point that could help CBD.  CBD's citation to

24   the *Judicial Watch, Inc. v. Rossotti* case is closer to the mark, but in that case Judicial Watch

25   submitted a very specific FOIA request regarding an allegation that the Commissioner of the IRS

26   had awarded a government contract to a private company he co-founded and in which he

27   retained an ownership interest.  Needless to say, CBD has made no similar allegations against

28   OMB.  Moreover, CBD's fee waiver request contained nothing so specific.

1    Indeed, CBD's fee waiver request should be denied just as Judicial Watch has been

2  repeatedly denied when it has claimed an entitlement to a fee waiver on general statements about

3  seeking documents to "deter government corruption" or examine "the integrity and operations"

4  of a government agency. *See Judicial Watch, Inc. v. Dep't of Justice*, 122 F. Supp 2d 5 (D.D.C.

5  2000) (granting DOJ's motion for partial summary judgment regarding fee waiver issue);

6  *Judicial Watch, Inc. v. Department of Justice*, 185 F. Supp. 2d 54 (D.D.C. 2002) (same); *Judicial*

7  *Watch, Inc. v. Dep't of Justice*, Civ. No. 99-2315, 2000 WL 33724693 (D.D.C. Aug. 17, 2000)

8  (same). In each of these cases the court relied on *McClellan* for the proposition that conclusory

9  statements and assertions are insufficient to support fee waiver requests. *See Judicial Watch,*

10  *Inc. v. Dep't of Justice*, 122 F. Supp 2d at 9; *Judicial Watch, Inc. v. Dep't of Justice*, 185 F.

11  Supp. 2d at 60; *Judicial Watch, Inc. v. Dep't of Justice*, 2000 WL 33724693 at*5.

### D. OMB is Unlikely to Release Information Not Already in the Public Domain So Further Disclosure Would Not "Contribute Significantly to Public Understanding."

In its initial denial of CBD's fee waiver request by letter dated January 26, 2007 and

again in its denial of CBD's appeal by letter dated June 12, 2007, OMB consistently explained

that OMB would be unlikely to release a significant amount of information not already in the

public domain because of OMB's unique role as a deliberative agency which provides advice to

the President. OMB explained that it expected that "most of the responsive documents that

OMB would locate . . . would consist of pre-decisional opinions, discussions, and/or draft

versions of the proposed and final rule, which were being considered, commented upon and

revised by Executive Branch staff" – quintessential pre-decisional, deliberative communications

exempt from disclosure under FOIA Exemption 5, 5 U.S.C. §552(b)(5). OMB based this

expectation on its "experience in responding to FOIA requests seeking similar types of

deliberative materials."

CBD argues that it was improper for OMB to consider the privileged nature of the

requested documents based on some case law holding such considerations to be generally

improper under FOIA. CBD Mem. at 18-19. However, the cases relied upon by CBD

DEFENDANT'S OPP. TO PLTF'S MOTION FOR SUMM. ADJUD. OF FEE WAIVER ISSUE
C 07-4997 MHP                                11

1   acknowledge that it is proper to deny a fee waiver on this basis in those "rare cases" where the
2   FOIA request is for documents that are "patently exempt" from disclosure. *See Carney v. U.S.*
3   *Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994); *Judicial Watch, Inc. v. United States*
4   *Department of Energy*, 310 F. Supp.2d 271, 295 (D.D.C. 2004), *reversed in part on other*
5   *grounds*, 412 F.3d 125 (D.C. Cir. 2005).

6       OMB submits that these cases give insufficient attention to the language of FOIA itself,
7   which requires CBD to establish that "***disclosure of the information*** is in the public interest
8   because it is likely to contribute significantly to public understanding of the operations or
9   activities of the government" and thus the focus of the inquiry should be on what information
10  would be disclosed and thus it is highly relevant if a request will not lead to the disclosure of
11  information because of well-established privileges.

12      A particularly good example is *Van Fripp v. Parks*, Civ. No. 97-159, 2000 U.S. Dist.
13  LEXIS 20158 (D.D.C. March 16, 2000), a case in which a prisoner sought to obtain information
14  contained in the Inmate Trust and Welfare Fund ("ITWF") from the Bureau of Prisons ("BOP")
15  and sought a full fee waiver. The plaintiff sought the records and charged misappropriation of
16  the ITWF funds. The court called that request a "fishing expedition" and that in the "absence of
17  independent evidence of misappropriation" plaintiff's request "is too ephemeral to compel the
18  public to pay for his request." *Id.* at *16-17. Furthermore, and particularly on point, the court
19  noted that due to privacy interests plaintiff would only be able to get ITWF information about
20  himself and not about other inmates and thus plaintiff could not demonstrate an entitlement to a
21  fee waiver in light of the limited amount of information that would actually be disclosed. *Id.* at
22  *17-18.

23      OMB submits that the unique role it plays among federal agencies – as a deliberative
24  agency which provides advise to the President about proposed regulations – makes this the "rare
25  case" in which it is proper for an agency to decline to grant a fee waiver in light of the privileged
26  nature of the material likely to be found upon a search for responsive documents.

27      That is particularly true, here, since OMB did not, and could not, have issued the
28  regulation in question. As OMB explained in its denial of CBD's fee request, OMB relied on its

1  "experience in responding to FOIA requests seeking similar types of deliberative materials" to

2  make the judgment that a fee waiver was not appropriate in light of the privileged nature of what

3  would be found in a search. *See* Morrall Decl., Exh. 6 at p. 3. In fact, at the time CBD's fee

4  waiver request was under consideration OMB was in the process of litigating a case in which

5  California's Attorney General sought a subset of the documents at issue in CBD's FOIA request.

6  That case, *People of the State of California ex rel. Edmund G. Brown, Attorney General of the*

7  *State of California v. NHTSA et al.*, Case No. 06-2654), ended on or about June 13, 2007 after

8  Judge Conti entered judgment for OMB following the Court's grant of OMB's motion for

9  summary judgment. Prior to sending the June 12, 2007 letter denying CBD's appeal of the

10  denial of its fee waiver request, OMB reviewed those documents and determined that the

11  documents in question contained internal inter and intra-governmental predecisional

12  deliberations leading up to various decisions related to the issuance of the NPRM. *See* Morrall

13  Decl., ¶ 8.

14  Even a cursory review of the deliberative process privilege underscores that it would

15  apply to most of the documents sought by CBD, highlighting a reason for denying CBD's fee

16  waiver request. The purpose of the privilege is to "prevent injury to the quality of agency

17  decisions." *National Labor Rel. Bd. v. Sears, Robuck & Co.*, 421 U.S. 132, 149, 154 (1975).

18  Specifically, the deliberative process privilege serves to assure that agency staff can freely opine

19  on proposed policies without fear of public criticism, and to prevent the revelation of preliminary

20  views that do not reflect the agency's ultimate position. *Coastal States Gas Corp. v. Department*

21  *of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "By maintaining the confidentiality of the give-

22  and-take that occurs among agency members in the formulation of policy," the privilege

23  "encourages frank and open discussion of ideas, and hence, improves the decisionmaking

24  process." *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988).

25  To fall within the deliberative process privilege, a document must be both

26  "predecisional" and "deliberative." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th

27  Cir. 2002). A document is "deliberative" if it is "a direct part of the deliberative process" in that

28  it "makes recommendation or expresses opinions on legal or policy matters." *Vaughn v. Rosen*,

1  523 F.2d 11136, 1143-44 (D.C. Cir. 1975). It is "predecisional" if it was generated before the

2  adoption of an agency policy, *National Wildlife Fed'n*, 861 F.2d at 1117, and was prepared "to

3  assist an agency decisionmaker in arriving at his decision." *Maricopa Audubon Soc'y v. U.S.*

4  *Forest Serv.*, 108 F.3d 1089, 1093-94 (9th Cir. 1997).

5       Following these standards, courts have held that the deliberative process privilege covers

6  "all 'recommendations, draft documents, proposals, suggestions, and other subjective documents

7  which reflect the personal opinions of the writer rather than the policy of the agency." *National*

8  *Wildlife Fed'n*, 861 F.2d at 1118-19. Furthermore, the privilege shields not only deliberative

9  communications, but also information that would reveal the agency's deliberative process itself.

10  *Id.* at 1119.

11       CBD's FOIA request plainly seeks documents that, almost by definition, are protected

12  from disclosure under the deliberative process privilege. The FOIA request seeks "all

13  documents relating to the *development* of the Final Rule" . . . including "communications among

14  staff and others that were created during the *development* of the Final Rule and the Proposed

15  Rule." Morrall Decl., Exh. 1 at p. 1 (emphasis added). CBD further specifies that its request

16  "includes but is not limited to e-mail exchanges or other correspondence among agency staff and

17  others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting

18  notes, etc." *Id.* Virtually every document fitting this description would be withheld from

19  disclosure under the deliberative process privilege.

20  **E.    NHTSA, the Rulemaking Agency, Has Disclosed Information About its**
21  **Rulemaking So Further Disclosure From OMB Would Not**
    **"Contribute Significantly to Public Understanding."**

22       As explained above, it was NHTSA, not OMB, that issued the proposed and final rules

23  for the rulemaking at issue in CBD's FOIA request. The DOT and NHTSA have already made

24  available to the public the regulatory dockets for the rulemaking; No. 2005-22223 for the

25  proposed rule and 2006-243090 for the final rule. *See* Morrall Decl., Exh. 6 at p. 2. The

26  proposed rule (comprising 53 Federal Register pages) and final rule (comprising 49 Federal

27  Register pages) obviously provide the best explanation of NHTSA's decision-making in this

28  rulemaking. In addition, the regulatory docket includes copies of the "over 45,000 individual

1    submissions to the rulemaking docket" that NHTSA received "prior to the close of the comment

2    period, including ones from vehicle manufacturers and associations, environmental and

3    consumer advocacy groups, members of Congress and private individuals." *See* 71 Fed. Reg.

4    17577.

5         Vast amounts of material about the proposed and final rules are part of the public docket

6    and available from NHTSA and DOT. Logic dictates that nothing further from OMB could add

7    to the existing record about the reasons for the rulemaking. First, NHTSA's rulemaking

8    obviously could not have been based on anything that OMB did not share with NHTSA.

9    Second, anything that OMB did share with NHTSA would have been subject to disclosure (or

10   properly withheld) during the course of CBD's FOIA request to NHTSA and the DOT. After all,

11   CBD's FOIA request to OMB was also made to NHTSA and DOT at the same time. See

12   Morrall Decl, Exh. 1.

13        Ultimately, anything that might be obtained from OMB through the FOIA request would

14   either be something already in the public domain or patently subject to exclusion from FOIA

15   pursuant to the deliberative process privilege or other privileges. OMB should not be required to

16   give CBD a fee waiver so that it can burden the agency with an exercise that would not

17   "contribute significantly to public understanding" of anything regarding the proposed or final

18   rules.

19        Where, as here, there has been so much public disclosure that further disclosures would

20   not significantly contribute to public understanding, a fee waiver request is properly denied.

21   See, e.g., *VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 61 (D.D.C. 2002)

22   (concluding that plaintiff had not shown how requested documents would give public greater

23   understanding of agency policy than was already available; denial of fee waiver request affirmed

24   in grant of summary judgment to defendant); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815

25   (2d Cir. 1994) ("where records are readily available from other sources . . . further disclosure by

26   the agency will not significantly contribute to public understanding").

27        CBD contends in its motion that OMB cannot rely on the prior public disclosure of the

28   requested information because, CBD says, "OMB did not provide any explanation of where in

1  the public domain the information requested resides." CBD Mem. at 17:19-28 (and citing

2  cases). To the contrary, OMB has been quite clear that information about NHTSA's rulemaking

3  can be obtained from NHTSA and DOT and pointed out where public documents could be found

4  about the rulemaking. *See* Morrall Decl., Exh. 6 (6/12/07 OMB letter) at 2-4. And, again, CBD

5  had enough information to prevail in *Center for Biological Diversity v. National Highway*

6  *Traffic Safety Admin*, 508 F.3d 508 (9th Cir. 2007) so it is hard to see what additional information

7  that would "contribute significantly to public understanding" could emerge from the FOIA

8  request submitted to OMB.

9   **F.    CBD's Requested Relief is Inappropriate Because OMB Has Not Begun to
       Process CBD's Exceedingly Broad FOIA Request.**

10

11  CBD's motion asks for a "permanent injunction order Defendant to . . . timely produce

12  the requested documents." CBD Memo. at 1:26-27. In the proposed order submitted with its

13  motion CBD asks that OMB be required to "provide documents responsive to Plaintiffs [sic]

14  request by March 25, 2008." CBD Prop. Order at 2:4-5.

15  If this Court decides to grant CBD relief on its request for a full fee waiver, then the

16  Court should give OMB adequate time to process CBD's FOIA request. OMB has had no

17  obligation to process CBD's FOIA request and will have no such obligation unless and until this

18  Court resolves the fee waiver dispute. *See* 5 C.F.R. §1303.60(d)(1) (OMB fee regulation

19  providing that OMB may require advance payment "before work is commenced . . . on a

20  request" where OMB estimates that charges will exceed $250). *See also, e.g., Irons v. FBI*, 571

21  F. Supp. 1241, 1243 (D. Mass. 1983) (holding similar DOJ regulation valid: government "does

22  not want to expend the effort to conduct a search for documents until it has received some

23  assurance that it will be reimbursed for the effort"), *rev'd on other grounds*, 811 F.2d 681 (1[st]

24  Cir. 1987); *Pollack v. Dep't of Justice*, 49 F.3d 115, 120 (4th Cir. 1995) (DOJ "had the authority

25  to cease processing [the requester's] request" after he failed to make advance payment or

26  promise to pay). OMB advised CBD that it would not be processing CBD's FOIA request in

27  light of the unresolved fee waiver issue by letter in June 2007. *See* Augustine Decl., Exh. K

28  (6/12/07 OMB letter) at p. 5 ("Please note that your FOIA request will not be processed by OMB

1  until the advance payment is made or the fee issue is otherwise resolved.").

2       CBD is thus in no position to complain about any delays in processing its request because

3  those delays could have been avoided had CBD been willing to narrow its request or otherwise

4  resolve its fee waiver request through negotiation with OMB. *See* Morrall Decl., Exh. 2

5  (10/12/06 OMB letter) (stating that CBD's FOIA request was "overly broad" and inviting CBD

6  to narrow its request). CBD refused to narrow its FOIA request or otherwise negotiate with

7  OMB about its fee waiver request. *See id.*, Exh. 3 (11/7/06 CBD "Freedom of Information Act

8  Appeal"). CBD's refusal to narrow its FOIA request and/or negotiate with OMB has continued

9  to the present time.

10       Moreover, CBD's request is inconsistent with the parties Joint Case Management

11  Conference Statement (Docket No. 15, filed 12/31/07) which states on page 4 at item "4.

12  Motions": "After the fee waiver issue has been resolved the parties anticipate filing cross-

13  motions for summary judgment on the issue of whether OMB is required to produce any

14  documents to CBD pursuant to the FOIA request at issue." That process, namely cross-motions

15  for summary judgment following the preparation of a *Vaughn* index, is precisely the process that

16  has been followed in the two cases in this District involving the same NHTSA CAFE final and

17  proposed rule as are at issue in this case.

18       In *People of the State of California v. EPA et al.*, Case No. 07-2055 JSW, OMB has

19  produced a *Vaughn* index regarding documents withheld by OMB on various grounds, all of

20  which would appear to fall within the scope of CBD's FOIA request at issue in this case. In

21  addition, OMB prevailed in a FOIA case brought by the State of California regarding the

22  proposed rule at issue in this case. *People of the State of California v. OMB et al.*, 06-2654 SC.

23  Judgement was entered in that case on June 13, 2007 following cross-motions for summary

24  judgment. Judge Conti has already ruled on the propriety of OMB's withholding of certain

25  documents that fall within the scope of CBD's FOIA request.

26       CBD's request for a production of documents by March 25, 2008 is an impossibly short

27  deadline given the scope of CBD's underlying FOIA request. At or prior to the hearing on the

28  cross-motions OMB will propose a schedule for the remainder of this case in light of the Court's

previously stated intention to hold a status conference following argument on the cross-motions. The case would be over, of course, if the Court were to deny CBD's motion and CBD then declined to pay for the records it seeks.

## IV.  CONCLUSION

For all of the foregoing reasons, OMB requests that the Court deny CBD's motion for summary adjudication and hold that CBD is required to pay or agree to pay OMB's search and copy costs before OMB is required to begin to process CBD's FOIA request. In short, this Court should grant OMB's motion for summary adjudication.

Dated: February 8, 2008                     Respectfully submitted,

                                            JOSEPH P. RUSSONIELLO
                                            United States Attorney


                                    By:     _____/s/_____
                                            Michael T. Pyle
                                            Assistant U.S. Attorney

DEFENDANT'S OPP. TO PLTF'S MOTION FOR SUMM. ADJUD. OF FEE WAIVER ISSUE
C 07-4997 MHP                          18