UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>    Plaintiff,<br><br>  v.<br><br>OFFICE OF MANAGEMENT AND BUDGET,<br><br>    Defendant.<br>_____/ | No. C 07-4997 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Cross-Motions for Summary Judgment** |

      Plaintiff Center for Biological Diversity ("CBD") filed the present action against the Office of Management & Budget ("OMB"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552. Now before the court are the parties' cross-motions for summary judgment concerning the requested information and documents produced by the OMB. The court has considered the parties' arguments fully, and for the reasons set for below, the court rules as follows.

BACKGROUND[1]

      CBD is a non-profit, public-interest organization that works to protect endangered species and their habitats. CBD has a related interest in improving the regulation of vehicle emissions to help combat global warming and to protect wildlife. As part of its conservation and education

efforts, CBD produces written reports and policy documents, submits comments on agency proposals, and disseminates information to the public about air quality and climate change.

The OMB, an office within the Executive Office of the President ("EOP"), assists the President in the preparation of the federal budget and in managing its execution by federal agencies. Neyland Dec.[2] ¶¶ 1, 3. In accordance with Executive Order No. 12866, the OMB's Office of Information and Regulatory Affairs ("OIRA") advises the President about the promulgation of significant regulations issued by Executive Branch agencies. Id. ¶ 5. Specifically, OIRA consults with federal agencies to determine a draft regulation's potential costs and benefits on society. Id. OIRA carries out these consultations before a draft regulation is issued publicly in the Federal Register as either an Advanced Notice of Proposed Rulemaking, a Notice of Proposed Rulemaking or a Final Rule. Id. ¶ 6.

Between 2003 and 2006, OIRA reviewed drafts of rulemaking notices issued by National Highway Traffic Safety Administration ("NHTSA") to revise its Corporate Average Fuel Efficiency ("CAFÉ") standards for light trucks. Id. at 8. During this process, OIRA consulted with various agencies that had an interest in the CAFÉ standards to provide the NHTSA with inter-agency comment. Id. The Final Rule setting the CAFÉ standards, entitled "Average Fuel Economy Standards for Light Trucks, Model Years 2008–2011," 71 Fed. Reg. 17,566 (codified at 49 C.F.R. pt. 533), was issued by the NHTSA on April 6, 2006.[3]

On August 29, 2006, CBD submitted a FOIA request to the OMB as well as the Department of Transportation and the NHTSA. The FOIA request sought:

> All documents relating to the development of the Final Rule setting average fuel economy standards for light trucks for model years 2008–2011 (71 Fed. Reg. 17566–17679, "rulemaking") that are not already posted on the internet in Docket Nos. 2005–22223 and 2006–24309. This request includes communications among staff and with others that were created during the development of the Final Rule and the Proposed Rule (70 Fed.Reg. 51414–51466). This request includes but is not limited to e-mail exchanges or other correspondence among agency staff and between agency staff and others, draft documents, internal reviews and critiques, inter-agency reviews, agency meeting notes, etc.

CBD's letter also included a fee waiver request pursuant to FOIA's public interest exception, 5 U.S.C. section 552(a)(4)(A)(iii). In letters exchanged between October 2006 and July 2007, CBD and the OMB disagreed over the scope of CBD's document request as well as the OMB's continued

rejection of the fee waiver.  CBD ultimately filed suit against the OMB on September 27, 2007, seeking judicial grant of the fee waiver and production of the requested documents.  In a March 12, 2008 order, this court ordered a full fee waiver for costs associated with CBD's FOIA request.  See CBD v. OMB, 546 F. Supp. 2d 722 (N.D. Cal. 2008).

Following the court's ruling, the OMB initiated a search of two database systems of the Executive Office of the President, called the ARMS and EXCHANGE systems.  Neyland Dec. ¶ 16.  The ARMS system search contains e-mails from the first half of the requested time period (September 1, 2003 to July 30, 2004), while the EXCHANGE system search contains e-mails from the latter half (August 1, 2004 to August 29, 2006).  Id.  During July and August 2008, the OMB provided CBD with documents and draft Vaughn indices[4] based on the ARMS system search.  Id. ¶ 18, Exh. 8.  On September 15, 2008, the OMB submitted a final Vaughn index to CBD, identifying the documents and portions of documents from the September 1, 2003 to July 30, 2004 period that the OMB has withheld under FOIA exemption privileges.  Id. ¶ 19.  Only the production of documents based on the ARMS system search is the subject of this partial summary judgment motion, as the documents from the EXCHANGE system search have not yet been released.

Of the approximately 838 responsive documents identified in the ARMS search and described in the Vaughn index, approximately 207 documents were released to CBD in full and approximately 222 documents were partially released after redaction.  Theroux Dec. ¶ 7.  The OMB withholds the redacted portions of the 222 partially released documents along with 409 documents in their entirety under privileges it asserts fit within FOIA Exemption 5, 5 U.S.C. section 552(b)(5), which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  Id. ¶¶ 6, 7.  Specifically, of the approximately 409 documents withheld in their entirety, all are being withheld under the deliberate process privilege, approximately 63 are being withheld under the presidential communication privilege, and approximately 12 are being withheld under the attorney-client privilege.  Id. ¶ 7.  The redacted portions of the 222 partially released documents are withheld under the deliberative process privilege.  Id.

3

At issue now is the validity of the OMB's exemption claims described in the Vaughn index and in declarations by Kevin F. Neyland, Deputy Administrator of OIRA, and Richard P. Theroux, an OIRA economist. Plaintiff has moved for partial summary judgment and for *in camera* review or immediate release of the withheld documents, and defendant has cross-moved for summary judgment. While the OMB maintains the propriety of its document withholding, CBD challenges the sufficiency of the OMB's declarations and the non-disclosure privileges invoked by the OMB under FOIA Exemption 5. See 5 U.S.C. section 552(b)(5).

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. In ruling on a motion for summary judgment, the court may not make credibility determinations, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

Summary judgment is the procedural vehicle by which most FOIA cases are resolved. Harrison v. Executive Office for U.S. Attorneys, 377 F. Supp. 2d 141, 145 (D.D.C. 2005); Miscaviage v. IRS, 2 F.3d 366, 368 (11th Cir. 1993). As is the case here, "there is rarely any factual dispute . . . only a legal dispute over how the law is to be applied to the documents at issue." Schiffer v. FBI, 78 F.3d 1405, 1409 (9th Cir. 1996). Ultimately, the threshold issue on a motion for summary judgment is whether the agency's explanations are "full and specific enough to afford the

4

FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." See Wiener v. FBI, 943 F.2d 972, 977 (9th Cir. 1991), citing King v. U.S. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987).

DISCUSSION

FOIA was enacted to create a "judicially enforceable public right" to secure government documents. EPA v. Mink, 410 U.S. 73, 80 (1973). Virtually every document of a federal agency is available to the public unless it falls within one of the Act's nine enumerated exemptions. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975) (referring to 5 U.S.C. § 552(b)(1)-(9)). Given FOIA's goal of broad disclosure, the exemptions are "narrowly construed." FBI v. Abramson, 456 U.S. 615, 636 (1982); Assembly of the State of Cal. v. US Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992) (the exemptions are to be "interpreted narrowly"). Moreover, if only a portion of a record is exempt from disclosure, the agency must disclose the non-exempt portion if it is "reasonably segregable." 5 U.S.C. § 552(b).

The district court reviews *de novo* the agency's response to a FOIA request, and the agency bears the burden of showing that a FOIA exemption applies to any withheld documents. 5 U.S.C. § 552(a)(4)(B). The agency may meet its burden by submitting affidavits, declarations, and Vaughn indices "identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." Wiener, 943 F.2d at 977; see also Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997); King, 830 F.2d at 219. Summary judgment may be granted solely based on these materials when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

"Specificity is the defining requirement" of these explanatory materials. Wiener, 943 F.2d at 979 (citing King, 830 F.2d at 219). While the agency's justifications need not be so detailed as to

5

1  "[thwart] the exemption's purpose," summary judgment may not be granted if they are "conclusory,
2  merely reciting statutory language, or . . . too vague or sweeping." King, 830 F.2d at 224, 219; see
3  also Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 744 (9th Cir. 1979).,
4  611 F.2d 738, 742 (9th Cir. 1980).  Furthermore, declarations are accorded "a presumption of good
5  faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability
6  of other documents.'" SafeCard Servs., Inc. v. Sec. and Exchange Comm'n, 926 F.2d 1197, 1200
7  (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).
8  At the same time, "the underlying facts and the inferences to be drawn from them are construed in
9  the light most favorable to the FOIA requester." Mead Data Cent. v. Dep't of the Air Force, 566
10 F.2d 242, 260 (D.C. Cir. 1977).
11     Defendant has provided the Neyland and Theroux declarations and a Vaughn index to
12 support its withholding of documents under FOIA's Exemption 5.  5 U.S.C. § 552(b)(5).  Plaintiff
13 argues that these documents inadequately describe both the contents of the withheld documents and
14 defendant's reasons for non-disclosure.  The court considers the statutory scope of Exemption 5, the
15 specific privileges claimed by defendant, and the sufficiency of the explanations for how disclosure
16 of particular documents would damage the interest protected by the claimed privileges.
17 I.     Exemption 5
18     As previously described, FOIA Exemption 5 permits withholding of "inter-agency or
19 intra-agency memoranda or letters which would not be available by law to a party other than an
20 agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The Supreme Court has interpreted this
21 provision as "incorporat [ing] the privileges which the Government enjoys under the relevant
22 statutory and case law in the pretrial discovery context." Renegotiation Bd. v. Grumman Aircraft
23 Engineering Corp., 421 U.S. 168, 184 (1975).  Exemption 5 "exempt[s] those documents, and only
24 those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck &
25 Co., 421 U.S. 132, 149 (1975).  Specifically, Exemption 5 has been interpreted to incorporate, *inter*
26 *alia*, the attorney-client privilege, the deliberative process privilege, and the presidential
27 communications privilege, all of which are claimed here by defendant.  See Baker & Hostetler LLP
28 v.  U.S. Dep't of Commerce, 473  F.3d 312, 321 (D.C. Cir. 2006).

6

Importantly, communications containing purely factual material are not typically within the purview of Exemption 5. Julian v. U.S. Dept. of Justice, 806 F.2d 1411, 1419 (9th Cir. 1986), aff'd, 486 U.S. 1 (1988). "Exemption 5 . . . requires different treatment for materials reflecting deliberative or policy making processes on the one hand, and purely factual, investigative matters on the other." EPA v. Mink, 410 U.S. 73, 89 (1973). Because the purpose of Exemption 5 is to make available to the general public those internal documents from agency files which would be disclosed to a civil litigant, "[t]he test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." U.S. Dept. of Justice v. Julian, 486 U.S. 1, 12 (1988), quoting FTC v. Grolier Inc., 462 U.S. 19, 26 (1983).

Because plaintiff does not challenge the documents withheld under the attorney-client privilege, the court will address the adequacy of the OMB declarations only in connection with the deliberative process privilege and presidential communications privilege.[5]

### A. Deliberative Process Privilege

Defendant asserts the deliberative process privilege for all withheld documents. Theroux Dec. ¶ 6; Neyland Dec. ¶ 25. This privilege permits "the withholding of all papers which reflect the agency's group thinking in the process of working out its policy." Sears, Roebuck, 421 U.S. at 151-153. The purpose of the deliberative process privilege is to ensure the quality of agency decisions by "[allowing] agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." Assembly of the State of Cal., 968 F.2d at 920; see also Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (noting "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news").

In general, the deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Klamath Water Users, 532 U.S. at 8 (internal quotation and citation omitted). Each document withheld under the privilege must be both "predecisional" and "deliberative." National Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988);

7

Maricopa Audubon Soc'y, 108 F.3d at 1093; Sears, Roebuck, 421 U.S. at 151-52; Assembly of the State of Cal., 968 F.2d at 920. A document is "predecisional" if it was "prepared in order to assist an agency decision maker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Maricopa Audubon Soc'y, 108 F.3d at 1093 (internal quotation and citation omitted). A predecisional document is "deliberative" if its disclosure "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id.; see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (describing a deliberative document as one that reflects the "give-and-take of the consultative process"); Vaughn v. Rosen (Vaughn II), 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) (stating that for a document to be deliberative, it must be a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters").

The deliberative process privilege does not apply to "an agency's final opinions, statements of policy and interpretations definitively adopted by the agency, and any other documents having 'the force and effect of law.'" National Wildlife, 861 F.2d at 1122 (citation omitted). The privilege also does not protect "material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997); see also Paisley v. CIA, 712 F.2d 686, 698 (D.C. Cir. 1983) (finding "[f]actual material that does not reveal the deliberative process is not protected by this exemption"). This latter requirement harmonizes with FOIA's segregability requirement. See 5 U.S.C. § 552(b) (requiring "[a]ny reasonably segregable portion of a record" to be provided "after deletion of the portions which are exempt").

Plaintiff contests the adequacy of the OMB declarations to establish the deliberative process privilege, arguing that they are insufficiently detailed and include only conclusory descriptions of the documents in question and boilerplate assertions of the deliberative nature of the documents.

8

The court begins its analysis by reminding the OMB that it bears the burden to set forth and justify the privilege warranting a FOIA exemption from disclosure, on a document by document basis. The court thus turns to defendant's Vaughn index to consider its adequacy in so doing.

### (i) Adequacy of the Vaughn Index

Defendant's Vaughn index is attached as Exhibit 1 to the Theroux declaration. The tabular index provides the following about each withheld document: (a) general information such as the document number assigned by the OMB, document type (all are e-mails), date of document, author/sender, and recipient; (b) description of the document; and (c) indication of whether the document is partially or entirely withheld. Within the document description is a brief summary of the document's contents followed by a general explanation of why the document should be withheld.

To provide an example, reproduced below is the description for document number 551, an e-mail dated January 8, 2004 from Richard Theroux (OMB) to Dominic Mancini (OMB):

> In this one-page email, Dr. Theroux offers his thoughts and opinions on CAFÉ standards. This document is pre-decisional because it was created as part of the process leading up to NHTSA's final rule dated April 6, 2006. This document is deliberative because it contains internal staff opinions and discussions, reflects discussions concerning issues relating to NHTSA's [Advanced Notice of Proposed Rulemaking], Proposed Rule or Final Rule, and the author lacked decision-making authority. Release of this document would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. § 552(b)(5). The information contained in this document contains facts and deliberative opinions which are intertwined to the extent that disclosure would reveal government employee's [sic] opinions and recommendations.

Theroux Dec., Exh. 1.

Only the initial one- or two-sentence document summary is unique to each document description and typically characterizes the contents as the author's "opinions and thoughts," "comments and observations," or "reflections," on drafts, data, and logistical issues related to the CAFÉ rulemaking process. The remaining portions—including statements about the predecisional and deliberative nature of the document, the harms that may attend disclosure, assertions of additional privileges (i.e., the attorney-client privilege, the deliberative process privilege, or the presidential communications privilege), and reasons for non-segregability (for documents withheld in their entirety)—are replicated verbatim throughout the index.

9

1    Defendant's Vaughn index bears a resemblance to the approach rejected by the Ninth Circuit
2 in Wiener.  There, the FBI's indices assigned to documents various numerical codes that
3 corresponded with (1) an exemption (e.g., "(b)(1)" referenced FOIA Exemption 1), and (2) a general
4 category of information within which the withheld information allegedly fell (e.g., "c3" referred to
5 "detailed information pertaining to/or provided by an intelligence source").  943 F.2d at 978.
6 Accompanying declarations then used "boilerplate explanations" to state why each type of document
7 (such as a "(b)(1)c3" document) should be withheld.  Id. at 978-79.  Any documents that were of
8 the same type would be given the same explanation for withholding.  Id. at 978.  The Ninth Circuit
9 ruled that the FBI had made "no effort . . . to tailor the explanation to the specific document
10 withheld" and that the indices therefore lacked the level of specificity required by an agency's
11 declarations.  Id. at 978-79.

12    The Vaughn index in this action likewise relies upon boilerplate explanations to claim
13 exemption and does not provide a single particularized claim of exemption to any document.
14 Instead of assigning numbers to its various boilerplate statements (such as those describing
15 documents as "deliberative" and describing the harm that would result from nondisclosure) as in
16 Wiener, however, defendant OMB provides the full boilerplate texts; creating lengthy but practically
17 meaningless document descriptions.  Defendant's index, then, while distinguishable in form, is
18 functionally similar to the one rejected in Wiener.  This distinction is without a difference in law or
19 fact.  Accordingly, the court finds that defendant's overly simplistic and conclusory summaries,
20 coupled with boilerplate explanations for exemption, do not provide sufficient facts for the court to
21 conduct a *de novo* review of defendant's withholding under the deliberative process privilege.

22    A particularly egregious example of the index's inadequacy to establish the deliberative
23 process privilege is the entry for document number 12, which is described as containing
24 "deliberative comments and opinions."  Combined with the stock language that the document is
25 "deliberative because it contains . . . opinions," the entry creates a circular argument to claim the
26 privilege and is completely unacceptable.  While other document summaries do not contain such
27 blatantly conclusory descriptions, most are similarly devoid of substantive material that would allow
28 CBD to advocate for the release of documents and the court to review the withholdings.

10

1    The inconsistent disclosure of documents with virtually identical descriptions further
2 exemplifies the deficient nature of the index. For example, the description for partially withheld
3 document number 109 states, "In this email, Dr. Graham offers his thoughts and opinions relating to
4 CAFÉ reform." This summary is essentially identical to that of document number 551, reproduced
5 above, which is being withheld in its entirety ("In this one-page email, Dr. Theroux offers his
6 thoughts and opinions on CAFÉ standards."). The index entries for both documents are thus
7 substantially similar, save for the conclusory claim of non-segregability added in document 551's
8 description ("this document contains facts and deliberative opinions which are intertwined"). No
9 further effort is made to tailor the claim of non-segregability to the contents of document 551, as is
10 the case for all other documents withheld in their entirety. The court finds this too thin a reed to
11 support an exemption from disclosure. See Wiener, 943 F.2d at 978-79. Moreover, for document
12 109 and all other partially released documents, there is no information that specifically distinguishes
13 the nature of the redacted versus the released portions of the documents; it is simply stated that a
14 portion of the documents has been released.

15    As a result, CBD and the court are left with many unanswered questions as to both the
16 deliberative nature and segregability of the contents of the documents. For instance, what concerning
17 the broad category of CAFÉ rulemaking is being discussed in each e-mail and what deliberative
18 process is involved? Indicating that an e-mail includes "thoughts and opinions" that relate to the
19 broad topic of CAFÉ standards does little more than ensure that the documents are somehow
20 responsive to the FOIA request. In addition, what types of facts are being intertwined with opinion
21 in document 109? Scientific? Regulatory? There is no meaningful way of knowing what it is about
22 Dr. Graham and Dr. Theroux's "thoughts and opinions" that makes one document, but not another,
23 eligible for partial release. Indeed, there is no way of knowing what makes one *portion* of Dr.
24 Graham's "thoughts and opinions," but not others, eligible for partial release. More detailed
25 descriptions of the documents along with "particularized explanations" for their withholding would
26 have illuminated such differences for both CBD and the court. Id. at 977.

27    The court finds that some documents within defendant's Vaughn index likely qualify for
28 exemption, but do not as of yet adequately claim it. For example, document number 328 has been

11

1    partially released and is described as a "one-page email, with attachment, [in which] Dr. Theroux
2    provides Dr. Graham with a revised copy of the CAFÉ [Advanced Notice of Proposed Rulemaking],
3    which includes his redline comments."  This likely qualifies for the deliberative process privilege
4    which protects documents that "would inaccurately reflect or prematurely disclose the views of the
5    agency, suggesting as agency position that which is as yet only a personal position."  Coastal States,
6    617 F.2d at 866.  However, this description is deficient in a different respect—it still fails to describe
7    the non-segregable portion of the document.  Like all of the other documents in the index, there is no
8    specific mention outside of the boilerplate language of why one portion has been released but others
9    have not.

             (ii)     Segregable Information

11   As already discussed, the Vaughn index insufficiently discusses segregability and this is of
12   particular concern with regard to e-mails that purportedly contain some kind of factual data.  FOIA
13   mandates that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of
14   the portions which are exempt."  5 U.S.C. § 552(b).  Moreover, factual material is not protected
15   under the deliberative process privilege "unless the material is so inextricably intertwined with the
16   deliberative sections of documents that its disclosure would inevitably reveal the government's
17   deliberations."  In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).  Defendant simply states in
18   its index entries that facts and opinions are "intertwined" without providing any particularized
19   information to so prove.

20   Segregability is of particular concern to the plaintiff with regard to e-mails containing data.
21   Reasonably segregable facts and data are exactly what plaintiff seeks—and is entitled to—in its
22   FOIA request.  See Plf.'s Memo at 2 (noting that it seeks "to know what facts about, *inter alia*,
23   feasible technologies to increase fuel efficiency, industry cost factors, vehicle safety standards,
24   climate change and the costs of carbon emissions the OMB had before it when it participated in
25   setting the nation's fuel efficiency standards"); see also In re Sealed Case, 121 F.3d at 737.  Several
26   withheld e-mails refer to thoughts, comments, analysis, perspectives, and reflections on "standards
27   and analysis used for CAFÉ data" (document 103), "CAFÉ reform data" (document 157), "light
28   truck weights" (document 160), "CAFÉ statistical methods" (document 237), "EIA modeling"

12

1 (document 506), "fuel economy" (document 528), and "emissions standards" (document 561).
2 However, the descriptions for these documents only use boilerplate segregability language without a
3 "detailed justification" for the withholding of the portions of exempt records. This denies both CBD
4 the opportunity to argue for their release and the court the opportunity to consider the reasonableness
5 of the withholding. See Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 744
6 (9 Cir. 1979) (noting that district courts are generally required to make explicit findings concerning
7 the segregability of withheld documents).

8 The OMB also failed to document any inability on its part to parse the records, such that
9 incomplete segments of records would be rendered meaningless if disclosed. See, e.g., National Sec.
10 Archive Fund v. CIA, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (holding that no reasonably
11 segregable information exists if "non-exempt information would produce only incomplete,
12 fragmented, unintelligible sentences composed of isolated, meaningless words"). The court
13 recognizes that the process of segregating nonexempt information from exempt information, and
14 furnishing the nonexempt data to CBD, may be time consuming and expensive. The government
15 nonetheless bears the burden of justifying nondisclosure of any withheld records or segments of
16 records. NLRB v. Robbins Tire and Rubber Co., 437 U.S. 214, 224 (1978). Without sufficient
17 additional facts regarding segregability, the court cannot conclude that the OMB has met its burden
18 under FOIA to disclose reasonably segregable portions of the records.

19 (iii)   Adequacy of the Theroux and Neyland Declarations

20 The OMB also submits the Theroux and Neyland declarations in support of its document
21 withholding. Both Theroux and Neyland personally reviewed each of the documents in the Vaughn
22 index. Neyland Dec. ¶¶ 21, 23. Theroux held primary responsibility for preparing the Vaughn
23 index. Theroux Dec. ¶ 1. The Theroux declaration repeats or rephrases the hackneyed language
24 found in all of the index entries and adds nothing new. See ¶ 5. For example, Theroux states that
25 the documents at issue are deliberative because they "involved an amalgamation of factual
26 information closely related to opinions and policy recommendations that were necessarily
27 intertwined with policymaking and regulatory oversight processes." ¶ 5. This explanation differs
28 little from the one throughout the Vaughn index that the withheld documents" [contain] facts and

13

deliberative opinions which are intertwined to the extent that disclosure would reveal government employee's [sic] opinions and recommendations."

The Neyland declaration is similarly inadequate, replicating only in lengthier language the same kinds of boilerplate assertions found in the Vaughn index. ¶¶ 25-27, 32-41. One notable portion of the declaration is a section in which Neyland furthers a novel argument for deliberativeness of the withheld documents. He writes:

> [T]he recitation of specific facts in the withheld materials itself reflects the subjective judgment of the document's author as to which particular facts are sufficiently significant to warrant mention. In other words, the author's decision to take notes on particular points, or to bring particular points to the attention of an e-mail recipient, reflects the author's judgment as to their relative importance and (in the case of e-mail) the implicit recommendation that the reader pay attention to them. Thus, the author's choice of which topics to mention, and how to summarize them, reflects the author's judgment as to the relative significance of the various matters under consideration in connection with the Government's deliberations regarding the [CAFÉ] regulation.

Neyland Dec. ¶ 26.

This argument is unpersuasive because its application would create a blanket deliberative process privilege for all of the documents ever produced by an agency. "Factual material contained in deliberative memoranda cannot be considered to be intertwined with legal or policy matters solely on the broad theory that the very choice of which facts to present necessarily reveals the writer's viewpoint." Playboy Enterprises, Inc. v. Department of Justice, 677 F.2d 931, 935 (D.C. Cir. 1982).

The court finds that the declarations fail to supplement the Vaughn index in a manner that would rectify the index's deficiencies in establishing the deliberative process privilege. The OMB declarations provide opinions devoid of facts in support of their claim of exemption. The OMB declarations lack the detail required by FOIA in that they fail to provide "a relatively detailed justification specifically identifying the reasons why a particular exemption is relevant and correlating these claims with the particular part of the withheld document to which they apply." King, 830 F.2d at 218-19. The court is unable to evaluate the validity of the withholdings under the deliberative process privilege because it has not been furnished with "sufficient information to do so in a meaningful fashion." Id. at 223.

B.  The Presidential Communications Privilege

14

1    Exemption 5 has been construed to incorporate the presidential communications privilege.
2 See Sears Roebuck, 421 U.S. at 149 n. 16 & 150; Judicial Watch, 365 F.3d at 1113. The President
3 of the United States "can invoke the privilege when asked to produce documents or other materials
4 that reflect presidential decision-making and deliberations and that the President believes should
5 remain confidential." In re Sealed Case, 121 F.3d at 744. Unlike the deliberative process privilege,
6 "the presidential communications privilege applies to documents in their entirety, and covers final
7 and post-decisional materials as well as pre-deliberative ones." Id. at 745.

8    The extension of this privilege is limited, however, to communications made by presidential
9 advisers and their staffs "in the course of preparing advice for the President." Id. at 752. Only
10 communications "close enough to the President to be revelatory of his deliberations or to pose a risk
11 to the candor of his advisers" are protected. Thus, "not every person who plays a role in the
12 development of presidential advice . . . can qualify for the privilege." Id. Specifically, in order to
13 maintain the presidential communications privilege, defendant must demonstrate that the withheld
14 communications were "authored or solicited and received by those members of an *immediate* White
15 House adviser's staff who have broad and significant responsibility for investigating and formulating
16 the advice to be given to the President on the particular matter to which the communications relate."
17 See id. (emphasis added); see also Judicial Watch, 365 F.3d at 1116.

18    The OMB withholds approximately 63 documents under the presidential communications
19 privilege. See Theroux Dec. ¶ 7. In the Vaughn index, the privilege is asserted by the statement:
20 "This document is also protected by the Presidential Communications privilege for the reasons set
21 forth in the declaration of Kevin Neyland." Id. at Exh. 1. Mirroring the language from In re Sealed
22 Case, the Neyland declaration states that these documents were "authored by or solicited and
23 received by the President's immediate advisers or their respective staff" and that "[these advisers
24 held broad and significant responsibilities for gathering information and formulating advice and
25 recommendations to the President on issues related to the CAFÉ rulemaking." Neyland Dec. ¶ 29;
26 In re Sealed Case, 121 F.3d at 752. The Neyland declaration further indicates that these documents
27 include:
28    a. internal communications between and among the President's immediate advisers, including those at OMB, and their respective staffs;

15

      b. communications consisting of updates on the status of the proposed CAFÉ rulemaking as well as deliberations, advice and recommendations, between and among EOP officials and the President's immediate advisers, including those at OMB, and their respective staffs;

      c. drafts of memoranda to the President and his immediate advisers as well as internal communications between and among EOP officials and the President's immediate advisers, including those at OMB, and their respective staffs.

Neyland Dec. ¶ 30.

      Plaintiff argues, and the court agrees, that the OMB has not met its burden of putting forth a sufficient showing to invoke the presidential communications privilege. Neither the Vaughn index nor the Neyland declaration makes clear whether the relevant communications were "authored or solicited and received" by the President's immediate advisers or their staff members. See In re Sealed Case, 121 F.3d at 752. While the Vaughn index lists the names and agency affiliations of the individuals who sent or received the documents at issue, it fails to provide the individuals' specific capacities or other indicators of proximity to the President or his key advisers. For example, the index entry for document number 122, labeling an e-mail's recipients as "EOP Officials," is particularly deficient because not all EOP officials qualify to claim the privilege. See Theroux Dec., Exh. 1.

      The Neyland declaration is similarly inadequate because it only provides conclusory statements that the communications involve the "President's immediate advisors, including those at OMB, and their respective staffs," without tying specific individuals from the index to those particular positions. See Neyland Dec. ¶¶ 29, 30. Moreover, there are only about 15 unique authors and recipients of the e-mails claimed to be protected under this privilege.[6] Surely it was well within the OMB's ability to provide more detailed information about these individuals and their capacities at the time of the documents' creation. Without such information, the court cannot extend the presidential communications privilege to all such individuals. The case law makes clear that the privilege cannot extend to "every person who plays a role in the development of presidential advice," or to "staff outside the White House in executive branch agencies." In re Sealed Case, 121 F.3d at 752; Judicial Watch, 365 F. 3d at 1114. Accordingly, the court finds that defendant has failed to meet its burden to maintain the presidential communications privilege.[7]

16

1    In so finding, the court reminds defendant that the presidential communications privilege is
2 to be narrowly construed. See In re Sealed Case at 752. FOIA includes any "establishment in the
3 executive branch of the Government (including the Executive Office of the President)" as being
4 subject to the Act. 5 U.S.C. § 552(f)(1). The OMB is an office within the Executive Office of the
5 President. Neyland Dec. ¶ 1. Moreover, the D.C. Circuit has found that the presidential
6 communications privilege "should not extend to staff outside the White House in executive branch
7 agencies." See In re Sealed Case at 752. see also Wolfe v. Dep't of Health & Human Servs., 815
8 F.2d 1527, 133 (D.C. Cir. 1987) (explicitly stating that "extension of the presidential privilege to the
9 OMB is unprecedented and unwarranted . . . [and] would create an unnecessary sequestering of
10 massive quantities of information from the public eye"), rev'd on other grounds, 839 F.2d 768 (D.C.
11 Cir. 1988). A conservative approach to applying the privilege has been deemed prudent because the
12 President obtains advice from "a broad array of executive officials" and "parts of the executive
13 branch which 'directly report[] to the President ha[ve] grown dramatically in the past few decades."
14 In re Sealed Case at 749 (internal citations omitted). Extending presidential privilege to the
15 communications of all such persons creates the undesirable risk that a vast array of executive branch
16 materials will become "sequester[ed] from public view." Id. at 749. The court refuses to support a
17 growing shroud of secrecy over the executive branch.

18 II.     *In Camera* Inspection

19    Plaintiff urges the court to conduct an *in camera* inspection of the withheld documents or to
20 order immediate release of the documents. FOIA authorizes *in camera* review of withheld
21 documents to determine whether the exceptions claimed were properly applied and whether all
22 potentially reasonably segregable material has been disclosed. 5 U.S.C. § 552(a)(4)(B). However,
23 as the Ninth Circuit has stated, *in camera* review of the withheld documents "is not an acceptable
24 substitute for an adequate Vaughn index." Wiener, 943 F.2d at 979. If anything, *in camera* review
25 "may supplement an adequate Vaughn index, but may not replace it." Wiener, 943 F.2d at 979; see
26 also Church of Scientology, 611 F.2d at 743 (finding that "the district court's inspection prerogative
27 is not a substitute for the government's burden of proof, and should not be resorted to lightly"). In
28 cases such as the instant action, where hundreds of documents are involved, "no trial court can

17

reasonably be expected to wade through a mass of exhibits *in camera*." Id.  Moreover, "where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case." Vaughn at 825.  Because the OMB has not yet produced an adequate Vaughn index, *in camera* review of the disputed documents is not appropriate.  The court finds that the more appropriate course of action is for the OMB to revise its Vaughn index and declarations as needed to support its exemption claims.

CONCLUSION

By stipulation of the parties, defendant is **GRANTED** partial summary judgment as to the documents withheld under the attorney-client privilege.

However, the court must partially **DENY** defendant's motion for summary judgment as to the documents withheld under the other two privileges.  The Vaughn index and declarations submitted by defendant are deficient in many respects.  The index and declarations identified each document withheld or redacted and the statutory exemption claimed, but failed to provide sufficiently particularized explanations of how disclosure of the particular document would damage the interest protected by the claimed exemption.  The court hereby orders defendant to produce a more particularized Vaughn index as to the remaining privileges consistent with this opinion, to provide the court with an adequate factual basis upon which it could conduct a *de novo* review of the defendant's withholding decisions.

The court does not conclude that the documents are not exempt as a matter of law, only that the agency has failed to supply the court with the minimal information necessary to make such a determination.  Therefore, plaintiff's motion for summary judgment is also **DENIED**.

This order explains why defendant's index and declarations are insufficient.  Given the number of extensions already granted to defendant to produce documents responsive to CBD's FOIA request,[8] the OMB is ordered to give the production of revised materials sufficient priority to ensure that they are submitted by **January 5, 2009**.  Further, the OMB is on notice that a failure to submit adequate revisions that provide the court with sufficiently particularized explanations of how

18

disclosure will damage the interest protected by the claimed privilege will be deemed a waiver of that privilege.

**IT IS SO ORDERED.**

Dated: 11/25/2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. All facts cited herein are taken from the complaint unless otherwise noted.

2. Citation to declarations refer to those submitted for purposes of the instant summary judgment motions unless otherwise noted.

3. In <u>CBD v. NHTSA</u>, 538 F.3d 1172 (9th Cir. 2007) eleven states, the District of Columbia, the City of New York, and four public interest organizations, including plaintiff CBD, successfully challenged the Final Rule. The Ninth Circuit found that Final Rule was "arbitrary and capricious, [and] contrary to the [Energy Policy and Conservation Act]." <u>Id.</u> at 1181–82. Following the court's order, the NHTSA proposed new CAFÉ standards for all passenger car and light truck model years 2011–2015 in May 2008 and a related draft environmental impact statement was issued in July 2008.

4. Under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a "Vaughn index," identifying each document withheld, the statutory exemption claims, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption. The Vaughn indexing requirement has been adopted by the Ninth Circuit. <u>See</u> <u>Bowen v. U.S. Food and Drug Admin.</u>, 925 F.2d 1225, 1227 (9th Cir. 1991).

5. Plaintiff also does not challenge, and the court therefore need not address, defendant's partial withholding of one document under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." Pls.' Memo at 6 n. 5.

6. The court has identified from the Vaughn index the unique authors and recipients of the 63 emails claimed to be protected by the presidential communications privilege as "Bryan Hannegan (CEQ)," "MaryAnne Calamas (OMB)," "John Graham (OMB)," "Edmond Toy (OMB)," "Allison Boyd (OPD)," "Veronica Stidvent (EOP)," "Richard Theroux (OMB)," "Elizabeth Vandersarl (OMB)," "Alexander Hunt (OMB)," "EOP Officials," "Kristen Silverberg (EOP)," "James Connaughton (CEQ)," "Joel Kaplan (OMB)," "Sara Frankfurt (OMB)," "John Burks (EOP)," and "Phil Cooney (CEQ)."

7. Unlike defendant, the court does not glean from plaintiff's pleadings an argument that the presidential communications privilege must be invoked by the President himself. In any case, there is no such requirement under FOIA. <u>See</u> <u>Lardner v. U.S. Dep't of Justice</u>, 2005 WL 758267 at *8 (D.D.C. 2005).

8. Defendant has repeatedly missed deadlines for production of documents responsive to CBD's FOIA request. Following this court's order regarding the fee waiver, the first set of responsive documents was due by May 21, 2008. Defendant was granted an extension to July 14, 2008 due to the "extraordinary breadth" of the FOIA request and technological problems. The court then granted defendant another extension and allowed initial production of the documents at issue on this motion for summary judgment (documents dated between September 1, 2003 through July 30, 2004) to be completed by July 21, 2008, and allowed the remainder to be produced at a later date. However, complete production for documents at issue here was not completed until September 15, 2008. While the court does not go as far as to say that OMB has acted in bad faith, defendant is forewarned that further delays will not be tolerated.

20