United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | No. C 07-04997 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| OFFICE OF MANAGEMENT AND BUDGET, | **Re: Cross-Motions for Summary Judgment** |
| Defendant. / | |

Plaintiff Center for Biological Diversity ("CBD") filed the present action against the Office of Management & Budget ("OMB"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552. Now before the court are the parties' second cross-motions for summary judgment concerning the requested information and documents produced by OMB, this time concerning the EXCHANGE database system of the Executive Office of the President. The court has considered the parties' arguments fully, and for the reasons set for below, the court rules as follows.

BACKGROUND

The facts of the case have been extensively set forth in the court's prior order concerning the production of documents by OMB relating to the ARMS database system of the Executive Office of the President. See Memorandum & Order Re: Cross Motions for Summary Judgment (Docket Entry 59) at 1-4 ("First SJ Order"). Therefore, the court provides only a brief summary of the facts

1  relevant to the issue presently before the court, concerning OMB's production of documents related
2  to its search of the EXCHANGE database system.
3        The EXCHANGE system contains archived emails from August 1, 2004, to August 29, 2006.
4  Pardee Dec. ¶ 3. Following a search and review of all pertinent documents, OMB produced batches
5  of all documents and portions of documents capable of being released on several dates during the
6  time period of August 15, 2008, to November 3, 2008. Neyland Dec. ¶ 22.[1] On November 13, 2008,
7  OMB submitted a Vaughn Index to CBD, identifying the documents and portions of documents from
8  the EXCHANGE system search OMB withheld under FOIA exemption privileges. Id. ¶ 25.
9        Approximately 822 documents are listed in that Vaughn Index. Theroux Dec., Exh.1. Of
10 these, CBD disputes the various privileges asserted in approximately 787 entries. Pardee Dec. ¶ 3.
11 Of these, approximately 376 documents were withheld entirely, and 411 documents were withheld in
12 part.[2] Pl.'s Mot. at 3:8-9. OMB states that these documents are covered by privileges it asserts fit
13 within FOIA Exemptions 4 and 5. Exemption 4 protects from disclosure of "commercial or financial
14 information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).
15 Exemption 5 protects from disclosure " inter-agency or intra-agency memorandums or letters which
16 would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Of
17 the 787 withheld documents that are in dispute, almost all are being withheld under the deliberative
18 process privilege, approximately 224 are being withheld under the presidential communications
19 privilege, approximately 228 are being withheld under the attorney-client privilege, and
20 approximately 5 are being withheld under the confidential business communications privilege.
21 Pardee Dec. ¶ 3; Def's Opp. 21:17-18, citing Theroux Dec., Exh. 1. The first three privileges fall
22 under FOIA Exemption 5, the last privilege falls under FOIA Exemption 4.
23       CBD does not challenge OMB's partial withholding of documents based on redactions of
24 privacy information such as phone and social security numbers. FOIA Exemption 6 protects
25 "personnel and medical files and similar files the disclosure of which would constitute a clearly
26 unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). OMB identified 43 such
27 documents. CBD asserts that this privacy privilege covers 35 of the documents by their count,
28 however, and requests that OMB identify the remaining documents withheld for such a purpose.

2

1    At issue now is the validity of OMB's exemption claims described in the Vaughn Index and
2 in declarations by Kevin F. Neyland, Deputy Administrator of OIRA, and Richard P. Theroux, an
3 OIRA economist. Plaintiff has moved for partial summary judgment and for *in camera* review or
4 immediate release of the withheld documents, and defendant has cross-moved for summary
5 judgment. While OMB maintains the propriety of its document withholding, CBD challenges the
6 sufficiency of OMB's declarations and the non-disclosure privileges invoked by OMB under FOIA
7 Exemptions 4 and 5. See 5 U.S.C. § 552(b)(4); 5 U.S.C. § 552(b)(5).

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. In ruling on a motion for summary judgment, the court may not make credibility determinations, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

Summary judgment is the procedural vehicle by which most FOIA cases are resolved. Harrison v. Executive Office for U.S. Attorneys, 377 F. Supp. 2d 141, 145 (D.D.C. 2005); Miscaviage v. IRS, 2 F.3d 366, 368 (11th Cir. 1993). As is the case here, "there is rarely any factual dispute . . . only a legal dispute over how the law is to be applied to the documents at issue." Schiffer v. FBI, 78 F.3d 1405, 1409 (9th Cir. 1996). Ultimately, the threshold issue on a motion for summary judgment is whether the agency's explanations are "full and specific enough to afford the

3

FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." See Wiener v. FBI, 943 F.2d 972, 977 (9th Cir. 1991), citing King v. U.S. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987).

DISCUSSION

The purpose, goals, and requirements of FOIA have been discussed in the court's prior order. See First SJ Order at 5-6. The court incorporates by reference these considerations into this Order.

Defendant has provided the Neyland and Theroux declarations and a Vaughn Index to support its withholding of documents from the EXCHANGE system search under FOIA's Exemptions 4 and 5. 5 U.S.C. §§ 552(b)(4)-(b)(5). Plaintiff argues that these documents inadequately describe both the contents of the withheld documents and defendant's reasons for non-disclosure. The court will only briefly review the deliberative process and presidential communications privileges, as the court finds that, as previously decided, the deliberative process and presidential communications privileges are inadequately supported. See First SJ Order at 6-14. The court then considers the attorney-client privilege claimed by the defendant under Exemption 5, the confidential business information privilege claimed by the defendant under Exemption 4, and the sufficiency of the explanations for how disclosure of particular documents would damage the interest protected by the claimed privileges.

I.   Exemption 5

The court's review of the statutory scope of Exemption 5 need not be repeated here. See First SJ Order at 6-7. The court will briefly consider the sufficiency of the explanations for how disclosure would damage either the deliberative process privilege or the presidential communication privilege. The court will then examine the attorney-client privilege and the sufficiency of those explanations.

   A.   Deliberative Process Privilege

Defendant asserts the deliberative process privilege for nearly all withheld documents. Neyland Dec. ¶ 31. For the same reasons found in the previous order on cross-motions for summary judgment, the court finds that the explanations accompanying such assertions are insufficiently

4

detailed, conclusory, and for many, invoke circular reasoning. See First SJ Order at 7-9. The court also finds that, for the wholly withheld documents in particular, the court does not have enough information to determine whether segregability is an option. See First SJ Order at 12-13. Finally, the court finds that the declarations by Neyland and Theroux are insufficient to remedy these problems. See First SJ Order at 13-14.

Defendant's Vaughn Index is attached as a three-part Exhibit 1 to the Theroux Declaration. The tabular index provides the following information about each withheld document: (a) general identifying information about the document, such as the document number, the date the document was created, and the sender and recipient of the emails (all contested documents are emails); (b) a description of the contents of the document, accompanied by a statement identifying how the document is pre-decisional and deliberative; (c) the privilege(s) asserted; and (d) an indication of whether the document was partially or wholly withheld.[3]

Much like the example noted in the previous order, only the first and/or second sentence of each description is different. See First SJ Order at 9:13-19. The term "different" is used with reservation, as the court noted that one particular description was replicated verbatim for over 350 entries. Further more, the court noted approximately twelve entries which had no description other than asserting that the document is pre-decisional and deliberative. See, e.g., Theroux Dec., Exh. 1, Entry Nos. 270, 511, 556, 586, 587, 662, 672, 700, 704, 709, 775, 779. As with the descriptions provided in the ARMS Vaughn Index, the court finds that the remaining descriptions are "overly simplistic and conclusory . . . [and] coupled with boilerplate explanations for exemption, do not provide sufficient facts for the court to conduct a *de novo* review of defendant's withholding under the deliberative process privilege." First SJ Order at 10:19-21.

Of particular concern is the description used in several entries. Over 350 entries described a partially withheld document as follows: "The email, which has been redacted in part, withholds deliberative discussions related to the development of NHTSA's proposed CAFE rulemaking for light trucks." See, e.g., Theroux Dec., Exh. 1, Entry Nos. 153, 328, 389, 423, 504. This description is problematic for two reasons. First, all this description provides is that it is responsive to CBD's document request. Second, when combined with the boilerplate language as to why the document is

deliberative, the description becomes meaningless. Essentially, by describing the document as containing "deliberative discussions" and then justifying the documents as deliberative because they contain discussions, OMB has set forth a circular claim to the privilege.

The wholly withheld document descriptions are insufficiently detailed to allow the court to segregate exempt portions of documents from those portions which are not exempt. See 5 U.S.C. § 552(b). Only a few documents are wholly withheld solely under the deliberative process privilege. See, e.g., Theroux Dec., Exh. 1, Entry Nos. 175-78, 244, 505. The brief descriptions, if anything, indicate that the email may contain the factual information for which CBD is searching, e.g., "costs of vehicle modifications" (Entry Nos. 175-78), "specific targets and ranges" (Entry No. 244), "energy savings" (Entry No. 505). The court is unable to make findings on the issue of segregability, or the lack thereof, based on this information (or the lack thereof). See Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 743-744 (9th Cir. 1979). OMB needs to provide information as to why these documents are unable to be segregated, yet documents pertaining to "deliberative discussions" concerning CAFE rulemaking for light trucks are segregable.

Finally, the accompanying declarations from Neyland and Theroux do not remedy these insufficiencies. The court notes that these declarations are nearly verbatim recitations of what was previously submitted, differing only in that they are, if possible, less detailed.[4] As such, the declarations filed in support of OMB's moving papers are insufficient to resolve the above stated problems, as were the prior declarations, for the reasons previously stated. See First SJ Order 13-14.

B.      Presidential Communications Privilege

The Vaughn Index entirely withholds approximately 224 documents under the presidential communications privilege. See Pardee Dec. ¶ 3. As was the case with the assertion of this privilege in the ARMS Vaughn Index, the court finds that OMB has not met its burden of establishing a sufficient showing to invoke the presidential communications privilege. See First SJ Order at 16.

The court reminds OMB that the presidential communications privilege is to be narrowly construed, see In Re Sealed Cases, 121 F.3d at 752, and "extension of the presidential privilege to the OMB is unprecedented and unwarranted . . . ." Wolfe v. Dep't of Health & Human Servs., 815

6

F.2d. 1527, 1533 (D.C. Cir. 1987), rev'd on other grounds, 839 F.2d 768 (D.C. Cir. 1988).  The privilege only protects immediate White House advisers and their staff.  In Re Sealed Cases, 121 F.2d at 752.  To extend the privilege to intra-OMB discussions relating to "draft background paper and memorandum used to prepare a presentation for the President," see, e.g., Theroux Dec., Exh. 1, Entry Nos. 127, 132, without a more detailed description, would run contrary to the law on this FOIA exemption.  The court declines to uphold the presidential communications privilege for the challenged documents.

        C.       Attorney-Client Privilege

Exemption 5 has been construed to protect the attorney-client privilege.  United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984).  The attorney-client privilege extends to situations in which the agency is consulting its attorney "as would any private party seeking advice to protect personal interests."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980).  An attorney-client privilege is established "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.  U.S. v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).  The privilege extends to confidential communications by the attorney to the client "only if that communication is based on confidential information provided by the client."  Mead Data Central Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242 (D.C. Cir. 1977); see also In Re Fischel, 557 F.2d 209 (9th Cir. 1977).

In the context of a Vaughn Index, OMB has the burden "'to show that these documents involved the provision of specifically *legal* advice or that they were intended to be confidential,' and were kept confidential."  Nat'l Res. Def. Council v. U.S. Dep't of Def., 388 F. Supp. 2d 1086, 1104 (C.D. Cal. 2005) (emphasis in the original) citing Judicial Watch, Inc. v. U.S. Postal Service, 297 F. Supp. 2d 252, 267 (D.D.C. 2004).  The use of boilerplate language, where "no effort is made to tailor the explanation to the specific document withheld," does not meet this burden.  Wiener v. FBI, 943 F.2d 972, 978-79 (9th Cir. 1991).

7

1    The descriptions provided in this Index in support of the attorney-client privilege are simply not tailored. Several entries fail to identify how a lawyer is involved. <u>See, e.g.</u>, Theroux Dec., Exh. 1, Entry Nos. 270 (no description provided); 271, 312, 728, 736 ("deliberative exchange of views on the subject of federal preemption"); 546, 594 ("deliberative views and comments about an attached draft of a memorandum"). Several fail to identify how the document contains legal advice. <u>See, e.g.</u>, Theroux Dec., Exh. 1, Entry Nos. 546, 594. "These documents might well contain legal advice and confidential information, but [OMB] does not say so." <u>Nat'l Res. Def. Council</u>, 388 F. Supp. 2d at 1104 <u>citing</u> <u>Judicial Watch</u>, 297 F. Supp. 2d at 267. OMB needs to say so.

The supporting declarations are similarly scant in their descriptions of the attorney-client privilege. First of all, the declarations do not identify which of those stated parties is the attorney. The only identification of a particular person being an attorney is in the Defendant's brief. Def.'s Mot. at 15:2. Second of all, the Neyland declaration provides no further description as to why these documents contain privileged material; instead it merely restates the scope of the privilege and that the documents fall within that scope. Neyland Dec. ¶ 37

The court reminds OMB that the Vaughn Index is intended to partially relieve the distortion of our legal system caused by the "lack of knowledge by the party seeking disclosure. . . ." <u>Wiener</u>, 943 F.2d at 977, <u>citing</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820, 824 (D.C. Cir. 1973). To remedy this problem, the agency must disclose "as much information as possible without thwarting the claimed exemption's purpose." <u>Id.</u> at 979. Here, as elsewhere, OMB has "not disclosed all it could." <u>Id.</u> Without sufficient additional facts, OMB cannot rely on the attorney-client privilege for the challenged documents.

II.   <u>Exemption 4: Confidential Business Communications Privilege</u>

Exemption 4 of the FOIA permits withholding documents which are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Commercial or financial information is deemed "confidential" if disclosure is likely to either: "(1) [i]mpair the Government's ability to obtain necessary information in the future; or (2) [c]ause substantial harm to the competitive position of the person from whom the information was obtained." <u>Frazee v. U.S. Forest Serv.</u>, 97 F.3d 367, 371 (9th Cir. 1996). In order to show that

8

1   a document falls under Exemption 4, the party seeking to withhold the document "must present
2   specific 'evidence revealing (1) actual competition and (2) a likelihood of substantial competitive
3   injury'" although evidence of actual competitive harm is not necessary.  Id., citing GC Micro Corp.
4   v. Def. Logistics Agency, 33 F.3d 1103, 1113 (9th Cir. 1994).

5         OMB asserts Exemption 4 protection for five documents: Entry Nos. 93, 149, 151, 810, 811.
6   The description for each of these documents is the same: "The email, which has been redacted in
7   part, withholds deliberative discussions related to the development of NHTSA's proposed CAFE
8   rulemaking for light trucks."  This description provides no information revealing any sort of
9   business competition-related disadvantage, let alone specific evidence revealing either actual or a
10  likelihood of substantial competitive injury.

11        The declarations do not remedy this deficiency.  While the court accords "substantial weight
12  to an affidavit of an agency concerning the agency's determination," 5 U.S.C. § 552(a)(4)(B), the
13  court finds that the agency has not in point of fact made any determination.  Instead, Neyland
14  appears unsure that the information contained in these documents is either (1) privileged and
15  confidential or (2) would result in competitive disadvantage.  See Neyland Dec. ¶¶ 38, 50 (indicating
16  that, from what he understands, the information was obtained under agreement that they would not
17  be released, and similarly that, from what he understands, that release of that information would lead
18  to a competitive disadvantage).  When viewed in conjunction with the Vaughn Index, the court does
19  not have enough information to determine if the privilege is properly invoked.

20        OMB asserts that, regardless, it cannot authorize the release of these documents, because
21  under Executive Order 12,600, it has been unable to contact the submitter of the information.  Def.'s
22  Opp. at 21:28-22:2.  Executive Order 12,600 requires the head of each Executive agency to
23  "establish procedures to notify submitters of records containing confidential information . . . when
24  those records are requested under. . . FOIA. . . . if . . . the agency determines that it may be required
25  to disclose those records."  See Executive Order No. 12,600, 3 C.F.R. 235, reprinted in 5 U.S.C. §
26  552 note.  If OMB has not been able to contact the submitter of the information, it begs the question
27  how OMB could assert a privilege that relies on the following elements (indicated in italics) to
28  exempt from disclosure "(i) voluntarily submitted commercial or financial information *provided that*

9

*the submitter does not "customarily" disclose the information to the public* and provided that disclosure would be likely to interfere with the continued and full availability of the information to the government, or (ii) compelled information *likely to cause substantial harm to the competitive position of the person from whom it was obtained* and likely to impact on the government's ability to obtain reliable information in the future." Critical Mass Energy Project v. NRC, 975 F.2d 871, 879-80 (D.C. Cir. 1992) (emphasis added); see also National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 766 (D.C. Cir. 1974). In any event, because this court is not requiring OMB to release the documents at this point, OMB's attempted reliance on the fact that it cannot contact the submitters to withhold the documents is premature. The court finds that there simply is not enough specific evidence to provide support for OMB's assertion of Exemption 4. More information is needed.

III.     *In Camera* Inspection

Plaintiff again urges the court to conduct an *in camera* inspection of the withheld documents or to order the immediate release of the documents. The court declines the invitation for the reasons previously presented. See First SJ Order at 17-18. The more appropriate course of action is to allow OMB to revise its EXCHANGE Vaughn Index and declarations as needed to support its exemption claims. This is particularly appropriate given that, ostensibly, OMB is already in the process of revising the EXCHANGE Vaughn Index. See Pyle Dec. Docket No. 69, ¶ 4.

CONCLUSION

The court **DENIES** defendant's motion for summary judgment. The Vaughn Index and declarations are insufficient to allow the court to make a *de novo* review of how disclosure of a particular document would damage the interest provided by the claimed exemption. The court has ordered defendant to produce a more particularized Vaughn Index as to the privileges asserted, so that the court may have an adequate factual basis upon which it may make a *de novo* review of the defendant's withholding decisions. That Index should provide an accurate count of how many documents are contested and under which privileges, to address plaintiff's concerns about FOIA Exemption 6, *inter alia*, and to facilitate matters going forward.

1    The court does not conclude that the documents are not exempt as a matter of law, only that
2 the agency has failed to supply the court with the minimal information necessary to make such a
3 determination.  Therefore, plaintiff's motion for summary judgment is **DENIED.**  However, OMB
4 remains on notice that a failure to submit adequate revisions that provide the court with sufficiently
5 particularized explanations of how disclosure will damage the interest protected by the claimed
6 privilege will be deemed a waiver of that privilege.

9    IT IS SO ORDERED.

11 Dated:  May 5, 2009

12 MARILYN HALL PATEL
   United States District Court Judge
13 Northern District of California

11

**ENDNOTES**

1. All references to the Neyland Declaration and Theroux Declaration are to the declarations filed in support of the instant motion, unless otherwise noted, e.g., as ARMS declarations.

2. Unlike in the previous provided Vaughn Index relating to the ARMS system search, OMB has not provided a breakdown of the number of documents withheld by each privilege. The numbers used in this Order are based on calculations made by the CBD and responsively by OMB where noted. See Pardee Dec. ¶ 3. The court recognizes that these numbers are approximate, but expects that every effort has been made to be as accurate as possible.

3. There is one entry which indicates that the document was released. See Entry No. 511, and at least two entries which asserts a privilege, but do not say what was or was not released. See Entry Nos. 139, 772.

4. While the previous declarations took the time to indicate how many documents were being withheld under each privilege, these declarations do not do so. Compare ARMS Neyland Dec. ¶ 28 with Neyland Dec. ¶ 34 (where 63 documents were previously withheld under presidential communications privilege, here, "there are documents withheld."). The court notes that the declarations do contain paragraphs directed to the new privileges asserted, specifically those documents covered under Exemption 4. Neyland Dec. ¶ 38; Theroux Dec. ¶ 10. Furthermore, the court notes that Dr. Theroux's declaration now contains a paragraph previously only found in Mr. Neyland's declaration. Compare ARMS Neyland Dec. ¶ 26; Neyland Dec. ¶ 32 with Theroux Dec. ¶ 8.