UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY,

Plaintiff,

v.

OFFICE OF MANAGEMENT & BUDGET,

Defendant.

No. C 07-04997 MHP

**MEMORANDUM & ORDER**

**Re: Cross-Motions for Summary Judgment on ARMS and EXCHANGE Documents.**

Plaintiff Center for Biological Diversity ("CBD") filed this action against the Office of Management & Budget ("OMB"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552. Now before the court are the parties' third cross-motions for summary judgment concerning all requested information and documents withheld by OMB under the now-revised Vaughn indices. The court has considered the parties' arguments fully, and for the reasons set for below, the court rules as follows.

BACKGROUND

The motions now before the court represent the third set of summary judgment motions concerning CBD's August 29, 2006 FOIA request to OMB for documents relating to the setting of Corporate Average Fuel Economy ("CAFE") standards for light trucks for the years 2008 through 2011. CBD seeks the results of OMB's search of two database systems of the Executive Office of the President, called the ARMS and EXCHANGE systems. The ARMS system search contains documents dated between September 1, 2003, and July 30, 2004, while the EXCHANGE system search contains documents dated between August 1, 2004, to August 29, 2006.

1  The facts of the case have been extensively set forth in the court's prior two summary
2 judgment orders addressing the production of documents by OMB relating to the ARMS and
3 EXCHANGE database system searches, respectively. See Memorandum & Order re: Cross-Motions
4 for Summary Judgment (Docket No. 59) at 1-4 ("First SJ Order"); Memorandum & Order re: Cross-
5 Motions for Summary Judgment at 1-3 ("Second SJ Order" filed May 5, 2009). Accordingly, only a
6 brief summary of the facts arising in connection with instant motions are provided here.

7  The present dispute concerns OMB's revised Vaughn indices related to the production of
8 documents from its searches of both the ARMS and EXCHANGE database systems (hereinafter,
9 Arms Vaughn Index = "AVI"; Exchange Vaughn Index = "EVI"). CBD states it is not challenging
10 any documents or portions of documents from either search withheld under FOIA Exemption 6, 5
11 U.S.C. section 552(b)(6), the privacy exception.

12 I.  Revised ARMS Vaughn Index

13  Pursuant to an order from this court, on January 5, 2009, OMB submitted a revised AVI, i.e.,
14 a Vaughn index regarding documents from the ARMS system search. See Second Dec. of Richard
15 Theroux (Docket No. 79) ("AVI Theroux Dec."), Exh. 1. OMB originally withheld, in whole or in
16 part, 631 documents under either the deliberative process privilege, the presidential communication
17 privilege or the attorney-client privilege pursuant to FOIA Exemption 5, 5 U.S.C. section 552(b)(5).
18 That exemption protects from disclosure "inter-agency or intra-agency memorandums or letters
19 which would not be available by law to a party other than an agency in litigation with the agency."
20 5 U.S.C. § 552(b)(5). By stipulation of the parties, the court granted OMB summary judgment with
21 respect to the ARMS documents withheld under the attorney-client privilege. See First SJ Order at
22 18:10-11.

23  Of the approximately four hundred ARMS documents OMB had previously withheld in
24 whole or in part, the current status of documents in the AVI is summarized as follows:[1] (1) fifty
25 documents previously withheld have been released in full; (2) four documents are duplicates of each
26 other; (3) thirty-seven documents are redundant, e.g., e-mail forwards of documents which already
27 exist; (4) 183 documents are withheld in full or in part under the deliberative process privilege; (5)
28 ninety documents are withheld in full or in part under the presidential communications privilege and

2

the deliberative process privilege; (6) five documents are redacted solely on privacy grounds; (7) sixteen documents are withheld in full because they are "out of scope" and subject to the deliberative process privilege; and (8) eighteen documents are withheld in part because they are "out of scope" and subject to the deliberative process privilege.

OMB has submitted two declarations to support the AVI. See AVI Theroux Dec. and Second Dec. of Kevin Neyland (Docket No. 80) ("AVI Neyland Dec.") (collectively, "AVI declarations").

CBD moves for partial summary judgement or *in camera* review of the contested ARMS documents. While OMB maintains the propriety of its document withholding, CBD contends that OMB is improperly withholding documents due to its misapplication of FOIA exemption privileges. Furthermore, CBD contends that even if the exemption privileges are properly asserted, the AVI and accompanying declarations are inadequately detailed to permit the necessary *de novo* review. CBD further argues that by reviewing and turning over some previously-withheld documents, OMB has waived all privileges to the remaining documents. CBD also argues that OMB's cherry-picking of which documents to release amounts to arbitrary and capricious actions under the Administrative Procedure Act, 5 U.S.C. sections 706(2)(a) & (d) ("APA"). Finally, CBD argues that in light of the fact that the Ninth Circuit has ruled that the 2008-2011 CAFE standards are arbitrary and capricious, see Ctr. for Biological Diversity v. N.H.T.S.A., 538 F.3d 1172, 1181-82 (9th Cir. 2008), governmental misconduct has been conclusively established, and OMB should be required to turn over all relevant documents.

II. Revised EXCHANGE Vaughn Index

Pursuant to an order from this court, OMB submitted a revised EVI, i.e., a Vaughn index regarding documents from the EXCHANGE system search, on March 1, 2009. See Second Dec. of Richard Theroux (Docket No. 88) ("EVI Theroux Dec."), Exh. 1. OMB originally withheld, in whole or in part, 787 documents under either the deliberate process privilege, the presidential communication privilege or the attorney-client privilege pursuant to FOIA Exemption 5, 5 U.S.C. section 552(b)(5), and the confidential business information privilege pursuant to FOIA Exemption 4, 5 U.S.C. section 552(b)(4). OMB has now released several additional documents to CBD;

3

approximately one hundred documents by OMB's count, and approximately three hundred "document pages" by CBD's count. OMB is no longer withholding any documents under FOIA Exemption 4. Under the EVI, OMB is withholding approximately 680 documents under the deliberative process privilege, approximately two hundred of those documents under the attorney-client privilege, and an untallied number of the 680 documents under the presidential communication privilege.

OMB has submitted two declarations with the EVI which mirror nearly verbatim the declarations submitted with the AVI. See EVI Theroux Dec. and Second Dec. of Kevin Neyland (Docket No. 87) ("EVI Neyland Dec.") (collectively "EVI declarations"). The one major difference between the two sets of declarations—apart from the paragraphs regarding application of the attorney-client privilege in the EVI declarations, which is not at issue in the AVI—is the inclusion in the EVI Theroux Declaration of a description of how the President is involved in the CAFE rulemaking process. The declaration describes a senior-level White House Advisor meeting called "Policy Time" during which "the President is personally briefed on pressing issues and provided with a candid discussion of alternatives and options for the President to choose the direction he wishes to lead the country." EVI Theroux Dec. ¶ 19.

CBD similarly moves for partial summary judgement or *in camera* review of the contested EXCHANGE documents. While OMB maintains the propriety of its document withholding, CBD contends that OMB is improperly withholding documents due to its misapplication of exemption privileges. Furthermore, CBD contends that even if the exemption privileges are properly asserted, the EVI and accompanying declarations are inadequately detailed to permit the necessary *de novo* review. CBD also reiterates its previously presented arguments regarding OMB's waiver, arbitrary and capricious action under the APA and governmental misconduct.

4

## LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. In ruling on a motion for summary judgment, the court may not make credibility determinations, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

Summary judgment is the procedural vehicle by which most FOIA cases are resolved. Harrison v. Executive Office for U.S. Attorneys, 377 F. Supp. 2d 141, 145 (D.D.C. 2005); Miscaviage v. IRS, 2 F.3d 366, 368 (11th Cir. 1993). As is the case here, "there is rarely any factual dispute . . . only a legal dispute over how the law is to be applied to the documents at issue." Schiffer v. FBI, 78 F.3d 1405, 1409 (9th Cir. 1996). Ultimately, the threshold issue on a motion for summary judgment is whether the agency's explanations are "full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." See Wiener v. FBI, 943 F.2d 972, 977 (9th Cir. 1991), citing King v. U.S. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987).

## DISCUSSION

The purpose, goals, and requirements of FOIA have been discussed in the court's prior order. See First SJ Order at 5-6. Those considerations are incorporated by reference into this Order.

5

1  OMB has provided the AVI and its accompanying AVI declarations, and the EVI and its
2 accompanying EVI declarations, to support its withholding of documents for each of the ARMS and
3 EXCHANGE systems searches under FOIA Exemption 5. 5 U.S.C. §§ 552(b)(5). The court
4 considers the EVI and AVI together.

5 I.     Exemption 5

6  The court's review of the statutory scope of Exemption 5 as it applies to the deliberative
7 process, presidential communication and attorney-client privileges need not be repeated here. See
8 First SJ Order at 6-7; Second SJ Order at 4-8.

9     A.     Deliberative Process Privilege

10 OMB asserts the deliberative process privilege for nearly all documents in the EVI and
11 approximately 273 documents in the AVI. EVI Neyland Dec. ¶¶ 29-31; AVI Neyland Dec. ¶¶ 29-
12 31. The AVI, attached as Exhibit 1 to the AVI Theroux Dec., and the EVI, attached as Exhibit 1 to
13 the EVI Theroux Dec. both use the same format. For each document number, an introductory
14 paragraph provides the 1) date of the document, 2) the type of document (usually an e-mail), 3) the
15 author, 4) the recipient(s), 5) whether it has been withheld in whole or part, and 6) a one- to two-
16 sentence summary of the content. This paragraph is followed by a boilerplate justification for either
17 the deliberative process, presidential communication, attorney-client or privacy privileges (or a
18 combination thereof). The next paragraph provides one of three boilerplate justifications as to a
19 document's segregability, which differs slightly depending on whether the document is withheld in
20 full, withheld in part or had private information redacted. The final paragraph contains a boilerplate
21 justification as to the document's non-adoption into any final or public policy, and/or its non public
22 release. One of the few exceptions to this boilerplate is for documents partially withheld under
23 FOIA Exemption 6, the privacy exemption. Compare EVI Entry No. 67 with EVI Entry No. 68.
24 The AVI is 195 pages; and the EVI is 445 pages.[2]

25     (i)     Draft Press Materials and Related E-mails

26 CBD suggests that draft question and answer ("Q&A") sheets (for the press) and draft press
27 releases are outside the scope of the deliberative process privilege and urges a blanket release for
28 those types of documents. Relying on Mayer, Brown, Rowe & Maw L.L.P. v. I.R.S., 537 F. Supp.

6

2d 128 (D.D.C. 2008), Wilderness Soc'y v. Dep't of the Interior, 344 F. Supp. 2d 1 (D.D.C. 2004) and Fishermen's Finest, Inc. v. Gutierrez, 2008 WL 2782909 (W.D. Wash. 2008), CBD urges this court to create an exception to the deliberative process privilege for all drafts of press releases and Q&A related material, and release all withheld documents, either in whole or in part, sight unseen. CBD stretches those cases too far.

First, the court in Mayer, Brown ordered the release of the withheld documents only after conducting an *in camera* review, which has not been completed here. See 537 F. Supp. 2d at 135 n.5. Second, the Wilderness Society court did not order the documents to be turned over, but instead granted the defendants thirty days to either turn over the documents or submit a revised Vaughn index. 344 F. Supp. 2d at 14. Third, Fishermen's Finest did not concern documents in the same procedural posture as here. There, the court found that the National Marine Fisheries Service ("NMFS") was merely reviewing fishery plans to see whether they complied with the Magnuson-Stevens Act, 16 U.S.C. section 1801. 2008 WL 2782909, at *1-2. The court concluded that the NMFS had only limited authority to make rules, and therefore the documents the NMFS purportedly withheld did not fall within the deliberative process privilege because they were neither pre-decisional nor related to a policy-oriented decision. Id. at *4. Instead, as translations into regulations of already-made policy, these documents were post-decisional. Id. at *5.

Drafts of documents, even those which may eventually be released to the public, may contain deliberative process-protected materials. See Dudman Commc'ns Corp. v. Dep't of Air Force, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (disclosure of "decisions to insert or delete material or change a draft's focus or emphasis . . . would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work."). Therefore, a blanket release is improper in this context.

    (ii) Out-of-Scope Documents

CBD further suggests that OMB should produce the documents it now indicates are unresponsive to the FOIA request. In light of the sheer quantity of documents OMB is now either releasing or finding out of scope, OMB's previous assertions of the thousands of hours spent reviewing and cataloguing documents is called into question. See EVI Neyland Dec. ¶¶ 16, 18-21.

7

Furthermore, the court reminds OMB that despite its technical difficulties, OMB first received CBD's FOIA request in August 2006. EVI Neyland Dec. ¶ 9. That OMB chose not to begin work on that request until after the court had ruled on a fee waiver in March 2008 does not mean that OMB was not given "sufficient time to prepare." See Def. Mot. for Summary Judgment for EXCHANGE documents (Docket No. 85) at 4:13; see also EVI Neyland Dec. ¶ 12.

Regardless, OMB is not required to produce information that is not responsive to a FOIA request. California ex rel. Brown v. N.H.T.S.A., 2007 WL 1342514, at *2 (N.D. Cal. May 8, 2007) (Conti, J.), citing United States v. Catholic Healthcare W., 445 F.3d 1147, 1153 (9th Cir. 2006). Accordingly, the now "out-of-scope" documents need not be produced.

### (iii) Adequacy of Vaughn Indices

The descriptions provided in the AVI and EVI are much improved, but several descriptions remain inadequate. OMB has provided, with respect to some documents, enough information for the court to make a determination that the document is being properly withheld under the deliberative process privilege. Accordingly, the court **GRANTS** in part OMB's motion for summary judgement with respect to documents with the following types of descriptions:

- Actual drafts of documents relating to specific, finite and clearly identified facets of CAFE standards. See AVI Entry Nos. 68, 69, 188, 397, 423; EVI Entry Nos. 69, 140, 143, 162.

- Thoughts, opinions, revisions, and questions relating to those specific finite and clearly identified facets of those drafts. See AVI Entry Nos. 70, 72, 73, 81, 191, 192, 194, 349.

- Thoughts, opinions and questions about the merits, reasonableness or quality of analysis of specific and finite points in drafts, articles, white papers or specific, finite and clearly identified theories of application. See AVI Entry Nos. 47, 49, 50, 53, 67, 181; EVI Entry Nos. 4, 5, 20, 25, 26, 29, 30, 34, 49, 51, 70, 72, 98, 137, 144, 224, 244, 297, 301, 314.

- Documents which excise any sort of the above of documents or e-mails, but otherwise release the document. See AVI Entry Nos. 235, 239-44.

These descriptions do not cover all AVI or EVI entries, however. Several entries are still not particularized enough for the court to draw any sort of conclusion. Therefore, the court **DENIES** in part OMB's motion for summary judgement with respect to the following types of documents:

- Generalized questions or opinions regarding the National Highway Traffic Safety Administration's ("N.H.T.S.A.'s") CAFE regulation. See AVI Entry Nos. 80, 117, 418, 698; EVI Entry Nos. 12, 55, 310, 510.

8

- E-mails which disseminate factual documents, with no mention of thoughts or opinions or that these documents are drafts. See AVI Entry Nos. 78, 422.

- Documents with the description: "withholding deliberative discussions related to the development of N.H.T.S.A.'s proposed CAFE rulemaking for light trucks." See EVI Entry Nos. 308, 368, 485, 486, 685, 690-93, 695.

- Documents or questions, thoughts, comments, and opinions regarding/related to "certain [unnamed] aspects of CAFE standards" or "draft memorandums." See AVI Entry Nos. 295, 310, 335-37, 418-20.

- Documents which excise any sort of the above of documents or e-mails, but otherwise release the document. See AVI Entry No. 299.

These referenced documents are non-exclusive exemplars of what is appropriate for a Vaughn index, and what remains inappropriate. The court declines to wade through the voluminous indices and find all the documents which comply with these categories. Further instructions in this matter are discussed below at section III.

(iv)     Segregability of Factual Information

CBD argues that OMB continues to inadequately establish the non-segregability of some documents. "Any reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency meets its burden regarding segregability by "showing that no such segregable information exists." Army Times Pub. Co. v. Dep't of Air Force, 998 F.2d 1067, 1071 (D.C. Cir. 1993). Factual information can be protected because the choice of specific facts implicates "editorial judgements." Dudman Commc'ns, 815 F.2d at 1569. In determining if the agency has met its burden, a court should "focus on whether the document in question is part of the deliberative process." Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1118 (9th Cir. 1988).

In contrast with previously provided Vaughn indices, OMB has demonstrated that it has closely reviewed all documents, as indicated by releasing several hundred more documents, and finding that several initially indexed documents are out of scope. Furthermore, the majority of the documents in question are e-mail chains. See, e.g., EVI Nos. 30, 126, 477. See also Local 3, Int'l Bd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988) (affirming segregability analysis where "the documents . . . are so short—from one to six pages—that stripping them down to their bare-bone facts would render them either nonsensical or perhaps too illuminating of the agency's

9

1  deliberative process."). The editorial selection of the facts on which the agency or agency members
2  are providing opinions is precisely the sort of intertwined factual information that is protected by the
3  deliberative process privilege. See Dudman Commc'ns, 815 F.2d at 1569. Here, the documents are
4  chains of e-mails, which are likely short rejoinders to comments made by the previous author, much
5  like the documents CBD submits to show OMB's recently turned-over documents. Vera Pardee
6  Dec. (Docket No. 83) ¶ 3, Documents 1-50.
7       On oral argument, CBD alleged that the statements provided by OMB were conclusory, in
8  contravention of Pacific Fisheries, Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008).[3]
9  Segregability analysis must not be conclusory, but rather such statements "should disclose as much
10 information as possible without thwarting the claimed exemption's purpose." Id. at 1148-49
11 (internal quotations omitted). OMB has finally conducted an extensive review of the documents in
12 question and provided a description as to why it is withholding a particular document in whole or in
13 part. Although the segregability paragraph is boilerplate, the court finds that OMB has provided in
14 its document descriptions, the non-conclusory description necessary to show its proper invocation
15 without thwarting the deliberative process privileges purpose.
16      This analysis does not apply to those inadequate document descriptions discussed above in
17 section I(A)(iii). Several of the exemplar documents, however, are documents which have been
18 partially released, and OMB has met its burden in establishing the non-segregability with respect to
19 those and similar documents. See, e.g., EVI Entry Nos. 30, 137.
20      B.    Presidential Communications Privilege
21      OMB withheld approximately ninety documents in the AVI and some portion of the
22 documents in the EVI under the presidential communications privilege. CBD argues that the
23 presidential communications privilege should not apply at all because the President is ultimately not
24 responsible for the CAFE standards. OMB states that some of the withheld documents in the EVI,
25 although it neglects to mention which ones, are withheld under the presidential communications
26 privilege because they were prepared for a "Policy Time" meeting with the President. See EVI
27 Theroux Dec. ¶ 19. Such an assertion is missing from the AVI declarations.
28

10

1    The presidential communications privilege extends beyond presidential decision-making and
2 encompasses communications that "explore alternatives in the process of shaping policies and
3 making decisions." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 449 (1977). Therefore, any
4 document which is a draft of a presentation or memorandum for the President or his senior advisors
5 is encompassed by this exception. See EVI Entry Nos. 100, 101, 326, 341; AVI Entry No. 421
6 (draft of a memorandum for White House Chief of Staff Andrew Card). While the "Policy Time"
7 meeting is not expressly referenced in the EVI itself, if the documents are used for that meeting, then
8 they are protected by this privilege. Furthermore, documents which "discuss[] the implications and
9 accuracy of draft language for use in a speech by the President" would similarly fall under this
10 rubric of shaping policies. See EVI Entry No. 120.

11    While the documents and drafts of those documents prepared specifically for this meeting
12 may be covered by this exception, there remain other documents which, by their description, fall
13 outside of this exception. The court reminds the OMB that the presidential communications
14 privilege is to be narrowly construed, see In re Sealed Cases, 121 F.2d 729, 752 (D.C. Cir. 1997),
15 and "extension of the presidential privilege to the OMB is unprecedented and unwarranted . . . ."
16 Wolfe v. Dep't of Health & Human Servs., 815 F.2d 1527, 1533 (D.C. Cir. 1987), rev'd on other
17 grounds, 839 F.2d 768 (D.C. Cir. 1988).

18    The presidential communications privilege only protects immediate White House advisers
19 and their staff. In re Sealed Cases, 121 F.2d at 752. The privilege does not extend to intra-OMB
20 discussions relating to "draft background papers and memorandum prepared for a presentation for
21 the President." See EVI Entry Nos. 139, 150, 548, 557-59; see also EVI Entry No. 131 ("plans for
22 presenting [development of N.H.T.S.A.'s light truck CAFE rules] to the President."). Furthermore,
23 this is the same language used for the now-released document noted at EVI Entry No. 127. The
24 court is unable to discern why Entry No. 127 is fit for release, but Entry No. 139 is not. The
25 privilege also does not extend to an intra-OMB discussion relating to "deliberative discussions
26 related to vehicle mileage ratings made in the context of the development of N.H.T.S.A.'s proposed
27 CAFE rulemaking." See EVI Entry No. 125; see also EVI Entry No. 224 (presidential
28 communications privilege asserted for non-White House Office discussion on analysis of white

11

1   paper); AVI Entry Nos. 334-35. Finally, there are several entries which appear not to involve senior
2   officials or the President and "relate to" a presentation for the president. <u>See</u> EVI Entry Nos. 181,
3   190, 223, 344; AVI Entry Nos. 343, 769. OMB's reliance at oral argument on <u>Loving v. Dep't of</u>
4   <u>Defense</u>, 496 F. Supp. 2d 101 (D.D.C. 2007) is misplaced. There, the documents in question were
5   the actual memoranda to the president, not the drafts of background material in preparation for the
6   memoranda. <u>See id.</u> at 105. From these descriptions, it is impossible to determine if the document
7   is the presentation, or is merely background or logistical planning for the presentation. These
8   descriptions remain inadequate.

9   Despite the potential non-applicability of the presidential privilege exception, these
10  documents may still be covered by the deliberative process privilege. In those situations, however,
11  OMB must then examine the segregability of the document, since the presidential communications
12  privilege, unlike the deliberative process privilege, applies to documents in their entirety. <u>See</u> <u>In re</u>
13  <u>Sealed Cases</u>, 121 F.3d at 745. Although OMB includes the segregability boilerplate language for
14  those documents withheld under both the presidential communications and deliberative process
15  privileges, the court doubts that OMB has actually assessed the segregability of the documents, since
16  the presidential communications privilege covers a document in its entirety.

17  Again, the court declines at this point to wade through the entirety of the Vaughn indices to
18  identify all the documents which comply with these categories. Further instructions in this matter
19  are discussed below at section III.

20  C.   Attorney-Client Privilege

21  OMB withheld approximately two hundred documents listed in the EVI at least partially
22  under the attorney-client privilege. An attorney-client privilege is established "(1) [w]hen legal
23  advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3)
24  the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the
25  client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8)
26  unless the protection be waived. <u>United States v. Martin</u>, 278 F.3d 988, 999 (9th Cir. 2002). The
27  privilege extends to confidential communication by the attorney to the client "only if that
28  communication is based on confidential information provided by the client." <u>Mead Data Cent. Inc.</u>

v. Dep't of Air Force, 566 F.2d 242, 254 (D.C. Cir. 1977); see also In re Fischel, 557 F.2d 209 (9th Cir. 1977).

OMB has provided enough description to show that the privilege applies to the documents to which it asserts the privilege applies. In contrast with the previous Vaughn index, OMB has identified the lawyer in each situation and has described the legal advice provided. See, e.g., EVI Entry Nos. 447, 458, 737 (discussions of federal preemption); EVI Entry No. 311 (edits on "safe harbors"); EVI Entry No. 487 (discussions regarding future CAFE rulemaking); EVI Entry No. 270 (statutory interpretation); EVI Entry No. 628 (implications of court decisions). CBD's assertions at oral argument that it is impossible to determine what subject matter of these discussions are from the Vaughn indices are unpersuasive. The indices provide a reasonable description of the legal issue in question. When combined with the fact that OMB has determined which discussions involved legal advice and which involved policy decisions, OMB has complied with its necessary responsibilities in order to assert this privilege.

CBD's argument regarding OMB's waiver of the attorney-client privilege due to the presence of inter-agency persons on some of the e-mail chains is unavailing. Under FOIA Exemption 5, a party may withhold any intra- or inter-agency memorandum "which would not be available by law to a party other than an agency in litigation with that agency." 5 U.S.C. § 552(b)(5). As reiterated in Coastal States Gas Co. v. Department of Energy:

> The test, as this court held in Mead Data Central, is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members "of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication."

617 F.2d 854, 863 (D.C. Cir. 1980), citing Mead Data Cent. Inc., 566 F.2d at 253 n.24.

CBD cites Wyoming v. USDA, 239 F. Supp. 2d 1219, 1232 (D. Wyo. 2002), vacated on other grounds ,414 F.3d 1207 (10th Cir. 2005) for the proposition that there is no inter-agency attorney-client privilege. While the realities of the USDA's attorney-client privilege assertion there are unclear, it appears that the documents in question did not concern inter-agency rulemaking such as was involved here.

Courts have extended the attorney-client privilege to multiple parties who share a common interest in a legal matter. Waller v. Fin. Corp. of Am., 828 F.2d 579, 583 n 7 (9th Cir. 1987). When read in light of 5 U.S.C. section 553(b)(5) and Mead Data Central, a common legal interest can extend the attorney-client privilege to inter-agency memoranda wherein those inter-agency members are all "authorized to speak or act for the organization in relation to the subject matter of the communication." Coastal States Gas Co., 617 F.2d at 863. Contrary to CBD's assertion, the development of the CAFE standards was a common legal interest shared by different agencies. It is precisely because OMB is an oversight organization, see EVI Neyland Dec. ¶¶ 3, 5, that OMB is involved with various agencies in tandem to create new CAFE regulations. EVI Neyland Dec. ¶ 6. The development of the new CAFE standards is therefore a common legal interest allowing all involved agency members the privilege of attorney-client confidentiality in discussions regarding the legality of various aspects of the proposed CAFE rulemaking. There is no indication that these e-mails were circulated broadly among agency members not authorized to speak or act for the organization in relation to the subject matter of the communication. Accordingly, OMB may assert the privilege so long as the distribution of the attorney-client privileged documents is *limited*, as it is here.

Furthermore, because the documents OMB asserts as protected are described as containing opinions and edits regarding specific, finite and clearly identified facets of the CAFE rulemaking, these documents would also be protected under the deliberative process privilege. OMB asserts this privilege on these documents as well, and, as discussed above in section I(A), such descriptions comply with the OMB's burden to show the deliberative process privilege.

Finally, OMB correctly asserted at argument that there is no need to perform a segregability analysis on documents protected under the attorney-client privilege. Pacific Fisheries, 539 F.3d at 1148 ("[I]f a document is covered by the attorney work-product privilege, the government need not segregate and disclose its factual contents.").

Accordingly, OMB's motion for summary judgment is **GRANTED** with respect to the documents asserted under the attorney-client privilege.

14

## II. Waiver and Misconduct

CBD asserts three additional arguments, urging the court to order OMB to turn over all remaining documents. CBD argues that OMB, by releasing documents previously withheld under FOIA exemptions, has waived all privileges with respect to all documents in question, and should therefore turn over the documents. Alternatively, CBD argues that OMB has acted arbitrarily and capriciously by cherry-picking which documents to reveal, so at the very least, its declarations should be discounted. Finally, CBD argues that OMB has engaged in governmental misconduct and therefore, applying the deliberative process privilege to protect evidence of an agency's misconduct is inappropriate.

### A. Waiver of All Privileges

CBD argues that because OMB released several previously withheld-as-privileged documents on the subject matter of 2008-2011 CAFE standards, OMB has waived its remaining privileges on all other documents. CBD's waiver argument, based on attorney-client privilege principles, is misplaced. "Implying a waiver of exemption for these documents based on the release of related documents to [plaintiffs] or to third parties would be contrary both to the case law on waiver and to the policies underlying FOIA and its exemptions." Mobil Oil Corp. v. EPA, 879 F.2d 698, 700 (9th Cir. 1989). If CBD's argument were accepted, it would create the untenable result of discouraging the government from ever re-reviewing previously withheld documents. Id. at 701. Accordingly, the court finds that OMB, by releasing some previously-withheld documents, has not waived its remaining privileges.

### B. Arbitrary and Capricious Under APA

CBD further argues that OMB's arbitrary and capricious selection of which documents to withhold under FOIA exemptions is in violation of the APA. 5 U.S.C. §§ 706(2)(a) & (d). CBD's arbitrary and capricious argument under the APA is similarly misplaced, because the APA only applies if an adequate remedy is not available elsewhere. Tucscon Airport Auth. v. Gen. Dynamics Corp., 136 F.3d 641, 645 (9th Cir. 1998). FOIA provides an adequate remedy for the complaint CBD alleges here. People for the Am. Way Found. v. Nat'l Park Serv., 503 F. Supp. 2d 284, 308-09 (D.D.C. 2007) (granting summary judgment in a FOIA case on plaintiff's separate APA claim for

15

the agency's failure to disclose all responsive documents).  See Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action . . . [and] does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures [such as appeal review of specialized administrative decisions].")

The cases CBD cites concern procedures for implementing and following FOIA requests. See Venetian Casino Resort L.L.C. v. EEOC, 530 F.3d 925 , 934-35 (D.D.C. 2008) (finding that EEOC's procedure for releasing confidential business information under FOIA Exemption 4 was arbitrary and capricious under APA); see also Natural Desert Ass'n v. Gutierrez, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (finding APA violation for not responding to FOIA request within requisite twenty-day period.).  Accordingly, these cases are not applicable here where CBD alleges damages with regard to OMB's assertions of particular privileges, a process specifically covered by FOIA itself.  As discussed above, to find that OMB violated the APA as evidenced by the fact that it subsequently released documents would discourage OMB from ever reexamining previously-withheld documents, something the court is loathe to do.  Accordingly, the court does not find OMB in violation of the APA for its alleged cherry-picking of documents to withhold under FOIA.

C.     Governmental Misconduct

CBD finally argues that OMB is precluded from withholding documents related to the development of those standards under the governmental misconduct exception to FOIA because the 2008-2011 CAFE standards have been conclusively established as arbitrary and capricious, see Ctr. for Biological Diversity, 538 F.3d at 1181-82, (finding standards arbitrary and capricious for failing to "monetize the value of carbon emissions" and "failure to set fuel economy standards for all vehicles [in a certain weight] class.").

The governmental misconduct exception is applied only in extreme circumstances.  See, e.g., Tax Reform Research Group v. IRS, 419 F. Supp. 415, 426 (D.D.C. 1976) (applying governmental misconduct exception when withheld documents showed that the White House considered using the IRS against its enemies and therefore documents not part of any legitimate government purpose); Envtl. Tech. Int'l v. EPA, 371 F.3d 370, 376 (7th Cir. 2004) (noting that "internal discussions about

a course of agency action that would be nefarious, if not illegal, likewise would not be protected by the deliberative process privilege"); ICM Registry L.L.C. v. Dep't of Commerce, 538 F. Supp. 2d 130, 133 (D.D.C. 2008) ("If every hint of marginal misconduct sufficed to erase the [deliberative process] privilege, the exception would swallow the rule."). OMB's actions, while ill-advised, are not nefarious enough to merit application of the governmental misconduct exception.

III.   Further Actions

Because OMB has been unable to provide sufficiently specific Vaughn indices and declarations with respect to certain withheld documents, *in camera* review is the next step. Pacific Fisheries, 539 F.3d at 1150; see also, NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978) ("The *in camera* review provision . . . is designed to be invoked when the issue before the District Court could not be otherwise resolved.").

At the March 23, 2009 oral hearing, the court asked OMB to address the impact of Attorney General Eric Holder's recent memorandum to the heads of executive departments and agencies on the Obama administration's "presumption of openness" in FOIA disclosures. See FOIA Memorandum, Op. Att'y Gen. No. 09-253 (Mar. 19, 2009). OMB requested an opportunity to revisit the pending Vaughn indices to determine if any additional documents merit release in view of this new transparency policy. The court granted OMB two weeks to consider a broadening release of documents. After those documents, if any, are released, the parties are ordered to proceed as follows:

Within twenty days of this order, the parties must meet and confer and prepare a list of documents still in contention after this order. Documents no longer in contention include:

A) Any document withheld in part under FOIA Exemption 6, per stipulation of the parties.

B) Any document asserted under FOIA Exemption 5, the attorney-client privilege.

C) Any document which is *properly* withheld under FOIA Exemption 5, the deliberative process privilege as discussed above in section I(A).

D) Any document which is *properly* withheld under FOIA Exemption 5, the presidential communications privilege, as discussed above in section I(B).

17

When deciding if a document is still in contention, pursuant to the guidance of the court, the parties should weigh on the side of inclusion. As instructed by the President, "In the face of doubt, openness prevails." See FOIA Memorandum at 1. This does not mean, however, that every document which CBD would like to include, which is not specifically excluded by the court, must be included. The parties are ordered to work together on achieving a reasonable, finalized list of contested documents—e.g., the most important or a randomized selection of documents—for *in camera* review. Once that list has been compiled, the parties must work together and submit a summary of a stipulated method on how to proceed with *in camera* review, to be provided to the court ten days (**June 5, 2009**) prior to the case management conference scheduled for **June 15, 2009**. OMB will provide the documents to a magistrate judge, who will review the documents and make a recommendation as to the applicability of the privileges asserted.

CONCLUSION

Defendant's motion for summary judgement is GRANTED in part, with respect to documents asserted under FOIA Exemption 5, the attorney-client privilege, and FOIA Exemption 6, privacy. Defendant's motion for summary judgement is further GRANTED in part, with respect to documents which meet the court's rulings under FOIA Exemption 5, the deliberative process and presidential communications privileges. Defendant's motion for summary judgement is DENIED in part with respect to the remaining documents, which will be submitted in accordance with the parties future stipulation for *in camera* review.

Plaintiff's motion for summary judgement is accordingly DENIED.

IT IS SO ORDERED.

Dated: May 5, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. There are several discrepancies between OMB's tally of documents and CBD's tally of documents in particular categories with respect to the AVI. Compare Pl's. Mot. at 6:10 with Def.'s Mot. at 6:28; see also, Pl's. Mot. at 16:3 n.11 and Def. Mot. at 9:2-8. In particular, CBD claims that fifty previously withheld documents have been released, whereas OMB claims that forty-six have been released. Cross-referencing CBD's determination with the AVI shows that CBD is more correct. Furthermore, OMB claims that approximately forty-four documents are "out of scope" either in whole or in part, whereas CBD puts this number at forty-eight. While some of the documents CBD counts under this category are subsumed in OMB's tabulation of duplicative documents, see, e.g., AVI Entry Nos. 11, 20, 100, 226, 228, 228, 229, 235, 240, 241, 242, 243, 244, 550, others are counted only by one party. See AVI Entry Nos. 375, 546, 547, 601, and 607. Because neither party provided much of any computation as to the number of documents withheld under which privilege for the EVI, the court simply draws broad generalizations.

2. OMB's switch from an excel spreadsheet presentation to a list presentation is not helpful. The list formulation makes it much more difficult to find the patterns in OMB's use of boilerplate and other descriptions.

3. CBD's additional reliance at the oral hearing on Assembly of State of Cal. v. Dep't of Commerce, 968 F.2d 916 (9th Cir. 1992) seems misplaced. There, the requested information was non-publicly-released adjusted census data withheld on the grounds that such data revealed the deliberative process behind determining which census data most accurately reflected the population of the United States. Id. at 918. While that is factually different from data so intertwined with actual opinions and thoughts, as here, that decision does not discuss segregability. The Ninth Circuit ruled that because the defendants had released the raw census data and the methodology by which they adjusted the numbers, there was no reason to withhold the adjusted numbers.